THE HONORABLE RICARDO S. MARTINEZ

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

OSTERHAUS PHARMACY, INC. on behalf of itself and all others similarly situated,

Plaintiff,

v.

CVS HEALTH CORPORATION, CVS PHARMACY, INC., CAREMARK Rx, L.L.C. (f/k/a CAREMARK Rx, INC.), CAREMARK, L.L.C., CAREMARKPCS, L.L.C., CAREMARK PCS HEALTH L.L.C., CAREMARK IPA, L.L.C., CAREMARK PART D SERVICES, LLC, AETNA INC., AETNA HEALTH HOLDINGS, LLC, AND AETNA HEALTH MANAGEMENT, LLC,

Defendants.

Case No. 2:23–cv–01500–RSM

Hon. Ricardo S. Martinez

**DECLARATION OF STEVEN D. MCCALL**

I, Steven D. McCall, declare as follows:

**Background**

1. I am a legal adult of sound mind, have knowledge of the facts stated in this declaration, and, if called on to do so, could testify competently to those facts.

2. I hold a Bachelor of Pharmacy degree from Washington State University and a Master of Business Administration degree in Services Marketing and Management from Arizona State University.

3. I am a registered pharmacist.

4. I began working in pharmacy as a technician starting in 1987 and have been licensed as a pharmacist for over twenty-five years.

DECLARATION OF STEVEN D. MCCALL – 1
CASE NO. 2:23–CV–01500–RSM

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

5. From January 2012 through July 2019, I was the Director of Pharmacy Performance for Caremark LLC, which, together with CaremarkPCS LLC (together, "Caremark"), administers the Caremark retail-pharmacy network.

6. My current job title is Vice President, Network Solutions, for Caremark, a position I have held since August 2019.

7. As Director of Pharmacy Performance for Caremark, my responsibilities included overseeing Caremark's investigational, onsite, and audit operations teams, as well as managing the administrative-audit processes for pharmacies in Caremark's retail, mail, and specialty national networks.

8. Based on my responsibilities for, and experience with, Caremark, I have personal knowledge of Caremark's procedures for processing claims by its network pharmacies, including Osterhaus Pharmacy Inc.

9. Based on my responsibilities for, and experience with, Caremark, I have personal knowledge of how Caremark's provider manual (the "Provider Manual"), and amendments to its Provider Manual, are distributed to its network pharmacies, including Osterhaus.

10. Based on my responsibilities for, and experience with, Caremark, I have personal knowledge of how Caremark maintains its business records regarding distributing the Provider Manual, and amendments to the Provider Manual, to its network pharmacies, including Osterhaus.

11. Based on my responsibilities for, and experience with, Caremark, I have personal knowledge of how network pharmacies initiate contracts with Caremark to gain the ability to bill plan sponsors for claims.

12. Based on my responsibilities for, and experience with, Caremark, and my review of records kept and maintained by Caremark in the ordinary course of business, and made at or near the time of the events discussed in this declaration by a person with knowledge of the matters contained in the records, the statements in this declaration are true and correct to the best of my knowledge.

DECLARATION OF STEVEN D. MCCALL – 2
CASE NO. 2:23–CV–01500–RSM

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

**Caremark's PBM Services**

13. Caremark offers pharmacy-benefit management ("PBM") services to insurers, third-party administrators, business coalitions, and employer sponsors of health plans.

14. Caremark's services include, among others, administering and maintaining pharmacy-provider networks, which Caremark makes available for its clients and the participants in its clients' respective pharmacy-benefit plans ("PBM Plans"), as well as processing and adjudicating pharmacy claims submitted by Caremark's clients' plan participants or by network pharmacies on behalf of Caremark's clients' plan participants.

15. In return for access to these networks, pharmacies agree to fill prescriptions for participants in Caremark's clients' health plans. Caremark's clients include, among others, private health insurers that offer prescription-drug plans to Medicare beneficiaries under part D of the Medicare program.

16. Medicare is a federally funded health-insurance program, primarily for the elderly and disabled, established under title XVIII of the Social Security Act. Medicare part D is a private market-based prescription-drug program in which the costs are shared between the government and private health insurers who offer plans. Under the Medicare Act, part D plan sponsors contract with the Center for Medicare & Medicaid Services to offer part D prescription-drug plans to Medicare beneficiaries.

17. Caremark serves as a PBM for various part D plan sponsors. As a PBM, Caremark administers prescription-drug benefits for plan members, including part D beneficiaries, and processes and pays prescription-drug claims made by pharmacies.

18. Caremark's PBM operations are based in Arizona.

**The Enrollment Process**

19. Based on my responsibilities for, and experience with, Caremark, I am familiar with the contracting process followed by retail pharmacies that wish to enroll in Caremark's provider networks and the contracts the pharmacies execute to participate in those networks so they can

DECLARATION OF STEVEN D. MCCALL – 3
CASE NO. 2:23–CV–01500–RSM

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

access and fill prescriptions in the PBM Plans sponsored, administered, or insured by Caremark's clients.

20. Specifically, any pharmacy that wishes to join Caremark's pharmacy networks and provide pharmacy and related services to Caremark's clients and the PBM Plans' participants must complete an enrollment package and enter into a provider agreement.

21. A pharmacy's provider agreement contains the terms and conditions governing the pharmacy's enrollment and inclusion in Caremark's pharmacy-provider networks.

22. The Caremark provider agreements incorporate by reference the Caremark Provider Manual, which contains additional terms and conditions.

23. The Provider Manual is updated from time to time, and pharmacies are provided with updated copies of the document.

**Osterhaus's Provider Agreement**

24. On or about January 18, 1996, Osterhaus began participating in Caremark's networks by executing a provider agreement (the "Osterhaus Provider Agreement") with Caremark's predecessor PCS Health Systems Inc. A true and correct copy of the Osterhaus Provider Agreement is attached to this declaration as **Exhibit 1**.

25. By entering into the Osterhaus Provider Agreement, Osterhaus expressly accepted the agreement's terms.

26. In 2000, Advance Paradigm Inc. acquired PCS Health, forming AdvancePCS Inc. After the acquisition, AdvancePCS notified all the pharmacies in PCS Health's networks, including Osterhaus, that the base provider agreement between each pharmacy and PCS Health, including the Osterhaus Provider Agreement, would remain in effect, would apply with respect to all of AdvancePCS's business, and would be referred to as the "AdvancePCS Provider Agreement." A true and correct copy of AdvancePCS's notice, titled "IMPORTANT NOTICE TO PHARMACY PROVIDERS," is attached to this declaration as **Exhibit 2**.

DECLARATION OF STEVEN D. MCCALL – 4
CASE NO. 2:23–CV–01500–RSM

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

27. In 2004, Caremark acquired AdvancePCS. After the acquisition, Caremark notified all the pharmacies participating in AdvancePCS's networks, including Osterhaus, that the base provider agreement between each pharmacy and PCS Health, as adopted by AdvancePCS, including the Osterhaus Provider Agreement, would remain in effect, would apply with respect to all of Caremark's business, and would be referred to as the "Caremark Provider Agreement." A true and correct copy of the 2004 notice, titled "IMPORTANT NOTICE TO PHARMACY PROVIDERS," is attached to this declaration as **Exhibit 3**.

### Osterhaus's Participation in Caremark's Networks

28. After Caremark acquired AdvancePCS, Osterhaus continued to participate in Caremark's networks based on the terms of the Osterhaus Provider Agreement and the terms of Caremark's Provider Manual, as amended from time to time.

29. Throughout Osterhaus's participation in Caremark's pharmacy networks, the Osterhaus Provider Agreement incorporated multiple versions of the Provider Manual.

30. On January 1, 2016, the 2016 CVS Provider Manual (the "2016 Provider Manual") went into effect. A true and correct copy of an excerpt from the 2016 Provider Manual is attached to this declaration as **Exhibit 4**.

31. On January 1, 2018, the 2018 CVS Provider Manual (the "2018 Provider Manual") went into effect. A true and correct copy of an excerpt from the 2018 Provider Manual is attached to this declaration as **Exhibit 5**.

32. On May 1, 2020, the 2020 CVS Provider Manual (the "2020 Provider Manual") went into effect. A true and correct copy of an excerpt from the 2016 Provider Manual is attached to this declaration as **Exhibit 6**.

33. Each version of the Provider Manual applicable to Osterhaus's relationship with Caremark contains an amendment provision stating that "[f]rom time to time, and notwithstanding any other provision in the Provider Agreement (which includes the Provider Manual), Caremark may amend the Provider Agreement, including the Provider Manual or other Caremark documents,

DECLARATION OF STEVEN D. MCCALL – 5
CASE NO. 2:23–CV–01500–RSM

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

by giving notice of the terms of the amendment and specifying the date the amendment becomes effective." (*See* **Exhibit 4**, 2016 Manual, p. 43; **Exhibit 5**, 2018 Manual, p. 51; **Exhibit 6**, 2020 Manual, pp. 90, § 15.07.)

34. This amendment provision further states that, based on a provider's submission of "claims to Caremark after the effective date of any notice or amendment, the terms of the notice or amendment is accepted by Provider and is considered part of the Provider Agreement." (*See* **Exhibit 4**, 2016 Manual, p. 43; **Exhibit 5**, 2018 Manual, p. 51; **Exhibit 6**, 2020 Manual, pp. 90, § 15.07.)

35. In addition to the amendment provision, each version of the Provider Manual has an arbitration provision. (*See* **Exhibit 4**, 2016 Manual, pp. 44–45; **Exhibit 5**, 2018 Manual, pp. 51–52; **Exhibit 6**, 2020 Manual, pp. 91–92, § 15.09.)

36. Caremark keeps records that track its distribution of hard copies of the Provider Manual, and amendments to the Provider Manual, to pharmacies in Caremark's networks.

37. Those records are maintained in the form of Microsoft Excel spreadsheets provided to Caremark by the courier vendors Caremark uses to ship materials to the pharmacies.

38. The spreadsheets are stored on Caremark's computer network.

39. The spreadsheets contain various pieces of shipping information, including but not limited to the delivery date, the status of the delivery, the tracking number, the recipient, and the name of the individual who signs for the delivery.

40. Based on my review of Caremark's business records, Caremark provided Osterhaus with the 2016 Provider Manual on or about November 2, 2015.

41. Specifically, on or about November 2, 2015, Caremark delivered the 2016 Provider Manual to Osterhaus by commercial carrier at 918 W. Platt St., No. 2, in Maquoketa, Iowa, and someone identified by Caremark's records as "Ashby" signed for the delivery.

42. Osterhaus submitted reimbursement claims to Caremark after receiving the 2016 Provider Manual.

DECLARATION OF STEVEN D. MCCALL – 6
CASE NO. 2:23–CV–01500–RSM

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

43. Based on my review of Caremark's business records, Caremark also provided Osterhaus with the 2018 Provider Manual on or about October 19, 2017.

44. Specifically, on or about October 19, 2017, Caremark delivered the 2018 Provider Manual to Osterhaus by commercial carrier at 918 W. Platt St., No. 2, in Maquoketa, Iowa, and someone identified by Caremark's records as "Luett" signed for the delivery.

45. Osterhaus submitted reimbursement claims to Caremark after receiving the 2018 Provider Manual.

46. Based on my review of Osterhaus's business records, Caremark also provided Osterhaus with the 2020 Provider Manual on or about March 13, 2020.

47. Specifically, on or about March 4, 2020, Caremark sent the 2020 Provider Manual to Osterhaus by commercial carrier at 918 W. Platt St., No. 2, in Maquoketa, Iowa, and on or about March 13, 2020, some identified by Caremark's records as "Nowachek" signed for the delivery.

48. Osterhaus submitted reimbursement claims to Caremark after receiving the 2020 Provider Manual.

49. Caremark thus distributed hard copies of the 2016 Provider Manual, the 2018 Provider Manual, and the 2020 Provider Manual to Osterhaus, and Osterhaus submitted reimbursement claims to Caremark after receiving each version of the Manual.

50. A true and correct copy of a document containing excerpts of screen shots from Caremark's computer system displaying the information regarding Caremark's transmittal of each version of the Manual to Osterhaus is attached to this declaration as **Exhibit 7**.

51. The 2016 Provider Manual was in effect before the beginning of the period that is the subject of Osterhaus's claims in this matter. The 2018 Provider Manual then "supersede[d] and replace[d]" the 2016 Provider Manual. (**Exhibit 5**, 2018 Manual, p. 4.) Afterward, the 2020 Provider Manual "supersede[d] and replace[d]" the 2018 Provider Manual and remained in effect when Osterhaus assigned its assets to Maquoketa Pharmacy Inc. on November 1, 2021. (**Exhibit 6**, 2020 Manual, p. 5, § 1.)

DECLARATION OF STEVEN D. MCCALL – 7
CASE NO. 2:23–CV–01500–RSM

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

52. From January 1, 2016, the date on which the 2016 Provider Manual went into effect, through November 1, 2021, the date on which Osterhaus sold its assets, as further described below, Caremark reimbursed Osterhaus approximately $11,602,464.19 for filling claims in Caremark's pharmacy networks, including approximately $5,992,812.23 for filling claims in Caremark's Medicare part D networks.

### Maquoketa's Purchase of Osterhaus's Assets

53. The Provider Manual contains a provision requiring any pharmacy undergoing a change in ownership to provide notice to Caremark. (**Exhibit 6**, 2020 Manual, pp. 13–14, § 2.07) ("Provider must notify Caremark of a change in ownership or control . . . .").) After notice is provided, Caremark may require the acquiring entity to execute a new provider agreement for the acquired pharmacy. (*See id.* ("In the event the Buyer has an ownership interest or operating rights in an existing Provider, Caremark may elect to . . . Require Buyer to complete credentialing and execute a new Provider Agreement for the acquired pharmacies.").)

54. On November 1, 2021, Osterhaus and nonparty Maquoketa executed an asset-purchase agreement transferring Osterhaus's business assets to Maquoketa. A true and correct copy of the asset-purchase agreement is attached to this declaration as **Exhibit 8**.

55. The asset-purchase agreement stated that Osterhaus "convey[ed], transfer[red], s[old] and assign[ed]" Osterhaus's assets to Maquoketa, including but not limited to "all . . . choses in action[] and other intangible assets of [Osterhaus] relating to the Business." (**Exhibit 8**, Asset-Purchase Agreement, p. 2, ¶ 1(d).)

56. On December 5, 2021, Maquoketa executed a new and separate provider agreement (the "Maquoketa Provider Agreement") with Caremark. A true and correct copy of the Maquoketa Provider Agreement is attached to this declaration as **Exhibit 9**.

57. In accordance with the 2020 Provider Manual's change-in-ownership provision, on December 9, 2021, Maquoketa notified Caremark that it had purchased Osterhaus's assets. As of January 1, 2022, Osterhaus stopped participating in Caremark's pharmacy networks.

DECLARATION OF STEVEN D. MCCALL – 8
CASE NO. 2:23–CV–01500–RSM

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

58. As part of the change-in-ownership process, Maquoketa provided Caremark with a copy of the asset-purchase agreement between Maquoketa and Osterhaus.

In accordance with 28 U.S.C. § 1746, I, Steven D. McCall, verify under penalty of perjury that the statements in the above declaration are true and correct. Executed on December 21, 2023

_____
Steven D. McCall, R.Ph., MBA
Vice President, Network Solutions

DECLARATION OF STEVEN D. MCCALL – 9
CASE NO. 2:23–CV–01500–RSM

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000