# EXHIBIT 4

CONFIDENTIAL AND PROPRIETARY - FOIA EXEMPT - DO NOT DISCLOSE

# CVS/caremark™

# Provider Manual



# General Information

This 2016 Caremark Provider Manual ("Provider Manual") supersedes all previous versions of the Provider Manual. Capitalized terms used in the Provider Manual not defined in the Glossary of Terms shall have the same meaning as in the Provider Agreement.

### Proprietary Statement

The Provider Manual and information contained in the Provider Manual is Confidential Caremark Information and is provided for business purposes only. Provider must maintain in confidence the Provider Manual, and must not disclose, sell, assign, transfer or give to any third party the Provider Manual or any of its contents. The Caremark Provider Manual must be surrendered to Caremark (at Caremark's request) upon termination of the Provider Agreement.

### Document Adherence

The Provider Manual is a Caremark Document and incorporated into the Provider Agreement. Provider must abide by the provisions and terms set forth in the Provider Agreement (which includes the Provider Manual and all other Caremark Documents). In the event Provider breaches the Provider Agreement, which includes the Provider Manual, addenda and Caremark Documents, Caremark may terminate the Provider Agreement (or Provider's participation in specific Plans) and may exercise other remedies available to Caremark as may be set forth herein or otherwise available at Law or equity. Refer to the **Non-Compliance and Compliance Reviews** section of the Provider Manual.

### Pharmacy Help Desk

Inquiries which the Provider Manual or the claim system response do not address can be directed to the interactive voice response (IVR) system or the Pharmacy Help Desk. To help expedite certain responses, the IVR is available 24 hours a day, 7 days a week, excluding downtime for maintenance and service. The Pharmacy Help Desk is open every day of the year and is staffed with representatives. Following are the phone numbers corresponding with the appropriate Bank Identification Numbers (BINs):

| Caremark System | BIN | Pharmacy Help Desk Number |
|---|---|---|
| Legacy ADV | 004336* | 1-800-364-6331 |
| Legacy PCS | 610415* | 1-800-345-5413 |
| FEP | 610239* | 1-800-364-6331 |
| Legacy CRK | 610029* | 1-800-421-2342 |
| Caremark | 610591 | As communicated by plan or refer to ID card |

Plan sponsor-specific BINs and phone numbers may apply as specified in pharmacy notifications or the Caremark Payer Sheets found online at **www.caremark.com/pharminfo**.

*Puerto Rico Providers call toll-free 1-800-842-7331.

Pharmacy Help Desk representatives will use reasonable efforts to assist Providers. However, Pharmacy Help Desk representatives are not able to provide professional advice with respect to the provision of Pharmacy Services. Pharmacy Help Desk representatives do not have authority to waive or modify Agreement provisions. Refer to the **Medicare Part D** section of the Provider Manual for detail on Medicare Part D Calls to the Pharmacy Help Desk.

### Contact Information

Unless otherwise specified in the Provider Manual, Providers must send inquiries, grievances and requested changes to the information communicated in the Provider Manual or Caremark Documents, or other questions in writing to:

**Caremark**
**Attn: Network Management, MC 080**
**9501 East Shea Boulevard**
**Scottsdale, Arizona 85260**

**Reporting of Investigations and Disciplinary Actions**
Provider must notify Caremark in writing if:

1. Provider's license or permit is, or is in jeopardy of being, suspended or revoked;
2. Provider receives notice of any proceedings related to Pharmacy Services that may lead to disciplinary action;
3. Any disciplinary action is taken against Provider or any of its personnel, including but not limited to, action taken by a Board of Pharmacy, Officer of Inspector General (OIG), System for Award Management (SAM), law enforcement, or other regulatory body;
4. There is a subpoena of records related to Pharmacy Services or Provider's business practices; or
5. There is a seizure by law enforcement of Provider's prescription records, computer systems, financial records, accounts, or real property.

Provider must notify Caremark in writing to:

**Caremark**
**Attn: Pharmacy Performance, MC 020**
**9501 East Shea Boulevard**
**Scottsdale, Arizona 85260**

Caremark may immediately suspend, pending further investigation, the participation status (which may include temporary payment withholding, or cancellation of checks, in whole or in part, and/or claims adjudication suspension) of Provider if required by applicable Law, or if Caremark has reason to believe Provider has engaged in, or is engaging in, any activity which (1) appears to pose a significant risk to the health, welfare, or safety of Eligible Persons or the general public; (2) implies a failure to maintain proper licensure and related requirements for licensure; (3) otherwise impairs Provider's ability to fulfill the requirements of the Provider Agreement; or (4) is a breach of the Provider Agreement. Caremark's ultimate remedies under this section include immediate termination of the Provider Agreement.

**Criminal Offense Related to Federal Health Care Programs**
**Pharmacy Criminal Offense:** Provider must notify Caremark in writing if Provider or any of its officers, directors, employees, contractors, agents, or volunteers who provide items or services that will be paid by Medicare, Medicaid, or other Federal or federally funded health care program or any of its owners has been, within the ambit of 42 U.S.C. § 1320a-7(a) or 1320a-7(b)(1)-(3),

1. charged with or convicted of any criminal offense
    a. related to the delivery of an item or service under any Federal or federally funded health care program (including Medicare or Medicaid);
    b. related to the neglect or abuse of a patient in connection with the delivery of a health care item or service;
    c. which is a felony and related to fraud, theft, embezzlement, breach of fiduciary responsibility or other financial misconduct; or
    d. which is a felony and related to the unlawful manufacture, distribution, prescription, or dispensing of a controlled substance; or
2. proposed for exclusion or debarment from participation in Medicare, Medicaid, or other Federal or federally funded health care program.

For purposes of Provider's notification hereunder, the term "convicted" includes (1) when there has been a finding of guilt against Provider or Provider's officer, director, employee, contractor, agent, volunteer or owner; (2) when Provider or Provider's officer, director, employee, contractor, agent, volunteer or owner has entered and a court has accepted a plea of guilty or nolo contendere (no contest); (3) when Provider or Provider's officer, director, employee, contractor, agent, volunteer or owner has entered into a pre-trial agreement to avoid conviction; and (4) when Provider or Provider's officer, director, employee, contractor, agent, volunteer or owner has entered into participation in a First Offender, deferred adjudication, pardon program, or other arrangement or program where a judgment of conviction has been withheld.

**Prescriber Criminal Offense:** Provider must not submit any claim to Caremark for a prescription prescribed, or item or service furnished, by a Prescriber whom Provider knows has been convicted of any criminal offense as described above within the ambit of 42 U.S.C. § 1320a-7(a). Provider must notify Caremark in writing if Provider has knowledge or information of a Prescriber who has been charged with or convicted of any criminal offense as described above within the ambit of 42 U.S.C. § 1320a-7(a). Provider further agrees that any claim submitted to and paid for by Caremark in violation of this section is subject to chargeback.

Case 2:23-cv-01500-RSM   Document 43-4   Filed 12/22/23   Page 5 of 13
CONFIDENTIAL AND PROPRIETARY - FOIA EXEMPT - DO NOT DISCLOSE

Caremark Provider Manual

NETWORK PARTICIPATION AND PAYMENT

### Maximum Allowable Cost (MAC)

Caremark's analytical process to establish a MAC is at a product level for generics and multi-source brand products. The analytical process involves a review of marketplace dynamics, product availability, and different pricing sources. Pricing sources may include Medi-Span (or any other similar nationally recognized reference), wholesalers, MAC lists published by CMS, and retail pharmacies. MAC prices are subject to change, which can occur at least on a weekly basis, if not more often, and are based on marketplace trends and dynamics, and price fluctuations.

For MAC paid claim appeals and as in accordance with Law, as applicable, Provider may appeal the MAC price paid by Caremark at a product level. Submission of a paid claim by Provider is required for this process. Provider must notify Caremark within the period required by applicable Law, and provide all of the following information: date of fill, prescription number, NDC number, drug strength, dosage form, Eligible Person ID number, and Pharmacy NCPDP and NPI number. Chain and Pharmacy Services Administration Organization (PSAO) pharmacies will submit MAC paid claim appeals through their respective chain or PSAO headquarters, which will then submit appropriate data to Caremark. Independent pharmacies (those which are not affiliated with a PSAO for contracting purposes) will submit MAC paid claim appeals through the Pharmacy Help Desk at 1-800-364-6331.

Provider may access the Caremark Pharmacy Portal to obtain current MAC prices and upcoming MAC prices based on Caremark's MAC price update schedule, including for Medicare Part D plans. To locate current or upcoming MAC price information, utilize the "MAC Price Look Up" feature of the Pharmacy Portal available through a secure website: **https://rxservices.cvscaremark.com**.

### Eligible Person Fees and Amounts

Provider must collect at the point-of-service from Eligible Persons any administrative, transaction, access or other types of such fees or amounts, when applicable. The total amount to collect from the Eligible Person for providing Pharmacy Services, including any such fee or amount, will be communicated through the claims adjudication system and may be debited from Provider's claims payment account.

### Claims Payment and Other Fees
**Remittance Advices**

Provider will receive a remittance advice for claim transactions within a payment cycle. Such reports may be distributed by mail, posted on one of the Caremark websites, or by other electronic means. Caremark payments to Provider may reflect adjustments for claims reversals, resubmissions or amounts owed by Provider to a Plan Sponsor under a Provider Agreement previously in effect between Provider and a Plan Sponsor.

If Provider or authorized agent of Provider requires additional remittance reports, the following service fees apply:

| SERVICE TYPE | MINIMUM SERVICE FEE |
|---|---|
| Paper remittance reprint | $50/NPI/cycle |
| Internet, network data mover (NDM), data recreate, etc. | $150/item/NPI/cycle |
| Research fee associated with no change in reimbursement | $75/hour |
| Documentation request/research | $75/hour |
| Check trace/stop payment | $75/check |

If Provider is receiving pharmacy remittance electronically, Provider must adhere to HIPAA regulations which mandate ASCX12N 835 and updates as required. Providers with questions regarding the testing, creation and receipt of the 835 data file should contact Caremark at the following address:

**Caremark**
**Attn: Finance MC019**
**9501 East Shea Boulevard**
**Scottsdale, Arizona 85260**

All adjudicated claims detailed in a Caremark remittance advice are paid to Provider at 100% of the contracted rate, pending audit by Caremark. All claims are subject to completion of audit.

### Disputed Claims

Notwithstanding any provision in the Provider Agreement, if Provider disputes a claim due to failure to pay the contractual reimbursement amount, Provider must notify Caremark in writing within 180 days from date of fill, or within a longer period required by applicable Law, listing details of the disputed claim payment. The details must include the date of fill, prescription number, Eligible Person ID number and Pharmacy NPI or NCPDP. Provider should include a copy of the remittance advice, if possible, and must provide the specific reason for the dispute. If Provider

fails to notify Caremark in a timely manner and in the manner required, Provider is deemed to have confirmed the accuracy of the processing and payment of claims as set forth in the remittance advice for that cycle, except for any overpayments made to Provider. Notifications may be mailed to:

**Caremark**
**Attn: Network Services, MC 0023**
**9501 East Shea Boulevard**
**Scottsdale, Arizona 85260**

Caremark may charge a research fee of $75/hour for any request in which Provider was accurately reimbursed. Caremark is not obligated to reimburse Provider for a claim if Provider has breached any of the provisions or terms set forth in the Provider Agreement with respect to that claim.

Refer to the **Maximum Allowable Cost (MAC)** section of the Provider Manual for additional information.

**Claims Adjustment**
Notwithstanding any provision in the Provider Agreement, if Provider requests an adjustment to a claim (e.g., to correct claims information submitted by Provider), Provider must notify Caremark in writing within 180 days from date of fill, or within a longer period required by applicable Law, listing the date of fill, prescription number, Eligible Person ID number, Pharmacy NPI or NCPDP, the specific reason for the claim adjustment requested, and the information necessary to make the requested adjustment. Provider should include a copy of the remittance advice, if possible.

If Provider fails to notify Caremark in a timely manner and in the manner required, Provider is deemed to have confirmed the accuracy of the processing and payment of claims as set forth in the remittance advice for that cycle. Claims adjustment requests may be mailed to:

**Caremark**
**Attn: Pharmacy Corrections, NBT-3**
**9501 East Shea Boulevard**
**Scottsdale, Arizona 85260**

Caremark is not obligated to reimburse Provider for a claim if Provider has breached any of the provisions or terms set forth in the Provider Agreement with respect to that claim. Any overpayments made to Provider may be deducted from amounts otherwise payable to Provider. Refer to the **Professional Audits** section of the Provider Manual.

### Directories
Caremark and Plan Sponsors may list Provider in directories and databases for distribution and use by Eligible Persons, Plan Sponsors and others as determined necessary by Caremark and/or Plan Sponsors. Additionally, Caremark may display Providers that participate in preferred provider performance initiatives foremost in paper and web-based directories and in Plan Sponsor reporting.

### Corrective Action Required (CAR)/Corrective Action Plan (CAP)
CAR notices may be sent to Provider concerning issues such as audit findings, dispensing errors, failure to respond to audit requests or as may be required by applicable Law. Provider must respond to any request for information and action in a CAR notice provided by Caremark to Provider. Provider's response must include a CAP and must be submitted by the date provided on the CAR. Provider's CAP must include applicable documentation, policies and procedures, or work instructions to support Provider's CAP. If Provider fails to fully respond to a CAR or any other request for information and action as part of the CAR/CAP process, Caremark reserves the right to exercise its termination rights under the Provider Agreement, along with other available remedies.

### Non-Compliance and Compliance Reviews
Provider must provide Pharmacy Services related to a Covered Item to all Eligible Persons of all Plan Sponsors in compliance with the Provider Agreement. To the extent consistent with applicable Law, non-compliance includes, but is not limited to, failure to complete and attest to annual Medicare Part D Fraud, Waste and Abuse (FWA) training and General Compliance Training (GCT), failure to provide documents requested by Caremark pursuant to the Agreement, refusing to accept an identification card for an Eligible Person, refusing to service an Eligible Person because of the reimbursement rate, failing to submit a claim for a Covered Item for an Eligible Person, disclosing Confidential Caremark Information, submitting the incorrect applicable dispense as written (DAW) code, submitting an inaccurate U&C price, submitting incorrect data in the claims submission, non-adherence to requirements for Patient Pay Amount collections, and not dispensing an emergency supply of a Covered Item to an Eligible Person as required by applicable Law.

In the event Provider breaches the Provider Agreement, which includes the Provider Manual, addenda and Caremark Documents, Caremark may terminate the Provider Agreement (or Provider's participation in specific Plans) and may

transaction information provided to Provider pursuant to the Drug Quality Security Act, Pub. L. No. 113-54 ("DQSA") (collectively, "documentation"), and any regulations promulgated under the DQSA, and Provider must make available to Caremark, for audit purposes, such documentation. Failure to make available documentation required herein may result in chargeback of claims and other remedies available to Caremark, including but not limited to, termination of the Agreement.

### Medicare Part D Requirements

Provider must provide documentation to demonstrate compliance with all Medicare Part D requirements (as stated in the Provider Manual, Caremark Medicare Part D Addenda, CMS Guidance or under applicable Law), including but not limited to:

- Long-term Care billing
- Accurate use of Patient Residence and Pharmacy Service Type values
- Compliance with "CMS-10147 Medicare Prescription Drug Coverage and Your Rights" pharmacy notification
- Documentation to establish coverage determinations (e.g., Hospice, Part B vs Part D, ESRD)
- That Provider has reviewed the OIG List of Excluded Individuals/Entities (LEIE) and the SAM exclusion list as required by the **Federal Health Care Programs Participation Exclusion** section of the Provider Manual to confirm that no Prescriber transmitted on a Medicare Part D claim is on any exclusion list
- Documentation or information requested which relates to a Medicare Part D claim dispensed by the Provider but reimbursed directly to other parties, including the Eligible Person
- Documentation substantiating any submission clarification codes (SCC) or override codes transmitted on a Medicare Part D claim
- Documentation submitted must comply with guidance set forth by CMS or any other applicable regulatory body

Medicare D Claims transmitted with an invalid or inactive Provider identification number may not be eligible for reimbursement and may be recouped.

If a copy of a prescription or signature log is not retrievable after sufficient effort, obtain either physician or member attestations.

### On-Site and Investigational Audit Resolution – Appeals Process

If preliminary discrepancies are found during an audit, Caremark provides a written appeals process. Caremark will send Provider an initial report of all the discrepancies along with documentation guidelines (refer to **Appendix I** of the Provider Manual for a copy of the current documentation guidelines) that show how to address a discrepancy and validate the claims audited.

Provider must respond to Caremark in writing within thirty (30) days, or other timeframe required by applicable Law, with proper supporting documentation for the paid claims in question. Documentation must be mailed to Caremark via certified mail, Federal Express, United Parcel Service, or any other certified carrier, and must be received by the final due date specified by Caremark. Provider may contact the Pharmacy Performance group at 866-488-4709 prior to the audit due date to request an extension of the documentation due date.

Any claims that are not documented and validated in accordance with the Caremark documentation guidelines or the Provider Manual shall become due and owing to Caremark by Provider at the expiration of the 30-day appeal period or other timeframe required by applicable Law; however, Caremark has the right to offset, where permissible by applicable Law, against amounts owed to Provider, before the expiration of the 30-day period, or other time period required by Law, for any discrepant claims as allowed for under the **Provider Suspension** section of the Provider Manual. All Caremark audit discrepancies are detailed in an audit report and amounts owed will be a sum of the items determined discrepant. Caremark audits do not employ extrapolation. Refer to the **Arbitration** section of the Provider Manual for the dispute resolution process once the final audit report is complete. In addition, if an audit chargeback exceeds $7,500, Provider must reimburse Caremark 15% of the total audit finding for the cost of the audit, where permissible by applicable Law.

Provider must notify Caremark of Provider's appeal of audit reports in writing to:

**Caremark – Audit Manager**
**Attn: Pharmacy Performance, MC 020**
**9501 East Shea Boulevard**
**Scottsdale, Arizona 85260**

Caremark has the right to offset, where permissible by applicable Law, in whole or in part, against any amounts owing to Provider under the Provider Agreement any amounts owed to Caremark, including but not limited to,

amounts owed for audited discrepant claims, other charges for non-compliance and audit-related costs pursuant to the Provider Agreement or any Third-Party Agreement, claims submitted in breach of the Agreement, or any audit conducted by a third-party auditor on behalf of a Plan Sponsor. If the Provider fails to satisfy amounts owed related to an audit finding, certain remedies may apply, including termination of the Provider Agreement and any other available remedies.

When Caremark collects from Provider amounts due as a result of audit discrepancies, Provider cannot bill, charge, collect a deposit from, seek compensation, remuneration or reimbursement from, or have any recourse against an Eligible Person or Plan Sponsor in relation to such adjustment or chargeback.

Caremark may report its audit findings to Plan Sponsors, local/state/federal investigative and law enforcement agencies, professional review and audit organizations, and other such entities.

By entering into the Provider Agreement, Provider hereby agrees to assume and satisfy all liabilities and obligations, if any, of the provider operating the pharmacy immediately prior to the Provider's entry into the Provider Agreement.

### Dispensing Errors

If (as a result of an Eligible Person complaint, audit review, or Prescriber verification, for example) Caremark identifies a potential dispensing error and confirms with Provider the occurrence of such dispensing error, Provider must (1) review the information with the Eligible Person, (2) document the error in accordance with Provider's internal operational procedures, and (3) report the error to any appropriate regulatory agency, including but not limited to, the Institute of Safe Medical Practices (ISMP). For paid claims that have been determined to have a dispensing error, Caremark reserves the right to charge back the entire claim amount.

### Other Submission Requirements
#### Complete and Accurate Information

Claims are paid based on the information that Provider submits through the claims adjudication systems to Caremark. Provider must clarify ambiguous dosage directions regarding utilization prior to dispensing and must not combine Prescriber authorized refills. If a prescription contains ambiguous directions (e.g., no directions, "Use as Directed," or "PRN"), Provider must obtain more concise directions, as to accurately represent the days supply. The directions may be obtained by direct communications with either the Eligible Person or Prescriber. Documentation of the directions on the original prescription is required. The days supply should accurately reflect the documented directions and quantity dispensed. The Prescriber should be accurately identified with an applicable NPI as described in the **Claims Submission** section and within this section of the Provider Manual. The strength of the medication identified on the claim must be an accurate reflection of that which was prescribed or documentation of the unavailability of the prescribed strength will be required. If any claim was paid based on incorrectly submitted data, Caremark reserves the right to charge back, up to the amount of the entire claim, based on the type of inaccuracy in the claim data (e.g., inaccurate person would result in full claim chargeback or reversal).

#### Dispensing Limitations

- The quantity dispensed must be entered exactly as it is written on the prescription; Provider must enter the exact metric decimal quantity dispensed only (no rounding on all claim transactions). Many products are transmitted as a kit, the volume of medication, or weight in grams. Provider should review claims submission to ascertain that the quantity is accurate on all claims based on the specificity of the product and Prescriber instructions.

- Provider must submit the days supply accurately. If the Prescriber indicates "as directed," Provider must determine the dosing schedule in order to submit the claim correctly. If the quantity is uncertain, Provider must contact the Prescriber to determine the appropriate amount to dispense and document said amount appropriately on the original prescription.

- If the Prescriber indicates "as directed" for a drug that may be administered on a sliding scale, such as insulin, the Provider must obtain the dosage range, note it on the prescription hard copy, and calculate the days supply by using the maximum daily dosage; the directions may be obtained by direct communications with either the Eligible Person or the Prescriber.

- Any subsequent changes in the dispensing limitations that are approved by the Prescriber must be noted on the original prescription.

- Claims submitted to Caremark that exceed Plan limits for the days supply or quantity dispensed will reject with the message, "Plan Limitations Exceeded." The reject message includes the actual limits such as, "Maximum Days Supply = 34" or "Quantity Limit = 100". Any claims resubmitted must be entered with the accurate quantity and days supply; however, if the claim submitted has a quantity which represents the smallest commercially available package size or represents a single course of therapy (e.g., 9 vials of Remicade® as a 56-day supply), and rejects as stated, it is allowable for Provider to resubmit the claim utilizing that quantity and the maximum days supply as provided in the

Case 2:23-cv-01500-RSM   Document 43-4   Filed 12/22/23   Page 9 of 13
CONFIDENTIAL AND PROPRIETARY - FOIA EXEMPT - DO NOT DISCLOSE

Caremark
Provider Manual

# Miscellaneous

### Assignment
Provider may not assign Provider Agreement with Caremark to any other person or entity without the prior written approval of Caremark whose consent will not be unreasonably withheld.

Any attempted assignment by Provider without the prior written approval of Caremark will be void and of no force and effect. Under such circumstances, Caremark has the right to immediately terminate the Provider Agreement with Provider and/or the successor.

Provider covenants that any agreement with a successor assigning Provider's rights and obligations under the Provider Agreement shall provide for an express assumption by such successor of Provider's liabilities and obligations under the Provider Agreement. Notwithstanding an approved assignment and a successor's assumption of Provider's liabilities under the Provider Agreement, Provider will remain jointly liable for any liabilities and obligations under the Provider Agreement arising prior to assignment until the successor satisfies such liabilities and obligations in full.

Caremark may assign the Provider Agreement to any direct or indirect parent, subsidiary, or affiliated company or to a successor company.

### Independent Contractors and Third-Party Beneficiaries
Caremark and Provider are considered independent contractors, and shall have no other legal relationship under or in connection with the Provider Agreement. Neither party will act as or be deemed a representative of the other party for any reason whatsoever.

Except for the **Indemnification** and **Arbitration** provisions, no term or provision in the Provider Agreement is for the benefit of any person who is not a party to the Provider Agreement, and no such party shall have any right or cause of action under the Provider Agreement.

### Court Orders, Subpoenas or Governmental Requests
If Caremark receives a court order, subpoena or governmental request relating solely to Provider, Caremark may comply with such order, subpoena or request, and Provider must indemnify and hold harmless Caremark for, from, and against any and all costs (including reasonable attorneys' fees and costs), losses, damages, or other expenses Caremark may suffer or incur in connection with the responding to such order, subpoena or request.

If Provider is requested or required to disclose any Confidential Caremark Information, whether by oral questions, interrogatories, requests for information or documents, subpoenas, or other processes, Provider must promptly provide Caremark with written notice of any such request or requirement so that Caremark may seek an appropriate protective order or other appropriate remedy. If such protective order or other remedy is not obtained, Provider will disclose only that portion of the Confidential Caremark Information as to which it has been advised by legal counsel that disclosure is required by Law; and Provider must exercise its best efforts to obtain reliable assurances that confidential treatment will be accorded to the Confidential Caremark Information that is disclosed in response to such requests or requirements.

### Notices
Unless otherwise stated in the Provider Manual, a notice pursuant to the Provider Agreement to Caremark must be in writing, be delivered in person by certified mail, courier, or first class mail, and be addressed to Network Management at Caremark at the address below; and to Provider at the street, mailing, or check mailing address set forth in Provider's enrollment documentation or as otherwise indicated by Provider to Caremark and agreed to by Caremark.

**Caremark**
**Attn: Network Management, MC080**
**9501 East Shea Boulevard**
**Scottsdale, Arizona 85260**

Any notice to Caremark must also be addressed and delivered to:

**Caremark**
**Attn: General Counsel, MC035**
**9501 East Shea Boulevard**
**Scottsdale, Arizona 85260**

Notwithstanding the foregoing, Caremark may give notice to Provider (1) via the claims adjudication system; (2) by facsimile via the facsimile number, or by e-mail via the e-mail address provided by Provider in Provider's enrollment

documentation or as otherwise indicated by Provider to Caremark and agreed to by Caremark; or (3) via Caremark's Pharmacy Portal for which Provider will be given access.

Notices are deemed received on the date of delivery to the other party when delivered in person, by courier, by e-mail, by facsimile, by secure electronic message, by certified mail, or when posted via Caremark's Pharmacy Portal. If notice is sent by first class mail, the notice is deemed received on the third business day after the date such notice was mailed.

The terms of this **Notices** section apply notwithstanding any other provision in the Provider Agreement.

### Amendments

From time to time, and notwithstanding any other provision in the Provider Agreement (which includes the Provider Manual), Caremark may amend the Provider Agreement, including the Provider Manual or other Caremark Documents, by giving notice to Provider of the terms of the amendment and specifying the date the amendment becomes effective. If Provider submits claims to Caremark after the effective date of any notice or amendment, the terms of the notice or amendment is accepted by Provider and is considered part of the Provider Agreement.

### Enforceability

In the event that any provision or term set forth in the Provider Agreement is determined invalid or unenforceable, such invalidity and unenforceability will not affect the validity or enforceability of any other provision or term set forth in the Provider Agreement.

### Arbitration

Any and all disputes between Provider and Caremark [including Caremark's current, future, or former employees, parents, subsidiaries, affiliates, agents and assigns (collectively referred to in this **Arbitration** section as "Caremark")], including but not limited to, disputes in connection with, arising out of, or relating in any way to, the Provider Agreement or to Provider's participation in one or more Caremark networks or exclusion from any Caremark networks, will be exclusively settled by arbitration. This arbitration provision applies to any dispute arising from events that occurred before, on or after the effective date of this Provider Manual. Unless otherwise agreed to in writing by the parties, the arbitration shall be administered by the American Arbitration Association ("AAA") pursuant to the then applicable AAA Commercial Arbitration Rules and Mediation Procedures (available from the AAA). In no event may the arbitrator(s) award indirect, consequential, or special damages of any nature (even if informed of their possibility), lost profits or savings, punitive damages, injury to reputation, or loss of customers or business, except as required by Law. The arbitrator(s) shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of the agreement to arbitrate, including but not limited to, any claim that all or part of the agreement to arbitrate is void or voidable for any reason. The arbitrator(s) must follow the rule of Law, and the award of the arbitrator(s) will be final and binding on the parties, and judgment upon such award may be entered in any court having jurisdiction thereof. Any such arbitration must be conducted in Scottsdale, Arizona and Provider agrees to such jurisdiction, unless otherwise agreed to by the parties in writing. The expenses of arbitration, including reasonable attorney's fees, will be paid for by the party against whom the award of the arbitrator(s) is rendered, except as otherwise required by Law.

**Arbitration with respect to a dispute is binding and neither Provider nor Caremark will have the right to litigate that dispute through a court. In arbitration, Provider and Caremark will not have the rights that are provided in court, including the right to a trial by judge or jury. In addition, the right to discovery and the right to appeal are limited or eliminated by arbitration. All of these rights are waived and disputes must be resolved through arbitration.**

**No dispute between Provider and Caremark may be pursued or resolved as part of a class action, private attorney general or other representative action or proceeding (hereafter all included in the term "Class Action"). All disputes are subject to arbitration on an individual basis, not on a class or representative basis, or through any form of consolidated proceedings, and the arbitrator(s) will not resolve Class Action disputes and will not consolidate arbitration proceedings without the express written permission of all parties to the Provider Agreement. Provider and Caremark agree that each may pursue or resolve a dispute against the other only in its individual capacity, and not as a plaintiff or class member in any purported Class Action.**

Except as may be required by Law, neither a party nor an arbitrator(s) may disclose the existence, content or results of any dispute or arbitration hereunder without the prior written consent of both parties.

Prior to a party initiating an arbitration, such party shall request in writing to the other party ("Dispute Notice") a meeting of authorized representatives of the parties for the purpose of resolving the dispute. The parties agree that, within ten (10) days after issuance of the Dispute Notice, each party shall designate a representative to participate in dispute resolution discussions which will be held at a mutually acceptable time and place (or by telephone) for the purpose of resolving the dispute. Each party agrees to negotiate in good faith to resolve the dispute in a mutually acceptable manner. If despite the good faith efforts of the parties, the authorized representatives of the parties are

Case 2:23-cv-01500-RSM   Document 43-4   Filed 12/22/23   Page 11 of 13
CONFIDENTIAL AND PROPRIETARY - FOIA EXEMPT - DO NOT DISCLOSE

Caremark Provider Manual

MISCELLANEOUS

unable to resolve the dispute within thirty (30) days after the issuance of the Dispute Notice, or if the parties fail to meet within such thirty (30) days, either party may, by written notice to the other party, submit the dispute to binding arbitration. The above notwithstanding, nothing in this provision shall prevent either party from utilizing the AAA's procedures for emergency relief to seek preliminary injunctive relief to halt or prevent a breach of this Provider Agreement.

The terms of this **Arbitration** section apply notwithstanding any other or contrary provision in the Provider Agreement, including but not limited to, any contrary language in any **Third-party Beneficiary** provision. This **Arbitration** section survives the termination of the Provider Agreement and the completion of the business relationship between Provider and Caremark. This arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16.

### Force Majeure
Caremark and Provider are excused from performance under the Provider Agreement to the extent that either Caremark or Provider is prevented from performing all or any part of the Provider Agreement as a result of causes that are beyond the affected party's reasonable control, including but not limited to, fire, flood, earthquakes, tornadoes, other acts of God, war, work strikes, civil disturbances, power or communications failure, court order, government intervention, a change in Law, a significant change in the industry, or third-party nonperformance.

### Anti-Kickback Statute, Stark Law, and Caremark Compliance Program
Each party certifies that it shall not violate the federal anti-kickback statute, set forth at 42 U.S.C § 1320a-7b(b) ("Anti-Kickback Statute"), or the federal "Stark Law," set forth at 42 U.S.C § 1395nn ("Stark Law"), with respect to the performance of its obligations under this Provider Agreement. Further, Provider shall comply with Caremark's Compliance Program, including training related to the Anti-Kickback Statute and the Stark Law. In addition, Caremark's Code of Conduct and policies and procedures on the Anti-Kickback Statute and Stark Law may be accessed at **www.caremark.com/pharminfo**.

Pursuant to Caremark's obligations under a Corporate Integrity Agreement (CIA) with the Office of Inspector General of the United States Department of Health and Human Services dated March 25, 2014, Provider agrees to access the CIA through this website **https://oig.hhs.gov/compliance/corporate-integrity-agreements/cia-documents.asp** upon enrollment, and Provider shall review the CIA in its entirety on an annual basis thereafter. Provider shall immediately notify Caremark in writing if Provider does not comply with the requirement to annually access and review the CIA in its entirety.

### Rebate Programs
Caremark has the right to submit all prescriptions relating to the Provider Agreement to pharmaceutical companies in connection with Caremark's rebate programs and any similar programs. Provider must not submit any of the prescriptions relating to the Provider Agreement to any pharmaceutical company for the purpose of receiving any rebate, discount or the like, except as authorized by Caremark in writing.

Provider should initiate the BAE process in order for a change to a Part D Enrollee's low-income status to occur, if Provider is presented with one or more of the following acceptable forms of evidence from Part D Enrollees:

- A copy of the Part D Enrollee's Medicaid card which includes the Part D Enrollee's name and an eligibility date during the discrepant period;
- A report of contact including the date a verification call was made to the State Medicaid Agency and the name, title and telephone number of the state staff person who verified the Medicaid status during the discrepant period;
- A copy of a state document that confirms active Medicaid status during the discrepant period;
- A printout from the State electronic enrollment file showing Medicaid status during the discrepant period;
- A screen print from the State's Medicaid systems showing Medicaid status during the discrepant period; or
- Other documentation provided by the State showing Medicaid status during the discrepant period.

In addition, any one of the following forms of evidence from Part D Enrollees may establish that they are institutionalized and qualify for zero cost-sharing:

- A remittance from the facility showing Medicaid payment for a full calendar month for that individual during the discrepant period;
- A copy of a state document that confirms Medicaid payment to the facility for a full calendar month on behalf of the individual; or
- A screen print from the State's Medicaid systems showing that individual's institutional status based on at least a full calendar month stay for Medicaid payment purposes during the discrepant period.

Acceptable documents that may be used as BAE for demonstrating receipt of Home and Community-Based Services (HCBS) include:

- A copy of a State-issued Notice of Action, Notice of Determination, or Notice of Enrollment that includes the Part D Enrollee's name and HCBS eligibility date during a month after June of the previous calendar year;
- A copy of a State-approved HCBS Service Plan that includes the Part D Enrollee's name and effective date beginning during a month after June of the previous calendar year;
- A copy of a State-issued prior authorization approval letter for HCBS that includes the Part D Enrollee's name and effective date beginning during a month after June of the previous calendar year; or
- Other documentation provided by the State showing HCBS eligibility status during a month after June of the previous calendar year.

Once Provider has the required acceptable form(s) of evidence, Provider should either:

- Contact the Caremark Pharmacy Help Desk for appropriate Plan Sponsor contact information; or
- Consult the annual Caremark Medicare Part D Plan Sponsor chart distributed to Providers annually.

If urgent, Caremark will work with Provider and Plan Sponsor to update eligibility and resolve the situation; otherwise, Provider should work directly with the Plan Sponsor to submit the acceptable BAE in order for a change to a Part D Enrollee's low-income status to occur through standard protocol.

### Part D Enrollees Receiving CMS Notification on Status Change in LICS/LIS

In order to avoid any interruptions to receiving drug therapy for Part D Low-Income Subsidy (LICS/LIS) eligible Part D Enrollees who have received a notification from CMS indicating a status change, the Part D Enrollee must apply/re-apply through the Social Security Administration, or they may have adjusted copayment and premium liabilities in the future. Providers are encouraged to assist these Part D Enrollees by:

- Helping submit LICS/LIS applications
- Refer the Part D Enrollee to the Social Security Administration at:

    **1-800-772-1213**
    **http://www.ssa.gov/medicareoutreach2/index.htm**

### Claims Submission Window for Medicare Part D

Providers have ninety (90) days from original date of fill to receive paid transactions including submissions, reversals and resubmissions of Medicare Part D Claims. Provider Universal Claim Forms (UCFs) will be accepted and processed up to March 31st after the close of the previous plan year in which the date of fill occurred when accompanied by a reasonable explanation why the Medicare Part D Claim could not be submitted and processed online. This timely

filing window aligns with the CMS processing windows. Provider UCFs should be clearly identified as "Medicare Part D" claims and should be mailed to the following address:

**RXBINs 004336, 610591:**
Attn: Medicare Part D
PO Box 52066
Phoenix, AZ 85072-2066

**RXBIN 610415:**
Attn: Medicare Part D
PO Box 52092
Phoenix, AZ 85072-2092

**RXBIN 610029:**
Attn: Medicare Part D
PO Box 52193
Phoenix, AZ 85072-2193

**RXBIN 012189:**
Attn: Medicare Part D
PO Box 53993
Phoenix, AZ 85072-3993

**RXBIN 610502:**
Attn: Medicare Part D LTC
PO Box 14023
Lexington, KY 40512-4023

**Long-term Care (LTC) Claims:**
Attn: Medicare Part D
PO Box 52419
Phoenix, AZ 85072-2419

Refer to the **LTC Pharmacies Timely Claim Submission** subsection regarding timely submission of Medicare Part D LTC claims.

### Medicare Part D Claims Adjustment

Caremark may adjust paid claims to correct errors or reflect changes in eligibility of Eligible Person, to the extent permissible under applicable Law. Any overpayments made to Provider may be deducted from amounts otherwise payable to Provider.

Provider must charge Part D Enrollees the correct cost-sharing amount in accordance with the Part D Plan benefit and as required by CMS. For all LTC claims submitted by Provider for Part D Enrollees, and therefore, for whom Caremark has assessed cost-sharing that has been borne by Provider, Caremark will reimburse Provider for such amounts. Refer to the **Patient Residence and Pharmacy Service Type Requirements** section of the Provider Manual. Provider agrees that by accepting payment from Caremark for these amounts assessed against Part D Enrollees, Provider is certifying that (1) Provider has not collected or otherwise waived such amounts from such Part D Enrollees or their representatives; (2) Provider is in fact carrying a debt for the amounts charged to such Part D Enrollee; and (3) the amounts reimbursed by Caremark are appropriate, owed, and payable. In cases where Part D Enrollees claims are retroactively identified as inappropriate overpayments to Provider, Caremark will adjust Provider for such amounts. Provider is responsible for (1) collecting outstanding patient pay amount balances from Part D Enrollees; and (2) accurately debiting and/or crediting Part D Enrollees to help maintain accurate True Out-of-Pocket (TrOOP) balances for these retroactively identified claims.

### Unique RXBIN/RXPCN Requirement - Medicare Part D

CMS requires Medicare Part D Plans to be identified with a unique RXBIN/RXPCN combination. Patient profiles must be updated accordingly. Caremark will continue to communicate unique RXBIN/RXPCN/RXGRP combinations of Plan Sponsors. Refer to the Caremark Payer Sheets at **www.caremark.com/pharminfo**.

### General Medicare Part D Submission Requirements for COB

For all other primary Part D Plan Sponsors who have not implemented STCOB, the following COB information is essential when submitting claims for Part D Enrollees:

- If Part D is the primary coverage, the standard RXBIN/RXPCN combinations should be used (refer to the Caremark Plan Sponsor grid distributed annually every December)

- For supplemental coverage after the primary Part D Claim is processed, or if Part D falls into a secondary/supplemental status due to other existing primary coverage, refer to the Caremark Payer Sheets at **www.caremark.com/pharminfo**

### Formulary Transition Fill Process

All Part D Plans are required by CMS to provide a formulary transition plan for Part D Enrollees who are eligible for a transition supply. The intent of the transition plan is to ensure immediate short-term coverage for Part D Enrollees who are either new to a Part D Plan or who otherwise qualify for a Transition Fill (TF). Providers are required to submit TF-eligible claims for eligible Part D Enrollees to ensure these Enrollees are able to receive the TF's to which they are entitled. This will allow Part D Enrollees to continue ongoing therapies while either transitioning to an equivalent formulary drug, or pursuing prior authorizations or formulary exceptions. Drugs excluded under Part D are not eligible for TF.

Caremark provides TF coverage to eligible Part D Enrollees under the circumstances indicated in the "Transition Fill Plan" below when Part D drugs:

1. are non-formulary; or
2. are formulary and require prior authorization or step therapy under a plan's utilization management rules; or
3. have quantity limits or daily dose limits that are not safety related.

TF-eligible claims will process and pay upon initial submission and messages will indicate when claims have paid under TF rules. Providers do not need to resubmit a TF Prior Authorization code for TF-eligible claims to adjudicate