# EXHIBIT 5

CONFIDENTIAL AND PROPRIETARY - FOIA EXEMPT - DO NOT DISCLOSE



# CVS Caremark Provider Manual

## General Information

This 2018 Caremark Provider Manual ("Provider Manual") supersedes all previous versions of the Provider Manual. Capitalized terms used in the Provider Manual not defined in the Glossary of Terms shall have the same meaning as in the Provider Agreement.

### Proprietary Statement

The Provider Agreement (which includes the Provider Manual) constitutes Confidential Caremark Information and is provided to Provider for business purposes only. Provider must maintain in confidence the Provider Manual, and must not disclose, sell, assign, transfer or give to any third party the Provider Manual or any of its contents without Caremark's prior written consent. Refer to the **Confidentiality** section of the Provider Manual.

### Document Adherence

The Provider Manual is a Caremark Document and is incorporated into the Provider Agreement. Provider must abide by the provisions and terms set forth in the Provider Agreement (which includes the Provider Manual and all other Caremark Documents).

### Pharmacy Help Desk

Inquiries which the Provider Manual or the claims system response do not address can be directed to the Interactive Voice Response (IVR) system or the Pharmacy Help Desk. To help expedite certain responses, the IVR is available 24 hours a day, 7 days a week, excluding downtime for maintenance and service. The Pharmacy Help Desk is open every day of the year and is staffed with representatives. Following are the phone numbers corresponding with the appropriate Bank Identification Numbers (BINs):

| Caremark System | RXBIN | Pharmacy Help Desk Number |
|---|---|---|
| Legacy ADV | 004336* | 1-800-364-6331 |
| Legacy PCS | 610415* | 1-800-345-5413 |
| FEP | 610239 | 1-800-364-6331 |
| Legacy CRK | 610029* | 1-800-421-2342 |
| Caremark | 610591 | As communicated by plan or refer to ID card |
| Aetna | 610502 | 1-800-238-6279 |

Secondary RXBINs and Plan sponsor-specific RXBINs and phone numbers may apply as specified in pharmacy notifications or the Caremark Payer Sheets found online at **www.caremark.com/pharminfo**.

*Puerto Rico Providers call toll-free 1-800-842-7331.

Pharmacy Help Desk representatives will use reasonable efforts to assist Providers. However, Pharmacy Help Desk representatives are not able to provide professional advice with respect to the provision of Pharmacy Services.

**Pharmacy Help Desk representatives do not have authority to waive or modify Agreement provisions (e.g., claim submission requirements, audit documentation, credentialing documentation, non-compliance).**

Refer to the **Medicare Part D** section of the Provider Manual for detail on Medicare Part D Calls to the Pharmacy Help Desk.

### Contact Information

Unless otherwise specified in the Provider Manual, Providers must send inquiries and grievances in writing to:

**CVS Caremark**
**Attn: Network Management, MC 080**
**9501 East Shea Boulevard**
**Scottsdale, AZ 85260**

Providers who utilize an internet site as a routine business practice in the provision of Pharmacy Services (except for refill requests) must maintain Verified Internet Pharmacy Practice Sites (VIPPS) certification through the National Association of Boards of Pharmacy (NABP), but must also otherwise comply with the terms of this subsection.

### Drug Stock and Inventory

Provider must stock a sufficient amount of drugs, at Caremark's reasonable determination, consistent with the habits of local Prescribers or local Plan Sponsor formularies.

### Licensure

Provider must at all times maintain in good standing all Federal, State and local licenses and/or permits as required by applicable Law, including but not limited to, maintaining a valid pharmacy license in each state to which Provider dispenses prescriptions. Provider must furnish copies of said licenses and/or permits upon enrollment and as requested by Caremark. Any Pharmacy Services provided where Provider does not possess all required licenses and/or permits under applicable Law shall be deemed to be invalid, subject to recoupment, and may result in termination of the Provider Agreement. All Pharmacy Services must be provided by or under the direct supervision of a Licensed Pharmacist and in accordance with Prescriber directions and applicable Law.

### Reporting of Investigations and Disciplinary Actions

Provider must notify Caremark in writing if:

1. Any of Provider's licenses or permits that are required under applicable Law for Provider to provide Pharmacy Services is, or is in jeopardy of being, suspended or revoked;
2. There are proceedings related to Pharmacy Services that may lead to an adverse action against Provider or affiliate of Provider, or any of their respective officers, directors, current/former employees, or owners (direct and indirect);
3. Any adverse action is taken against (a) Provider; (b) officer, director, current/former employee, owner (direct and indirect) of Provider or affiliate of Provider, including but not limited to, action taken by a Board of Pharmacy, Officer of Inspector General (OIG), System for Award Management (SAM), law enforcement, Drug Enforcement Agency (DEA), or other government regulatory or enforcement entity;
4. There is a subpoena of records related to Pharmacy Services or Provider's business practices;
5. There is a seizure by law enforcement of Provider's prescription records, computer systems, financial records, accounts, or real property;
6. Provider or affiliate of Provider, or any of their respective officers, directors, employees, or owners (direct and indirect) enters into a settlement agreement, Corporate Integrity Agreement, or consent order with a government regulatory or enforcement entity relating to Pharmacy Services or Provider's business practices, even if there is no admission of liability; or
7. Provider is terminated from a third-party payer's (including a pharmacy benefit manager) network based on cause.

Provider must notify Caremark in writing to:

**CVS Caremark**
**Attn: Pharmacy Performance, MC 020**
**9501 East Shea Boulevard**
**Scottsdale, AZ 85260**

Required notification to Caremark must be provided within ten (10) business days of the occurrence and include sufficient detail. Failure to timely and properly notify Caremark may result in termination of the Provider Agreement or suspension as a participating provider.

Caremark may immediately suspend, pending further investigation, the participation status (which may include temporary payment withholding, or cancellation of checks, in whole or in part, and/or claims adjudication suspension) of Provider if required by applicable Law, or if Caremark has reason to believe Provider has engaged in, or is engaging in, any activity which (1) appears to pose a significant risk to the health, welfare, or safety of Eligible Persons or the general public; (2) implies a failure to maintain proper licensure and related requirements for licensure; (3) otherwise impairs Provider's ability to fulfill the requirements of the Provider Agreement; or (4) is a breach of the Provider Agreement. Caremark's ultimate remedies under this section include immediate termination of the Provider Agreement.

| 835 Vendor change | $50/NPI |
|---|---|
| Provider Claim Adjustment request | $5/claim |

If Provider is receiving pharmacy remittance electronically, Provider must adhere to HIPAA regulations which mandate ASCX12N 835 and updates as required. Providers with questions regarding the testing, creation and receipt of the 835 data file should contact Caremark at the following address:

**Caremark**
**Attn: Finance MC019**
**9501 East Shea Boulevard**
**Scottsdale, AZ 85260**

All adjudicated claims detailed in a Caremark remittance advice are paid to Provider at one hundred percent (100%) of the reimbursement rate as in accordance with the Provider Agreement, pending audit by Caremark. All claims are subject to completion of audit. Prior to reimbursement, Caremark reserves the right to require additional documentation by Provider to validate a claim(s) including but not limited to submission of medical records and Eligible Persons attestations.

**Disputed Claims**

Notwithstanding any provision in the Provider Agreement, if Provider disputes a claim due to failure to pay the contractual reimbursement amount, Provider must notify Caremark in writing within one hundred eighty (180) days from date of fill, or within a longer period required by applicable Law, listing details of the disputed claim payment. The details must include the date of fill, prescription number, Eligible Person ID number and Provider NPI or NCPDP. Provider should include a copy of the remittance advice, if possible, and must provide the specific reason for the dispute. If Provider fails to notify Caremark in a timely manner or in the manner required, Provider is deemed to have confirmed the accuracy of the processing and payment of claims as set forth in the remittance advice for that cycle, except for any overpayments made to Provider. Notifications may be mailed to:

**Caremark**
**Attn: Network Services, MC 0023**
**9501 East Shea Boulevard**
**Scottsdale, AZ 85260**

Caremark may charge a research fee of $100/hour for any request in which Provider was accurately reimbursed. Caremark is not obligated to reimburse Provider for a claim if Provider has breached any of the provisions or terms set forth in the Provider Agreement with respect to that claim.

Refer to the **Maximum Allowable Cost** section of the Provider Manual for additional information.

**Claims Adjustment**

Notwithstanding any provision in the Provider Agreement, if Provider requests an adjustment to a claim (e.g., to correct claims information submitted by Provider), Provider must notify Caremark in writing within one hundred eighty (180) days from date of fill, or within a longer period required by applicable Law, listing the date of fill, prescription number, Eligible Person ID number, Provider NPI or NCPDP, the specific reason for the claim adjustment requested, and the information necessary to make the requested adjustment. Provider should include a copy of the remittance advice, if possible.

If Provider fails to notify Caremark in a timely manner or in the manner required, Provider is deemed to have confirmed the accuracy of the processing and payment of claims as set forth in the remittance advice for that cycle. Providers may be required to submit claim adjustment requests electronically. Claims adjustment requests may be mailed to:

**Caremark**
**Attn: Pharmacy Corrections**
**9501 East Shea Boulevard**
**Scottsdale, AZ 85260**

Caremark is not obligated to reimburse Provider for a claim if Provider has breached any of the provisions or terms set forth in the Provider Agreement with respect to that claim. Any overpayments made to Provider may be deducted from amounts otherwise payable to Provider. Refer to the **Professional Audits** section of the Provider Manual for additional information on audits.

by applicable Law and any Documentation during the term of the Agreement and for two (2) years after the termination of the Agreement.

### Medicare Part D Requirements

Provider must provide documentation to demonstrate compliance with all Medicare Part D requirements (as stated in the Provider Manual, Caremark Medicare Part D Addenda, CMS guidance or under applicable Law) including, but not limited to:

- Long-term Care billing
- Accurate use of Patient Residence and Pharmacy Service Type values
- Compliance with "CMS-10147 Medicare Prescription Drug Coverage and Your Rights" pharmacy notification
- Documentation to establish coverage determinations (e.g., Hospice, Part B vs. Part D, ESRD)
- That Provider has reviewed the OIG LEIE and the SAM exclusion list as required by the **Federal Health Care Programs Participation Exclusion** section of the Provider Manual to confirm that no Prescriber transmitted on a Medicare Part D claim is on any exclusion list
- Documentation or information requested which relates to a Medicare Part D claim dispensed by Provider but reimbursed directly to other parties, including the Part D Enrollee
- Documentation substantiating any SCC or override codes transmitted on a Medicare Part D claim
- Documentation submitted must comply with guidance set forth by CMS or any other applicable regulatory body

Medicare D claims transmitted with an invalid or inactive Provider identification number are not eligible for reimbursement and will be charged back. Provider must only dispense and bill a Covered Item under a prescriber that has prescriptive authority under applicable Law.

If a copy of a prescription or signature log is not retrievable after sufficient effort, obtain either Prescriber or Eligible Person attestations.

### On-Site and Investigational Audit Resolution – Appeals Process

If there are initial discrepancies as part of an audit, Caremark provides a written appeals process. Caremark will send Provider an initial discrepancy report of all the initial discrepancies along with Documentation Guidelines (refer to **Appendix I** of the Provider Manual for a copy of the current Documentation Guidelines) that show how Provider may address an initial discrepancy and validate the audited claim.

If Provider chooses to appeal the initial discrepancies, Provider must respond to Caremark in writing within thirty (30) days, or other timeframe required by applicable Law, with supporting documentation in accordance with the Documentation Guidelines or the Provider Manual for the identified initial discrepant claim. Documentation must be transmitted to Caremark via certified mail, fax, Federal Express, United Parcel Service, or any other certified carrier (preferably with delivery confirmation), and must be received by the due date specified by Caremark. Provider may contact the Pharmacy Performance department at 1-866-488-4709 <u>prior to</u> the documentation due date to request an extension of the documentation due date.

Provider must notify Caremark of Provider's appeal of an initial discrepancy report, in writing to:

**Caremark – Audit Manager**
**Attn: Pharmacy Performance, MC 020**
**9501 East Shea Boulevard**
**Scottsdale, AZ 85260**

Discrepant claims that are not documented and validated in accordance with the Documentation Guidelines or the Provider Manual are due and owing to Caremark at the expiration of the thirty (30) day appeal period, or other timeframe required by applicable Law; however, Caremark has the right to offset, if consistent with applicable Law, against amounts owed to Provider, before the expiration of the thirty (30) day period, or other time period required by Law, for any discrepant claims as allowed for under the **Provider Suspension** section of the Provider Manual. Audit discrepancies are detailed in a final audit discrepancy report.

<u>Once the documentation period as outlined in the initial discrepancy report has concluded, late documentation will not be accepted. Any documentation submitted after the documentation due date (i.e., for the initial discrepancy report) or after a final audit discrepancy report is issued may be considered by Caremark as part of Caremark's evaluation of the remedies to be taken by Caremark to address the audit findings, but will not impact the final chargeback amount owed to Caremark.</u>

Refer to the **Arbitration** section of the Provider Manual for the dispute resolution process once the final audit discrepancy report is complete.

If the final audit chargeback exceeds $7,500, Provider must reimburse Caremark fifteen percent (15%) of the total final audit chargeback for the cost of the audit, where consistent with applicable Law.

Caremark has the right to offset, if consistent with applicable Law, in whole or in part, against any amounts owing to Provider under the Provider Agreement any amounts owed to Caremark, including but not limited to, amounts owed for audited discrepant claims, charges for non-compliance and audit-related costs pursuant to the Provider Agreement or any Third-Party Agreement, claims submitted in breach of the Agreement, or any audit conducted by a third-party auditor on behalf of a Plan Sponsor. If the Provider fails to satisfy amounts owed related to an audit finding, certain remedies may apply, including termination of the Provider Agreement and any other available remedies.

When Caremark collects from Provider amounts due as a result of audit discrepancies, Provider cannot bill, charge, collect a deposit from, seek compensation, remuneration or reimbursement from, or have any recourse against an Eligible Person or Plan Sponsor in relation to such adjustment or chargeback.

Once Provider is on notice of an on-site or investigative audit, Provider must not during the audit process adjust or reverse claims that are the subject of the audit as Caremark will perform appropriate adjustments and reversals at the conclusion of the audit process.

Caremark may report its audit findings to Plan Sponsors and local/state/federal investigative and law enforcement agencies (and their agents).

### Pharmacy Membership Review Committee

Caremark's Pharmacy Membership Review Committee (PMRC) is a committee responsible for reviewing final audit cases to determine remedial actions that the PMRC determines are appropriate to address the audit findings. The PMRC meets regularly and is comprised of Caremark employees representing multiple departments and industry experiences.

## Other Submission Requirements

### Complete and Accurate Information

Claims are paid based on the information that Provider submits through the claims adjudication systems to Caremark. Provider must clarify ambiguous dosage directions regarding utilization prior to dispensing and must not combine Prescriber authorized refills. If a prescription contains ambiguous directions (e.g., no directions, "Use as Directed," or "PRN"), Provider must obtain more concise directions, as to accurately represent the days supply prior to the Covered Item being dispensed. The directions may be obtained by direct communications with either the Eligible Person or Prescriber. Documentation of the directions on the original prescription is required. The days supply should accurately reflect the documented directions and quantity dispensed. The Prescriber should be accurately identified with an applicable NPI as described in the **Claims Submission** section and within this section of the Provider Manual. The strength of the medication identified on the claim must be an accurate reflection of that which was prescribed or documentation of the unavailability of the prescribed strength will be required. If any claim was paid based on incorrectly submitted data, Caremark reserves the right to charge back, up to the amount of the entire claim, based on the type of inaccuracy in the claim data (e.g., inaccurate person would result in full claim chargeback or reversal).

Provider must not modify any claim data fields (e.g., reduce quantities or days supply) in order to bypass plan edits or Provider Agreement requirements; and Provider must not use an SCC value to inappropriately override a reject.

### Dispensing Limitations

- The quantity dispensed must be entered exactly as it is written on the prescription; Provider must enter the exact metric decimal quantity dispensed only (no rounding on all claim transactions). Many products are transmitted as a kit, the volume of medication, or weight in grams. Provider should review claims submission to ascertain that the quantity is accurate on all claims based on the specificity of the product and Prescriber instructions.

- Provider must submit the days supply accurately. If the Prescriber indicates "as directed," Provider must determine the dosing schedule in order to submit the claim correctly. If the quantity is uncertain, Provider must contact the Prescriber to determine the appropriate amount to dispense and document said amount appropriately on the original prescription.

- If the Prescriber indicates "as directed" for a drug that may be administered on a sliding scale, such as insulin, the Provider must obtain the dosage range, note it on the prescription hard copy, and calculate the days supply


# Miscellaneous

## Assignment

Neither party may assign the Agreement without the prior written consent of the other party; provided, however, that Caremark may, without consent, assign the Agreement to any direct or indirect parent, subsidiary, or affiliated company or to a successor company.

Any permitted assignee shall assume all obligations of its assignor under the Agreement. The Agreement shall inure to the benefit of and be binding upon each party, its respective successors and permitted assignees.

If Provider's proposed assignment is approved by Caremark, Provider covenants that Provider shall enter into an agreement with such permitted successor or permitted assignee assigning Provider's rights and obligations under the Agreement in form and substance acceptable to Caremark, including naming Caremark as an express third-party beneficiary thereof. Notwithstanding an approved assignment and a permitted successor's or permitted assignee's assumption of Provider's liabilities and obligations under the Agreement, Provider will remain jointly liable for any liabilities and obligations under the Agreement until such permitted successor or permitted assignee satisfies such liabilities and obligations in full.

The terms of this **Assignment** section apply notwithstanding any other provision in the Agreement.

## Independent Contractors and Third-Party Beneficiaries

Caremark and Provider are considered independent contractors, and shall have no other legal relationship under or in connection with the Provider Agreement. Neither party will act as or be deemed a representative of the other party for any reason whatsoever.

Except as otherwise provided for in the Provider Agreement, including but not limited to, the **Indemnification** and **Arbitration** sections, no term or provision in the Provider Agreement is for the benefit of any person who is not a party to the Provider Agreement, and no such party shall have any right or cause of action under the Provider Agreement.

## Court Orders, Subpoenas or Governmental Requests

If Caremark receives a court order, subpoena or governmental request relating solely to Provider, Caremark may comply with such order, subpoena or request, and Provider must indemnify and hold harmless Caremark for, from, and against any and all costs (including reasonable attorneys' fees and costs), losses, damages, or other expenses Caremark may suffer or incur in connection with the responding to such order, subpoena or request.

If Provider is requested or required to disclose any Confidential Caremark Information, whether by oral questions, interrogatories, requests for information or documents, subpoenas, or other processes, Provider must promptly provide Caremark with written notice of any such request or requirement so that Caremark may seek an appropriate protective order or other appropriate remedy. If such protective order or other remedy is not obtained, Provider will disclose only that portion of the Confidential Caremark Information as to which it has been advised by legal counsel that disclosure is required by Law; and Provider must exercise its best efforts to obtain reliable assurances that confidential treatment will be accorded to the Confidential Caremark Information that is disclosed in response to such requests or requirements.

## Notices

A notice pursuant to the Provider Agreement to Caremark must be in writing, be delivered in person by certified mail, courier, or first class mail, and be addressed to Network Management at Caremark at the address below:

**Caremark**
**Attn: Network Management, MC080**
**9501 East Shea Boulevard**
**Scottsdale, AZ 85260**

Any notice to Caremark must also be addressed and delivered to:

**Caremark**
**Attn: General Counsel, MC035**
**9501 East Shea Boulevard**
**Scottsdale, AZ 85260**

A notice pursuant to the Provider Agreement to Provider must be in writing, delivered in person by certified mail, courier, or first class mail, at the street, mailing, or check mailing address set forth in Provider's enrollment

documentation or as otherwise indicated by Provider to Caremark and agreed to by Caremark. Notwithstanding the foregoing, Caremark may give notice to Provider (1) via the claims adjudication system; (2) by facsimile via the Provider's facsimile number, or by e-mail via the e-mail address provided by Provider in Provider's enrollment documentation or as otherwise indicated by Provider to Caremark and agreed to by Caremark; or (3) via Caremark's Pharmacy Portal.

Notices are deemed received on the date of delivery to the other party when delivered in person, by courier, by e-mail, by facsimile, by secure electronic message, by certified mail, or when posted via Caremark's Pharmacy Portal. If notice is sent by first class mail, the notice is deemed received on the third business day after the date such notice was mailed.

By participating as a provider in Caremark's networks, Provider acknowledges that it has a prior express business relationship with Caremark and consents to receive facsimile communications as well as automated messages from Caremark.

The terms of this **Notices** section apply notwithstanding any other provision in the Provider Agreement.

### Amendments

From time to time, and notwithstanding any other provision in the Provider Agreement (which includes the Provider Manual), Caremark may amend the Provider Agreement, including the Provider Manual or other Caremark Documents, by giving notice to Provider of the terms of the amendment and specifying the date the amendment becomes effective. If Provider submits claims to Caremark after the effective date of any notice or amendment, the terms of the notice or amendment is accepted by Provider and is considered part of the Provider Agreement.

### Enforceability

In the event that any provision or term set forth in the Provider Agreement is determined invalid or unenforceable, such invalidity and unenforceability will not affect the validity or enforceability of any other provision or term set forth in the Provider Agreement.

### Arbitration

Any and all disputes between Provider and Caremark [including Caremark's current, future, or former employees, parents, subsidiaries, affiliates, agents and assigns (collectively referred to in this Arbitration section as "Caremark")], including but not limited to, disputes in connection with, arising out of, or relating in any way to, the Provider Agreement or to Provider's participation in one or more Caremark networks or exclusion from any Caremark networks, will be exclusively settled by arbitration. This arbitration provision applies to any dispute arising from events that occurred before, on or after the effective date of this Provider Manual. Unless otherwise agreed to in writing by the parties, the arbitration shall be administered by the American Arbitration Association ("AAA") pursuant to the then applicable AAA Commercial Arbitration Rules and Mediation Procedures including the rule governing Emergency Measures of Protection (available from the AAA). In no event may the arbitrator(s) award indirect, consequential, or special damages of any nature (even if informed of their possibility), lost profits or savings, punitive damages, injury to reputation, or loss of customers or business, except as required by Law. The arbitrator(s) shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of the agreement to arbitrate, including, but not limited to, any claim that all or part of the agreement to arbitrate is void or voidable for any reason. The arbitrator(s) must follow the rule of Law, and the award of the arbitrator(s) will be final and binding on the parties, and judgment upon such award may be entered in any court having jurisdiction thereof. Any such arbitration must be conducted in Scottsdale, Arizona and Provider agrees to such jurisdiction, unless otherwise agreed to by the parties in writing. Discovery shall be limited to documents and information for which there is a direct, substantial, and demonstrable need and where such documents and information can be located and produced at a cost that is reasonable in the context of all surrounding facts and circumstances. Further, when the cost and burden of e-discovery are disproportionate to the likely importance of the requested materials, the arbitrator may deny the requests or require that the requesting party advance the reasonable cost of production to the other side. The expenses of arbitration, including reasonable attorney's fees, will be paid for by the party against whom the final award of the arbitrator(s) is rendered, except as otherwise required by Law.

**Arbitration with respect to a dispute is binding and neither Provider nor Caremark will have the right to litigate that dispute through a court. In arbitration, Provider and Caremark will not have the rights that are provided in court, including the right to a trial by judge or jury. In addition, the right to discovery and the right to appeal are limited or eliminated by arbitration. All of these rights are waived and disputes must be resolved through arbitration.**

**No dispute between Provider and Caremark may be pursued or resolved as part of a class action, private attorney general or other representative action or proceeding (hereafter all included in the term "Class Action"). All disputes are subject to arbitration on an individual basis, not on a class or representative basis, or through any form of consolidated proceedings, and the arbitrator(s) will not resolve Class Action disputes and will not consolidate arbitration proceedings without the express written permission of all parties to the Provider Agreement. Provider and Caremark agree that each may pursue or resolve a dispute against the other only in its individual capacity, and not as a plaintiff or class member in any purported Class Action.**

Except as may be required by Law, neither a party nor an arbitrator(s) may disclose the existence, content or results of any dispute or arbitration hereunder without the prior written consent of both parties. In the event a Provider is required by law to make such a disclosure, Provider shall notify Caremark five (5) business days in advance of such disclosure.

Prior to a party initiating an arbitration, such party shall request in writing to the other party ("Dispute Notice") a meeting of authorized representatives of the parties for the purpose of resolving the dispute. The parties agree that, within ten (10) days after issuance of the Dispute Notice, each party shall designate a representative to participate in dispute resolution discussions which will be held at a mutually acceptable time and place (or by telephone) for the purpose of resolving the dispute. Each party agrees to negotiate in good faith to resolve the dispute in a mutually acceptable manner. If despite the good faith efforts of the parties, the authorized representatives of the parties are unable to resolve the dispute within thirty (30) days after the issuance of the Dispute Notice, or if the parties fail to meet within such thirty (30) days, either party may, by written notice to the other party, submit the dispute to binding arbitration. The above notwithstanding, nothing in this provision shall prevent either party from utilizing the AAA's procedures for emergency relief to seek preliminary injunctive relief to halt or prevent a breach of this Provider Agreement.

The terms of this arbitration section apply notwithstanding any other or contrary provision in the Provider Agreement, including, but not limited to, any contrary language in any **Third Party Beneficiary** provision. This Arbitration section survives the termination of the Provider Agreement and the completion of the business relationship between Provider and Caremark. This arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16.

### Force Majeure

Caremark and Provider are excused from performance under the Provider Agreement to the extent that either Caremark or Provider is prevented from performing all or any part of the Provider Agreement as a result of causes that are beyond the affected party's reasonable control, including but not limited to, fire, flood, earthquakes, tornadoes, other acts of God, war, work strikes, civil disturbances, power or communications failure, court order, government intervention, a change in Law, a significant change in the industry, or third-party nonperformance.

### Anti-Kickback Statute, Stark Law, and Caremark Compliance Program

Each party certifies that it shall not violate the federal anti-kickback statute, set forth at 42 U.S.C § 1320a-7b(b) ("Anti-Kickback Statute"), or the federal "Stark Law," set forth at 42 U.S.C § 1395nn ("Stark Law"), with respect to the performance of its obligations under this Provider Agreement. In addition, Caremark's Code of Conduct and policies and procedures on the Anti-Kickback Statute and Stark Law may be accessed at **www.caremark.com/pharminfo**.

Pursuant to Caremark's obligations under a Corporate Integrity Agreement (CIA) with the Office of Inspector General of the United States Department of Health and Human Services dated March 25, 2014, Provider agrees to access the CIA through this website **https://oig.hhs.gov/compliance/corporate-integrity-agreements/cia-documents.asp** upon enrollment, and Provider shall review the CIA in its entirety on an annual basis thereafter. Provider shall immediately notify Caremark in writing if Provider does not comply with the requirement to annually access and review the CIA in its entirety.

### Rebate Programs

Caremark has the right to submit all prescriptions relating to the Provider Agreement to pharmaceutical companies in connection with Caremark's rebate programs and any similar programs. Provider must not submit any of the prescriptions relating to the Provider Agreement to any pharmaceutical company for the purpose of receiving any rebate, discount or the like, except as authorized by Caremark in writing.

### Eligible Person Communications

Provider understands and acknowledges that Caremark may communicate with Eligible Persons as required by Plan Sponsor, applicable Law, or as Caremark determines is necessary regarding matters such as plan benefits, network design and composition, formulary and clinical issues, and manufacturer recalls.

Acceptable documents that may be used as BAE for demonstrating receipt of Home and Community-Based Services (HCBS) include:

- A copy of a State-issued Notice of Action, Notice of Determination, or Notice of Enrollment that includes the Part D Enrollee's name and HCBS eligibility date during a month after June of the previous calendar year;
- A copy of a State-approved HCBS Service Plan that includes the Part D Enrollee's name and effective date beginning during a month after June of the previous calendar year;
- A copy of a State-issued prior authorization approval letter for HCBS that includes the Part D Enrollee's name and effective date beginning during a month after June of the previous calendar year; or
- Other documentation provided by the State showing HCBS eligibility status during a month after June of the previous calendar year.

Once Provider has the required acceptable form(s) of evidence, Provider should either:

- Contact the Pharmacy Help Desk for appropriate Plan Sponsor contact information; or
- Consult the annual Caremark Medicare Part D Plan Sponsor chart distributed to Providers annually.

If urgent, Caremark will work with Provider and Plan Sponsor to update eligibility and resolve the situation; otherwise, Provider should work directly with the Plan Sponsor to submit the acceptable BAE in order for a change to a Part D Enrollee's low-income status to occur through standard protocol.

### Part D Enrollees Receiving CMS Notification on Status Change in LICS/LIS

In order to avoid any interruptions to receiving drug therapy for Part D Low-Income Subsidy (LICS/LIS) eligible Part D Enrollees who have received a notification from CMS indicating a status change, the Part D Enrollee must apply/re-apply through the Social Security Administration, or they may have adjusted copayment and premium liabilities in the future. Providers are encouraged to assist these Part D Enrollees by:

- Helping submit LICS/LIS applications
- Refer the Part D Enrollee to the Social Security Administration at:

    1-800-772-1213
    http://www.ssa.gov/medicareoutreach2/index.htm

### Claims Submission Window for Medicare Part D

Providers have ninety (90) days from original date of fill to receive paid transactions including submissions, reversals and resubmissions of Medicare Part D Claims. Provider Universal Claim Forms (UCFs) will be accepted and processed up to March 31st after the close of the previous plan year in which the date of fill occurred when accompanied by a reasonable explanation why the Medicare Part D Claim could not be submitted and processed online. This timely filing window aligns with the CMS processing windows. Provider UCFs should be clearly identified as "Medicare Part D" claims and should be mailed to the following address:

**RXBINs 004336, 610591, 610415:**

**Medicare Part D**
PO Box 52066
Phoenix, AZ 85072-2066

**Medicare Part D LTC**
PO Box 52419
Phoenix, AZ 85072-2419

**RXBIN 610502:**

**Aetna Medicare Part D**
PO Box 52446
Phoenix, AZ 85072-2446

**Aetna Medicare Part D LTC**
PO Box 14023
Lexington, KY 40512-4023

Refer to the **LTC Pharmacies Timely Claim Submission** subsection regarding timely submission of Medicare Part D LTC claims.

### Medicare Part D Claims Adjustment

Caremark may adjust paid claims to correct errors or reflect changes in eligibility of Eligible Person, to the extent consistent with applicable Law. Any overpayments made to Provider may be deducted from amounts otherwise payable to Provider.

Provider must charge Part D Enrollees the correct cost-sharing amount in accordance with the Part D Plan benefit and as required by CMS. For all LTC claims submitted by Providers for Part D Enrollees, and therefore, for whom Caremark has assessed cost-sharing that has been borne by Provider, Caremark will reimburse Provider for such

amounts. Refer to the **Patient Residence and Pharmacy Service Type Requirements** section of the Provider Manual. Provider agrees that by accepting payment from Caremark for these amounts assessed against Part D Enrollees, Provider is certifying that (1) Provider has not collected or otherwise waived such amounts from such Part D Enrollees or their representatives; (2) Provider is in fact carrying a debt for the amounts charged to such Part D Enrollee; and (3) the amounts reimbursed by Caremark are appropriate, owed, and payable. In cases where Part D Enrollees claims are retroactively identified as inappropriate overpayments to Provider, Caremark will adjust Provider for such amounts. Provider is responsible for (1) collecting outstanding Patient Pay Amount balances from Part D Enrollees; and (2) accurately debiting and/or crediting Part D Enrollees to help maintain accurate True Out-of-Pocket (TrOOP) balances for these retroactively identified claims.

### Unique RXBIN/RXPCN Requirement - Medicare Part D

CMS requires Medicare Part D Plans to be identified with a unique RXBIN/RXPCN combination. Patient profiles must be updated accordingly. Caremark will continue to communicate unique RXBIN/RXPCN/RXGRP combinations of Plan Sponsors. Refer to the Caremark Payer Sheets at **www.caremark.com/pharminfo**.

### General Medicare Part D Submission Requirements for COB

Provider must not hold an Eligible Person who is dually eligible for both Medicare and Medicaid liable for Medicare Part A and B Patient Pay Amounts when Medicaid is responsible for paying such amounts; Provider must accept Caremark's payment as payment in full or bill the appropriate state Medicaid.

For Medicare Secondary Payer (MSP), the primary Medicare Part D RXBIN/RXPCN combinations should be submitted on the COB claim (refer to the Caremark Plan Sponsor grid on the Pharmacy Portal at **https://rxservices.cvscaremark.com**).

For COB claims that are supplemental to Medicare Part D, Provider must submit RXBIN 012114 unless otherwise communicated by Caremark. Plans offering coverage that is supplemental to Medicare Part D may require specific COB RXPCNs as communicated or printed on ID cards. Providers may receive notice of plan-specific claims processing information.

For primary Part D Plan Sponsors who have implemented STCOB, the claim adjudicates against both primary and secondary plans before returning one final response to Provider. Single Transaction COB is limited to certain Plan Sponsors who have elected to administer two benefits that will be coordinated automatically by Caremark for eligible Part D Enrollees.

Refer to the Caremark Payer Sheets referenced in **Appendix A** for additional details on how to submit Medicare Part D COB claims.

### Formulary Transition Fill Process

All Part D Plans are required by CMS to provide a formulary transition plan for Part D Enrollees who are eligible for a transition supply. The intent of the transition plan is to ensure immediate short-term coverage for Part D Enrollees who are either new to a Part D Plan or who otherwise qualify for a Transition Fill (TF). Providers are required to submit TF-eligible claims for eligible Part D Enrollees to ensure these Enrollees are able to receive the TF's to which they are entitled. This will allow Part D Enrollees to continue ongoing therapies while either transitioning to an equivalent formulary drug, or pursuing prior authorizations or formulary exceptions. Drugs excluded under Part D are not eligible for TF.

Caremark provides TF coverage to eligible Part D Enrollees under the circumstances indicated in the "Transition Fill Plan" below when Part D drugs:

1.  are non-formulary; or
2.  are formulary and require prior authorization or step therapy under a plan's utilization management rules; or
3.  have quantity limits or daily dose limits that are not safety related

TF-eligible claims will process and pay upon initial submission and messages will indicate when claims have paid under TF rules. Providers do not need to resubmit a TF Prior Authorization code for TF-eligible claims to adjudicate upon initial submission. The messages listed below will be returned with paid TF claims so Providers can remind Part D Enrollees of actions that should be taken to ensure access to prescription drugs in accordance with Part D formularies and benefits. Provider will receive one of the following messages with the paid claim under TF rules:

> <<Paid under Transition Fill - Non-formulary>>
>
> <<Paid under Transition Fill - PA required>>