# EXHIBIT 6

CONFIDENTIAL AND PROPRIETARY - FOIA EXEMPT - DO NOT DISCLOSE



# Provider Manual

CONFIDENTIAL AND PROPRIETARY - FOIA EXEMPT - DO NOT DISCLOSE


Caremark Provider Manual

# 1. General Information

Caremark appreciates the role that network pharmacies (Providers) play in delivering quality care to our Eligible Persons. The 2020 Caremark Provider Manual ("Provider Manual") contains the policies and procedures to which network pharmacies must adhere in order to provide quality care to Caremark Eligible Persons. The Provider Manual and all Payer Specification Sheets are part of the Provider Agreement and are incorporated into the Provider Agreement pursuant to the terms thereof. This Provider Manual supersedes and replaces all previous versions of the Provider Manual. As a network pharmacy, you are responsible for monitoring and complying with all changes to the Provider Manual. Capitalized terms used in the Provider Manual not defined in the Glossary of Terms shall have the same meaning as in the Provider Agreement.

### 1.01 Proprietary Statement

The Provider Agreement (which includes the Provider Manual) constitutes Confidential Caremark Information and is provided to Provider for business purposes only. Provider must maintain in confidence the Provider Manual, and must not disclose, sell, assign, transfer or give to any third party the Provider Manual or any of its contents without Caremark's prior written consent. Refer to section **14.03 Confidentiality** of the Provider Manual.

### 1.02 Requirement to Adhere to Provider Agreement and Pharmacy Manual Requirements

In the event Provider breaches the Provider Agreement, which includes the Provider Manual, addenda and other Caremark Documents, Caremark may terminate the Provider Agreement (or Provider's participation in specific Plans or networks) and may exercise other remedies available to Caremark as may be set forth herein or otherwise available at Law or equity, including chargeback of applicable claims.

### 1.03 Contacting Caremark

Caremark strives to ensure that Providers receive prompt and courteous assistance with questions that may arise. Caremark's Pharmacy Help Desk Representatives are available every day of the year. The Interactive Voice Response (IVR) system is available 24 hours a day, 7 days a week, excluding down time for maintenance and service.

### 1.04 Pharmacy Help Desk

Following are the phone numbers corresponding with the appropriate Bank Identification Numbers (BINs):

| Caremark System | RXBIN | Pharmacy Help Desk Number* |
|---|---|---|
| Legacy ADV | 004336** | 1-800-364-6331 |
| Legacy PCS | 610415** | 1-800-345-5413 |
| FEP | 610239 | 1-800-345-5413 |
| Legacy CRK | 610029** | 1-800-421-2342 |
| Caremark | 610591 | As communicated by plan or refer to ID card |
| Aetna | 610502 | 1-800-238-6279 |
| IngenioRx | 020099 | 1-833-296-5037 |

Secondary RXBINs and Plan sponsor-specific RXBINs and phone numbers may apply as specified in pharmacy notifications or the Caremark Payer Sheets found online at:

**www.caremark.com/pharminfo**

*Or as communicated on Eligible Person's Card

**Puerto Rico Providers call toll-free 1-800-842-7331

Pharmacy Help Desk representatives will use reasonable efforts to assist providers. However, Pharmacy Help Desk representatives are not able to provide professional advice with respect to the provision of Pharmacy Services.

**Pharmacy Help Desk representatives do not have authority to waive or modify Agreement provisions (e.g., claim submission requirements, audit documentation, credentialing documentation, non-compliance).**

Refer to section **10.02 General Information** of the Provider Manual for detail on Medicare Part D Calls to the Pharmacy Help Desk.



CONFIDENTIAL AND PROPRIETARY - FOIA EXEMPT - DO NOT DISCLOSE

# 15. Miscellaneous

In the event Provider breaches any terms and conditions outlined in this section of the Provider Manual, Caremark, on its own behalf, or on behalf of a Plan Sponsor, may terminate the Provider Agreement (or Provider's participation in specific Plans or networks) and may exercise other remedies available to Caremark as may be set forth herein or otherwise available at Law or equity, including chargeback of applicable claims.

## 15.01 Assignment

Neither party may assign the Agreement without the prior written consent of the other party; provided, however, that Caremark may, without consent, assign the Agreement to any direct or indirect parent, subsidiary, or affiliated company or to a successor company.

Any permitted assignee shall assume all obligations of its assignor under the Agreement. The Agreement shall inure to the benefit of and be binding upon each party, its respective successors and permitted assignees.

If Provider's proposed assignment is approved by Caremark, Provider covenants that Provider shall enter into an agreement with such permitted successor or permitted assignee assigning Provider's rights and obligations under the Agreement in form and substance acceptable to Caremark, including naming Caremark as an express third-party beneficiary thereof. Notwithstanding an approved assignment and a permitted successor's or permitted assignee's assumption of Provider's liabilities and obligations under the Agreement, Provider will remain jointly liable for any liabilities and obligations under the Agreement until such permitted successor or permitted assignee satisfies such liabilities and obligations in full.

The terms of this **Assignment** section apply notwithstanding any other provision in the Agreement.

## 15.02 Independent Contractors and Third-Party Beneficiaries

Caremark and Provider are considered independent contractors, and shall have no other legal relationship under or in connection with the Provider Agreement. Neither party will act as or be deemed a representative of the other party for any reason whatsoever.

Except as otherwise provided for in the Provider Agreement, including but not limited to, the Indemnification section of the Provider Agreement and section **15.09 Arbitration** of the Provider Manual, no term or provision in the Provider Agreement is for the benefit of any person who is not a party to the Provider Agreement, and no such party shall have any right or cause of action under the Provider Agreement.

## 15.03 Court Orders, Subpoenas or Governmental Requests

If Caremark receives a court order, subpoena or governmental request relating solely to Provider, Caremark may comply with such order, subpoena or request, and Provider must indemnify and hold harmless Caremark for, from, and against any and all costs (including reasonable attorneys' fees and costs), losses, damages, or other expenses Caremark may suffer or incur in connection with the responding to such order, subpoena or request.

If Provider is requested or required to disclose any Confidential Caremark Information, whether by oral questions, interrogatories, requests for information or documents, subpoenas, or other processes, Provider must promptly provide Caremark with written notice of any such request or requirement so that Caremark may seek an appropriate protective order or other appropriate remedy. If such protective order or other remedy is not obtained, Provider will disclose only that portion of the Confidential Caremark Information as to which it has been advised by legal counsel that disclosure is required by Law; and Provider must exercise its best efforts to obtain reliable assurances that confidential treatment will be accorded to the Confidential Caremark Information that is disclosed in response to such requests or requirements.

## 15.04 Notices

A notice pursuant to the Provider Agreement to Caremark must be in writing, be delivered in person by certified mail, courier, or first class mail, and be addressed to Network Management at Caremark at the address below:

**Caremark**
**Attn: Network Management, MC080**
**9501 East Shea Boulevard**
**Scottsdale, AZ 85260**

CONFIDENTIAL AND PROPRIETARY

Any notice to Caremark must also be addressed and delivered to:

**Caremark**
**Attn: General Counsel, MC035**
**9501 East Shea Boulevard**
**Scottsdale, AZ 85260**

A notice pursuant to the Provider Agreement to Provider must be in writing, delivered in person by certified mail, courier, or first class mail, at the street, mailing, or check mailing address set forth in Provider's enrollment documentation or as otherwise indicated by Provider to Caremark and agreed to by Caremark. Notwithstanding the foregoing, Caremark may give notice to Provider (1) via the claims adjudication system; (2) by facsimile via the Provider's facsimile number, or by e-mail via the e-mail address provided by Provider in Provider's enrollment documentation or as otherwise indicated by Provider to Caremark and agreed to by Caremark; or (3) via Caremark's Pharmacy Portal.

Notices are deemed received on the date of delivery to the other party when delivered in person, by courier, by e-mail, by facsimile, by secure electronic message, by certified mail, or when posted via Caremark's Pharmacy Portal. If notice is sent by first class mail, the notice is deemed received on the third business day after the date such notice was mailed.

By participating as a provider in Caremark's networks, Provider acknowledges that it has a prior express business relationship with Caremark and consents to receive facsimile communications as well as automated messages from Caremark.

The terms of this **Notices** section apply notwithstanding any other provision in the Provider Agreement.

### 15.05 Termination

### 15.05.01 Termination for Cause

In the event Provider breaches the Provider Agreement, which includes the Provider Manual, addenda and other Caremark Documents, Caremark may terminate the Provider Agreement (or Provider's participation in any Caremark network or Plan Sponsor network) and may exercise other remedies available to Caremark as may be set forth herein or otherwise available at Law or equity. Refer to section **7. Compliance Reviews** of the Provider Manual.

Caremark may immediately terminate the Provider Agreement if:

1. To the extent consistent with applicable Law, Provider makes an assignment for the benefit of creditors, files a petition in bankruptcy (whether voluntary or involuntary), is adjudicated insolvent or bankrupt, a receiver or trustee is appointed with respect to a substantial part of its property or a proceeding is commenced against it which will substantially impair its ability to perform the Provider Agreement;

2. Any court, governmental, or regulatory agency issues to Provider an order to cease and desist from providing Pharmacy Services;

3. (a) There is any change in who holds (directly or indirectly) the ownership interests in Provider or the ownership interests of any pharmacy in which Provider holds an ownership interest; or (b) The right to control the operation of the business of Provider or any pharmacy in which Provider holds an ownership interest is transferred to a third party;

4. A levy, writ of garnishment, attachment, execution or similar item is served upon Provider and not removed within ten (10) days from the date of service;

5. Caremark reasonably determines that Provider is no longer active;

6. If the Provider fails to satisfy amounts or other obligations owed to Caremark, certain remedies may apply, including termination of the Provider Agreement and any other available remedies;

7. Caremark has reason to believe that Provider has engaged in, or is engaging in, any activity which:

    a. Appears to pose a significant risk to the health, welfare, or safety of Eligible Persons or general public;

    b. Implies a failure to maintain proper licensure and related requirements for licensure;

    c. Otherwise impairs Provider's ability to fulfill the requirements of the Provider Agreement;

    d. Is a breach of the Agreement. Caremark's ultimate remedies under this section include immediate termination of the Provider Agreement, including termination of pharmacies found to have a direct or indirect relationship with Provider or its affiliates based upon common officers, directors, current/former employees, owners (direct or indirect); or


e. Constitutes fraud, waste or abuse

The termination rights set forth in this section are in addition to any and all other rights and remedies that may be available to Caremark under the Provider Agreement or at Law or equity. The effective date of a termination shall be determined by Caremark and as in accordance with applicable Law.

For any Provider with multiple locations, Caremark retains the right to terminate one or any number of Provider's pharmacy locations without terminating the Provider Agreement.

### 15.05.02 Termination Without Cause

Unless precluded by applicable Law, Caremark may at any time terminate the Provider Agreement without cause or terminate Provider from providing Pharmacy Services to specific Plans without cause upon a notice to Provider, regardless of the network(s) in which Provider participates.

Unless precluded by applicable Law, Provider may terminate the Provider Agreement without cause upon one hundred fifty (150) days' prior written notice to Caremark provided, however, that if applicable Law or a Caremark network or a Plan Sponsor network requires a longer notice period, the Provider Agreement shall not terminate until the expiration of such longer period.

Unless precluded by applicable Law, Provider may terminate participation in any Caremark network or a Plan Sponsor network upon one hundred fifty (150) days' prior written notice to Caremark, specifying the date of termination and the names of the Caremark network(s) or Plan Sponsor network(s) in which Provider will no longer participate, provided, however, that if applicable Law or a Caremark network or Plan Sponsor network requires a longer notice period, the termination will not take effect until the expiration of such longer period. Absent the prior written consent of Caremark, Provider may not elect to participate in a Caremark network or a Plan Sponsor network, for thirty (30) days or until the next solicitation period for that Caremark network or Plan Sponsor network, whichever is longer, to the extent consistent with applicable Law.

The terms of this **Termination Without Cause** section apply notwithstanding any other provision in the Provider Agreement. For termination without cause by Provider from a Medicare Part D network, refer to section **10.01.01 Network Participation** of the Provider Manual.

### 15.05.03 Rights and Remedies in the Event of Termination or Breach

In the event of a termination of the Provider Agreement for any reason, Provider must (upon Caremark's request) surrender the Provider Agreement, Provider Manual, other Caremark Documents, other materials related to products, programs, services, and Plan Sponsor announcements provided by Caremark to Provider or in Provider's possession or control.

In the event Provider breaches any provision of the Provider Agreement, in addition to all other termination rights, Caremark shall have the right, to the extent not contrary to Law, to (1) suspend any and all obligations of Caremark, including payment to Provider, under and in connection with the Provider Agreement, (2) impose reasonable handling, investigation and/or improper use fees, and/or (3) in whole or in part, offset against any amounts owed to Provider under the Provider Agreement or under any other agreement between Caremark and Provider, any amounts required to be paid by Provider to Caremark. These rights and remedies are not exclusive and are in addition to any other rights and remedies that may be available to Caremark under the Provider Agreement or at Law or equity.

### 15.06 Survival of Certain Provisions

Termination of the Provider Agreement or Caremark or Plan Sponsor network will have no effect upon the rights and obligations of the parties accruing prior to the effective date of termination.

### 15.07 Amendments

From time to time, and notwithstanding any other provision in the Provider Agreement (which includes the Provider Manual), Caremark may amend the Provider Agreement, including the Provider Manual or other Caremark Documents, by giving notice to Provider of the terms of the amendment and specifying the date the amendment becomes effective. If Provider submits claims to Caremark after the effective date of any notice or amendment, the terms of the notice or amendment is accepted by Provider and is considered part of the Provider Agreement.

Case 2:23-cv-01500-RSM   Document 43-6   Filed 12/22/23   Page 7 of 8

CONFIDENTIAL AND PROPRIETARY - FOIA EXEMPT - DO NOT DISCLOSE


Caremark Provider Manual

### 15.08 Enforceability

In the event that any provision or term set forth in the Provider Agreement is determined invalid or unenforceable, such invalidity and unenforceability will not affect the validity or enforceability of any other provision or term set forth in the Provider Agreement.

### 15.09 Arbitration

Any and all disputes between Provider and Caremark [including Caremark's current, future, or former employees, parents, subsidiaries, affiliates, agents and assigns (collectively referred to in this Arbitration section as "Caremark")], including but not limited to, disputes in connection with, arising out of, or relating in any way to, the Provider Agreement or to Provider's participation in one or more Caremark networks or exclusion from any Caremark networks, will be exclusively settled by arbitration.  This arbitration provision applies to any dispute arising from events that occurred before, on or after the effective date of this Provider Manual. Any dispute otherwise arbitrable hereunder shall be deemed waived, and no such dispute shall be made or raised, unless a Dispute Notice has been given to Caremark, or arbitration filed, as provided below. Unless otherwise agreed to in writing by the parties, the arbitration shall be administered by the American Arbitration Association ("AAA") pursuant to the then applicable AAA Commercial Arbitration Rules and Mediation Procedures including the rule governing Emergency Measures of Protection (available from the AAA).  In no event may the arbitrator(s) award indirect, consequential, or special damages of any nature (even if informed of their possibility), lost profits or savings, punitive damages, injury to reputation, or loss of customers or business, except as required by Law.

The arbitrator(s) shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of the agreement to arbitrate, including but not limited to, any claim that all or part of the agreement to arbitrate is void or voidable for any reason.  In the event the arbitrator(s) determine that any provision of this agreement to arbitrate is invalid for any reason, such provision shall be stricken and all remaining provisions will remain in full force and effect.  The arbitrator(s) must follow the rule of Law, and the award of the arbitrator(s) will be final and binding on the parties, and judgment upon such award may be entered in any court having jurisdiction thereof. Any such arbitration must be conducted in Scottsdale, Arizona and Provider agrees to such jurisdiction, unless otherwise agreed to by the parties in writing.

Discovery shall be limited to documents and information for which there is a direct, substantial, and demonstrable need and where such documents and information can be located and produced at a cost that is reasonable in the context of all surrounding facts and circumstances. Further, when the cost and burden of e-discovery are disproportionate to the likely importance of the requested materials, the arbitrator may deny the requests or require that the requesting party advance the reasonable cost of production to the other side. Absent a showing of exceptional circumstances, as determined by the arbitrator(s), the parties shall be limited to one corporate representative deposition per party with each deposition subject to a four-hour time limit. The expenses of arbitration, including reasonable attorney's fees, will be paid for by the party against whom the final award of the arbitrator(s) is rendered, except as otherwise required by Law.

**Arbitration with respect to a dispute is binding and neither Provider nor Caremark will have the right to litigate that dispute through a court.  In arbitration, Provider and Caremark will not have the rights that are provided in court, including the right to a trial by judge or jury.  In addition, the right to discovery and the right to appeal are limited or eliminated by arbitration.  All of these rights are waived and disputes must be resolved through arbitration.**

**No dispute between Provider and Caremark may be pursued or resolved as part of a class action, private attorney general or other representative action or proceeding (hereafter all included in the term "Class Action").  All disputes are subject to arbitration on an individual basis, not on a class or representative basis, or through any form of consolidated proceedings, and the arbitrator(s) will not resolve Class Action disputes and will not consolidate arbitration proceedings without the express written permission of all parties to the Provider Agreement.  Provider and Caremark agree that each may pursue or resolve a dispute against the other only in its individual capacity, and not as a plaintiff or class member in any purported Class Action.**

Except as may be required by Law, a party, its employees, agents, consultants, authorized representatives, counsel, or arbitrator(s) shall not disclose the existence, content or results of any dispute or arbitration hereunder without the prior written consent of both parties. In the event a Provider is required by law to make such a disclosure, Provider shall notify Caremark five (5) business days in advance of such disclosure. Provider acknowledges and agrees that any breach of this provision would cause Caremark immediate and irreparable injury or loss that cannot be fully remediated by monetary damages. Accordingly, if Provider, its agents, counsel or arbitrator fail to abide by the terms and conditions set forth in this Section 15.09 of the Provider Manual, Caremark shall be entitled to (i) specific performance, including immediate issuance of a temporary restraining order or preliminary injunction enforcing the Agreement, and to judgment for damages (including reasonable attorneys' fees and costs) caused by the breach; (ii) an option to void the dispute resolution or arbitration award; and (iii) to all other legal and equitable remedies available to Caremark.

Miscellaneous

CONFIDENTIAL AND PROPRIETARY

91



**Caremark Provider Manual**

CONFIDENTIAL AND PROPRIETARY - FOIA EXEMPT - DO NOT DISCLOSE

**Miscellaneous**

Prior to a party initiating an arbitration, such party shall request in writing to the other party ("Dispute Notice") a meeting of authorized representatives of the parties for the purpose of resolving the dispute. Disputes must be filed within the following timeframes: (i) for audit related disputes, within six (6) months from the date of the final audit findings; (ii) for termination related disputes, within six (6) months from the date of the notification of termination; and (iii) for all other disputes, within six (6) months from the date on which the facts giving rise to the dispute first arose. The parties agree that, within fourteen (14) business days after issuance of the Dispute Notice, each party shall designate a representative to participate in dispute resolution discussions which will be held at a mutually acceptable time and place (or by telephone) for the purpose of resolving the dispute. Each party agrees to negotiate in good faith to resolve the dispute in a mutually acceptable manner. If despite the good faith efforts of the parties, the authorized representatives of the parties are unable to resolve the dispute within forty-five (45) business days after the issuance of the Dispute Notice, or if the parties fail to meet within such forty-five (45) business days, either party may, by written notice to the other party, submit the dispute to binding arbitration provided however that any demand for arbitration must be filed within six (6) months from the date of the issuance of the Dispute Notice. The above notwithstanding, nothing in this provision shall prevent either party from utilizing the AAA's procedures for emergency relief to seek preliminary injunctive relief to halt or prevent a breach of this Provider Agreement.

Any party initiating an arbitration pursuant to this arbitration section shall place in escrow for the benefit of the opposing party an amount to be determined by the arbitrator(s) as sufficient to cover the estimated attorney's fees and other expenses of arbitration that will be incurred in defense of the arbitration action, which shall in no event be less than $50,000. Such funds will be released upon the entry of a final award of the arbitrator(s), with any excess reimbursed to the initiating party. Failure to place such funds in escrow will constitute a material breach of this arbitration section.

The terms of this arbitration section apply notwithstanding any other or contrary provision in the Provider Agreement, including but not limited to, any contrary language in any **Third Party Beneficiary** provision. This Arbitration section survives the termination of the Provider Agreement and the completion of the business relationship between Provider and Caremark. This arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16.

### 15.10 Force Majeure

Caremark and Provider are excused from performance under the Provider Agreement to the extent that either Caremark or Provider is prevented from performing all or any part of the Provider Agreement as a result of causes that are beyond the affected party's reasonable control, including but not limited to, fire, flood, earthquakes, tornadoes, other acts of God, war, work strikes, civil disturbances, power or communications failure, court order, government intervention, a change in Law, a significant change in the industry, or third-party nonperformance.

### 15.11 Anti-Kickback Statute, Stark Law, and Caremark Compliance Program

Each party certifies that it shall not violate the federal anti-kickback statute, set forth at 42 U.S.C § 1320a-7b(b) ("Anti-Kickback Statute"), or the federal "Stark Law," set forth at 42 U.S.C § 1395nn ("Stark Law"), with respect to the performance of its obligations under this Provider Agreement. In addition, Caremark's Code of Conduct and policies and procedures on the Anti-Kickback Statute and Stark Law may be accessed at **www.caremark.com/pharminfo.**

### 15.12 Rebate Programs

Caremark has the right to submit all prescriptions relating to the Provider Agreement to pharmaceutical companies in connection with Caremark's rebate programs and any similar programs. Provider must not submit any of the prescriptions relating to the Provider Agreement to any pharmaceutical company for the purpose of receiving any rebate, discount or the like, except as authorized by Caremark in writing.

### 15.13 Eligible Person Communications

Provider understands and acknowledges that Caremark may communicate with Eligible Persons as required by Plan Sponsor, applicable Law, or as Caremark determines is necessary regarding matters such as plan benefits, network design and composition, formulary and clinical issues, and manufacturer recalls.