# EXHIBIT 8

## ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement is made and entered into effective as of the 31st day of December, 2021 (the "Effective Date"), by and among OSTERHAUS PHARMACY, INC., an Iowa corporation doing business as OSTERHAUS PHARMACY, (the "Seller"), and ROBERT J. GREENWOOD and CHERYL L. GREENWOOD, individually, and MAQUOKETA PHARMACY INC., an Iowa corporation, (collectively the "Buyers").

WHEREAS, Seller owns and operates a business known as "Osterhaus Pharmacy" located at 918 W. Platt Street, #2, Maquoketa, Iowa (the "Business").

WHEREAS, Seller owns certain tangible operating assets, customer lists, and intangible assets used in the conduct of the Business (the "Business Assets").

WHEREAS, Buyers desire to purchase certain Business Assets (hereinafter the "relevant business") of Seller relating to the Business currently being conducted by the Seller in Iowa; and

WHEREAS, Sellers desires to sell these certain Business Assets to Buyers, and

WHEREAS, the parties wish to set forth the terms and conditions of that purchase and sale in writing.

In consideration of the mutual covenants contained in this Agreement, the parties agree as follows:

1. PURCHASE AND SALE OF ASSETS.

At the closing as hereinafter defined, Buyers shall purchase from Seller and Seller shall convey, transfer, sell and assign to Buyers the following assets of Seller (the "Assets"), as the same exist at closing:

    a.    Seller's Business inventory. The inventory needs to be clean according to industry standards and have at least three months of dating and still be in the original packaging in order to be included in the inventory amount. The foregoing notwithstanding, all medications in the Parata Robot shall be included in the inventory amount.

    b.    Seller's inventories of supplies and other merchandise of the Business.

    c.    Seller's Dodge Mini-Van, Parata Robot, furniture, fixtures, equipment, improvements, computers, software, customer records, customer lists, tools, supplies and materials, business records,

Initials

merchandise inventory, and goodwill including the service mark and trademark "Osterhaus Pharmacy."

    d.    Seller's operating name, trade name and service name "Osterhaus Pharmacy" and all sales data, records, brochures, supplier's lists, customer lists, licenses, permits, telephone numbers, goodwill, contracts, choses in action, and other intangible assets of the Seller relating to the Business.

    e.    Excluded Assets. Seller shall retain all accounts receivable accrued through December 31, 2021 at 6:00 p.m. Buyers shall establish with Seller a mutually agreeable method for Seller to receive the payments made on these exempted accounts receivable. In addition, the following assets shall be retained by Seller and are not included in the purchased Business Assets: cash and cash equivalents; prepaid federal and state income tax deposits, marketable securities, and all personal items owned by Matthew Osterhaus, Marilyn Osterhaus, and Robert J. Osterhaus.

    f.    Buyers shall be entitled to collect, recover and retain all accounts receivable arising from or related to operation of the Business which come into existence after the closing date.

    g.    Buyers shall assume all obligations of Seller under the existing maintenance agreement for the Parata Robot. Seller has paid the annual maintenance fee in the amount of ████████, which covers the period from October 6, 2021 through October 5, 2022. The annual maintenance fee shall be prorated through December 1, 2021 and Buyers shall reimburse Seller the sum of ████████ at closing for the prorated unused balance of the annual maintenance fee.

    h.    Buyers assume no other liabilities, obligations or commitments of Seller to any of Seller's creditors, shareholders, affiliates, employees or third parties existing as of December 31, 2021 at 6:00 P.M. The foregoing notwithstanding, Buyers shall be solely liable for all liabilities, obligations and/or commitments incurred by Buyers relating to the operation of the Business accrued from after the closing date.

## 2. PURCHASE PRICE.

The purchase price to be paid by the Buyers to the Seller for the assets shall be equal to an amount of ████████ allocated as set forth below.

| | |
|---|---|
| 1. Inventory | $ ███████ |
| * to be adjusted on date of closing & final Inventory | |
| 2. Equipment | $ ███████ |
| 3. Goodwill & Covenant Not to Compete | $ ███████ |
| Total | $ ███████ |

## 3. METHOD OF PAYMENT.

*[Initials]*
Initials

The purchase price determined in accordance with Paragraph 2 shall be paid as follows:

a. Buyers have made an earnest payment to Seller in the amount of ▓▓▓▓▓ Dollars (▓▓▓▓▓), which shall constitute a good faith deposit on the Purchase Price as defined in this Section, and which shall be deducted from the balance due at Closing. The earnest money shall be paid to Seller at Closing upon performance of Seller's obligations under this Agreement.

b.   The remainder of the purchase price in the amount ▓▓▓▓▓ Thousand Dollars (▓▓▓▓▓) shall be paid in the form of certified funds to Seller at the closing with any adjustments made as to the inventory on hand on the date of closing as either an addition to or a reduction from the purchase price.

c.   It is understood and agreed to that the estimated value of the current inventory is ▓▓▓▓▓ ▓▓▓▓▓. In the event that the value of the inventory at closing is greater than ▓▓▓▓▓ the excess amount shall be added to the purchase price and shall be due by Buyers to Seller at the time of closing. In the event that the value of the inventory at closing is less than ▓▓▓▓▓ then the shortage shall be deducted from the purchase price. After adjustment for the value of the inventory at closing, the resulting unpaid balance of the purchase price shall be due and payable by the Buyers to the Seller at the time of closing.

Inventory will be valued at the sticker price less any rebates available. All inventory with 3 months or less dating will not be counted. All inventory will be subject to review within one month of closing date. All medications in the Parata Robot shall be accepted and any other medication not in its original packaging will be rejected.

### 4.   CLOSING.

The closing shall take place on December 31, 2021, or at such other time, date and place as shall be mutually agreed to by the parties. The parties may agree to an inventory figure when the inventory is completed on December 30th, 2021, which figure will be then used at closing with the understanding that thereafter due to the provisions set forth in the possession below, there will need to be a further adjustment between Buyers and Seller once the final inventory determination is made and adjustments taken.

### 5.   POSSESSION.

Possession shall be given by Seller to the Buyers at 6:00 p.m. on December 31st, 2021 or as soon thereafter as closing has taken place. Seller shall receive the profit from the Business up through the time of closing. Buyers shall receive profit and proceeds from any sales made after the time of closing.

At the time of closing, Buyers and Seller shall execute all documents necessary to enter into this Asset Purchase Agreement including assignment of any leases, Bill of Sale for transfer of assets by

_[initials]_
Initials

Seller to Buyers, assignments of any and all contracts necessary for the completion of the Asset Purchase Agreement.

### 6. REPRESENTATIONS AND WARRANTIES OF SELLER.

Sellers represents and warrants to Buyers that:

a. **Organization.** Seller is a corporation duly organized, validly existing, and in good standing under the laws of the State of Iowa with necessary power and authority to conduct its business as presently conducted and to own its properties and assets.

b. **Creditors.** Seller shall be responsible for and shall indemnify and hold Buyers harmless from all liabilities, obligations or commitments of Seller to any of Seller's creditors, shareholders, affiliates, employees or third parties existing as of December 31, 2021 at 6:00 P.M.

c. **Payment of Taxes.** Seller has filed all federal, state and local tax returns required to be filed and has made timely payment of all taxes shown by these returns to be due and payable, except as otherwise stated here: 2021 payroll taxes due by January 31, 2022.

d. **Title, Sufficiency and Condition of Assets.** Seller has good and marketable title to all assets listed or described in paragraph 1 and which are to be sold or delivered to Buyers. Seller has not removed or converted any tangible assets used in the operation of its Business. All inventory of good quality, within stated expiration dates, is usable and sellable in the ordinary course of business.

e. **Authorization Agreement.** The execution and delivery of this Agreement and consummation of the transaction contemplated by this Agreement have been duly and validly authorized by all necessary corporate action on the part of the Seller.

f. **Litigation and Claims.** There are no legal, administrative, arbitration or other proceedings pending against the Seller. Seller has substantially complied with and is not in default in any material respect under the laws, ordinances, requirements, regulations or orders applicable to the business.

Seller has complied with all the necessary notifications pursuant to Federal and Iowa law regarding the transfer of pharmaceutical records.

### 7. CONDUCT OF SELLER'S BUSINESS PRIOR TO CLOSING.

a. Seller shall operate the Business in the ordinary course of Seller's business until the date of closing. Seller shall properly maintain the Business Assets in their current, existing condition during the period prior to the date of Closing and shall not use such Business Assets in any manner out of the ordinary course of Seller's business.

Initials

b. The Seller shall use Seller's best efforts to preserve for Buyers the goodwill of all of the firms and persons having business relations with the Seller.

c. No contract, contract amendment, lease, agreement, plan, or commitment shall be entered into by or on behalf of the Seller with respect to the Business Assets being acquired by Buyers unless it is entered into in the ordinary course of Seller's business.

d. Seller will take all necessary action to make all notifications to customers and the general public as required by the State of Iowa regarding the transfer of a pharmaceutical organization.

e. Seller has afforded Buyers access to allow a thorough inspection of all Business Assets sold hereunder, and Buyer accepts such Business Assets in their current condition "AS IS" and "WITH ALL FAULTS" and **Seller disclaims all warranties, expressed or implied, including the warranties of merchantability and fitness for a particular purpose.**

## 8. REPRESENTATIONS AND WARRANTIES OF BUYERS.

Buyers represent and warrant to Seller that:

a. Corporate Organization. Maquoketa Pharmacy, Inc. is a corporation duly organized, validly existing and in good standing under the laws of the State of Iowa.

b. Authorization of Agreement. Buyers have authority to execute any and all documents and are not in any breach of any provision of Buyers' Articles of Incorporation or ByLaws.

c. No adverse conditions. No legal action whether civil, criminal or administrative is pending or threatened against Buyers that would adversely affect its ability to consummate this transaction.

d. Buyers' Stock Ownership. All of the existing and outstanding shares of stock in Maquoketa Pharmacy, Inc. is issued to Robert J. Greenwood and Cheryl L. Greenwood and said shares of stock are free and clear of all liens and encumbrances of any kind and nature whatsoever.

9. INDEMNITY BY SELLER. Seller agrees to indemnify and hold Buyers harmless from and against all damages, costs and expenses, including without limitation thereof, reasonable attorney fees and litigation expenses incurred by Buyers as a result of:

a. Any damage or deficiency resulting from any misrepresentation, breach of warranty or breach of any agreement on part of Seller under this Agreement

b. Any liability arising from Seller's ownership of the Business Assets or operation of the Business that accrued prior to the closing including, but not limited to, any accrued vacation, back pay, wages or other benefits owing to Seller's existing employees as of December 31, 2021.

Initials

10. **INDEMNITY BY BUYERS.** Buyers, jointly and severally, agree to indemnify and hold Seller harmless from and against all damages, costs, and expenses, including without limitation thereof, Seller's reasonable attorney fees and litigation expenses incurred as a result of:

a. All damages arising from or related to any misrepresentation, breach of warranty, or breach of any agreement by Buyers under this Agreement.

b. All liability arising from Buyers' ownership of the Business Assets and/or operation of the Business that accrued from and after closing including, but not limited to, accounts payable, taxes, and employee wages and benefits

11. **SUBSEQUENT COOPERATION.** The parties mutually agree to cooperate and deliver on or after the closing date such other documents as any of them may reasonable request in order to effect the transactions contemplated by this agreement.

12. **NON-COMPETITION.** Matthew Osterhaus signs this Agreement specifically for the purpose of agreeing that he will not be involved directly in the ownership of any corporation, partnership, limited liability company, partnership or other association in opening a pharmacy within 25 miles of Maquoketa, Iowa, for a period of two (2) years from the date of the closing of this transaction. Nothing in this covenant shall limit Matthew Osterhaus from working as an agent or employee of another pharmacy not owned by Buyers. Matthew Osterhaus acknowledges that his breach or threatened or attempted breach of this Non-Competition provision could cause irreparable harm to Buyers not compensable in monetary damages alone and that Buyers will be entitled, in addition to all other applicable remedies, to a temporary and permanent injunction and decree of specific performance of the terms of this non-competition provision of this agreement.

13. **MATTHEW OSTERHAUS CONTINUATION OF EMPLOYMENT.** It is the intent of the parties that Matthew Osterhaus be employed as a pharmacist for Buyers. To that end, Matthew Osterhaus and the Buyers may agree on a schedule satisfactory to parties which allows Matthew Osterhaus to continue to work as a pharmacist for Buyers at Maquoketa Pharmacy or another pharmacy mutually agreed upon by the parties. The parties acknowledge that there is no employment agreement between Matthew Osterhaus and the Buyers and if he is employed by Buyers such employment will be considered "at will".

14. **ASSIGNMENT OF LEASE.** Seller agrees to assign its interest as tenant under the lease for the premises known as Osterhaus Pharmacy to the Buyers and will provide to Buyers a Consent to Assignment of Lease executed by the current Landlord. Buyers agree to assume all of the Tenant's obligations under the Lease and shall indemnify and hold Seller harmless from all further liability under the Lease.

Initials

Dated: 11-1-2021

SELLER

Osterhaus Pharmacy, Inc., an Iowa corporation

By: _____
Matthew Osterhaus, President

Dated: 11-1-2021

BUYERS

Maquoketa Pharmacy, Inc., an Iowa corporation

By: _____
Robert J. Greenwood, President

By: _____
Cheryl L. Greenwood, Individually

_____
Robert J. Greenwood, Individually


Initials