THE HONORABLE RICARDO S. MARTINEZ

1

2

3

4

5

6                         UNITED STATES DISTRICT COURT
                          WESTERN DISTRICT OF WASHINGTON

7
OSTERHAUS PHARMACY, INC. on behalf
8   of itself and all others similarly situated,
                                                    NO. 2:23-cv-01500-RSM
9               Plaintiff,
                                                    **PLAINTIFF'S OPPOSITION TO**
10      v.                                          **DEFENDANTS' MOTION TO**
                                                    **COMPEL ARBITRATION**
11  CVS HEALTH CORPORATION, CVS
    PHARMACY, INC., CAREMARK Rx,                    **NOTED FOR CONSIDERATION:**
12  L.L.C. (f/k/a/ CAREMARK Rx, INC.),              MARCH 1, 2024
    CAREMARK, L.L.C., CAREMARKPCS,
13  L.L.C., CAREMARK PCS HEALTH L.L.C.,
    CAREMARK IPA, L.L.C., CAREMARK
14  PART D SERVICES, LLC, AETNA INC.,               **ORAL ARGUMENT REQUESTED**
    AETNA HEALTH HOLDINGS, LLC, AND
15  AETNA HEALTH MANAGEMENT, LLC,

16              Defendants.

17

18

19

20

21

22

23

24

25

26

27

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
TO COMPEL ARBITRATION
CASE NO. 2:23-cv-01500-RSM

# TABLE OF CONTENTS

PAGE

I.   BACKGROUND ....................................................................................................... 2

    A.   Osterhaus Pharmacy served a small Iowa community for more than 60
        years and was driven out of business, in part, by Caremark's unfair and
        anticompetitive conduct ................................................................................... 2

    B.   Caremark's mandatory arbitration clause is laden with unconscionable
        terms............................................................................................................... 3

    C.   Caremark's 2020 Provider Manual and mandatory arbitration clause .................. 5

        1.   Delegation Clause ................................................................................ 5

        2.   Escrow Requirement............................................................................ 5

        3.   Asymmetric Anti-Aggregation Clause ...................................................... 6

        4.   Asymmetric Remedies.......................................................................... 6

        5.   Asymmetric Fee Shifting ...................................................................... 6

        6.   Asymmetric Discovery Limitations............................................................ 7

        7.   Statute of Limitations........................................................................... 7

        8.   Confidentiality Provision ...................................................................... 7

        9.   Unilateral Remedy for Breach ................................................................ 8

II.   LEGAL STANDARD.............................................................................................. 8

III.   ARGUMENT .......................................................................................................... 10

    A.   Caremark's Delegation Clause is substantively unconscionable......................... 10

        1.   The Escrow Provision imposes unreasonable and excessive
            costs................................................................................................. 10

        2.   The Escrow Provision is effectively one-sided........................................ 12
        3.   The Unilateral Remedy for Breach Clause exacerbates the
            Delegation Clause ............................................................................... 12

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

4. Caremark's Unilateral Amendment power renders the Delegation Clause unconscionable .......................................................... 13

B. The Delegation Clause is procedurally unconscionable because it was presented in a way that deprived Osterhaus of meaningful choice ...................... 14

1. Caremark has imposed an unconscionable contract of adhesion ............. 14

2. Caremark's Unilateral Amendment Power Renders the Delegation Clause illusory .......................................................... 16

C. The underlying Arbitration Agreement is unenforceable because it is substantively unconscionable .................................................................. 16

1. The underlying Arbitration Agreement is unconscionable ...................... 17

2. Arbitration imposes unconscionable costs and risks on pharmacies ....................................................................... 17

3. The abbreviated Statute of Limitations is unconscionable ...................... 19

4. The one-sided remedy for breach is unconscionable ............................... 19

5. The limitations on discovery are unconscionable ................................... 19

6. The Anti-Aggregation Provision is unconscionable ................................ 20

7. The Confidentiality Provision is unconscionable .................................... 20

D. The underlying Arbitration Agreement is unenforceable because it is procedurally unconscionable ...................................................................... 22

E. None of the cases cited by Caremark suggest a different result .......................... 22

F. The Delegation Provision and the underlying Arbitration Agreement should not be saved by severing or modifying the unconscionable terms........... 23

IV. ARBITRATION SHOULD ENTAIL A STAY, NOT DISMISSAL ............................... 24

V. CONCLUSION.................................................................................................. 26

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

# TABLE OF AUTHORITIES

**PAGE(S)**

## FEDERAL CASES

*AT&T Mobility LLC v. Concepcion,*
   563 U.S. 333 (2011)............................................................................24

*Batory v. Sears, Roebuck and Co.,*
   456 F. Supp. 2d 1137 (D. Ariz. 2006) ..................................................13, 23

*Bielski v. Coinbase, Inc.,*
   87 F.4th 1003 (9th Cir. 2023) ...........................................................8, 9, 17, 22

*Caremark LLC v. AIDS Healthcare Found.,*
   2022 WL 4267791 (D. Ariz. Sept. 15, 2022)..........................................4, 11

*Caremark, LLC v. Chickasaw Nation,*
   43 F.4th 1021 (9th Cir. 2022) ........................................................................22

*Caremark LLC v. Choctaw Nation,*
   2022 WL 768098 (D. Ariz. Mar. 14, 2022)...................................................22

*Edwards v. Vemma Nutrition,*
   2018 WL 637382 (D. Ariz. Jan. 31, 2018) ..............................................13, 14

*E.W. Bank v. Bingham,*
   992 F. Supp. 2d 1130 (W.D. Wash. 2014)....................................................25

*First Options of Chi., Inc. v. Kaplan,*
   514 U.S. 938 (1995)..........................................................................................8

*Holley-Gallegly v. TA Operating, LLC,*
   74 F.4th 997 (9th Cir. 2023) ............................................................................9

*Hoober v. Movement Mortg., LLC,*
   382 F. Supp. 3d 1148 (W.D. Wash. 2019)....................................................25

*Ingle v. Circuit City Stores, Inc.,*
   328 F.3d 1165 (9th Cir. 2003) .......................................................................19

*In re Juul Labs, Inc., Antitrust Litig.,*
   555 F. Supp. 3d 932 (N.D. Cal. 2021) ..........................................................19

*Johnmohammadi v. Bloomingdale's,*
   755 F.3d 1072 (9th Cir. 2014) .......................................................................25

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

*Johnson v. Mobil Oil Corp.*,
    415 F. Supp. 264 (E.D. Mich. 1976) ........................................................................14

*Lackie Drug Store, Inc. v. Ark. CVS Pharmacy, LLC*,
    2021 WL 5567360 (E.D. Ark. Nov. 29, 2021) ........................................................22

*Larsen v. Citibank FSB*,
    871 F.3d 1295 (11th Cir. 2017) ...............................................................................21

*Lim v. TForce Logistics, LLC*,
    8 F.4th 992 (9th Cir. 2021) ...............................................................8, 9, 16, 17

*Longnecker v. Am. Exp. Co.*,
    23 F. Supp. 3d 1099 (D. Ariz. 2014) ......................................13, 14, 21, 23

*MediVas, LLC v. Marubeni Corp.*,
    741 F.3d 4 (9th Cir. 2014) .......................................................................................25

*Morgan v. Sundance, Inc.*,
    596 U.S. 411 (2022)..................................................................................................8

*Newton v. Am. Debt Servs., Inc.*,
    854 F. Supp. 2d 712 (N.D. Cal. 2012) ...................................................................19

*Rent-A-Ctr., W., Inc. v. Jackson*,
    561 U.S. 63 (2010)....................................................................................................8

*Schnellecke Logistics USA LLC v. Lucid USA Inc.*,
    2023 WL 5432321 (D. Ariz. Aug. 23, 2023)..................................................14, 15

*Ward v. Crow Vote LLC*,
    2021 WL 5927803 (C.D. Cal. Oct. 7, 2021)...........................................................21

*Winfrey v. Kmart Corp.*,
    692 F. App'x 356 (9th Cir. 2017) ...........................................................................25

*Zaborowski v. MHN Gov't Servs., Inc.*,
    601 F. App'x 461 (9th Cir. 2014) ...........................................................................18

## STATE CASES

*Burnett v. Pagliacci Pizza, Inc.*,
    196 Wn.2d 38 (2020) ..............................................................................................24

*Clark v. Renaissance W., LLC*,
    307 P.3d 77 (Ariz. Ct. App. 2013) ...............................................................9, 10,11, 14

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

*Desert Peak Homeowners Ass'n v. Pinnacle at Desert Peak Condo. Ass'n*,
2015 WL 8166006 (Ariz. Ct. App. Dec. 8, 2015) .......................................................... 9

*Dueñas v. Life Care Ctrs. of America, Inc.*,
336 P.3d 763 (Ariz. Ct. App. 2014) ....................................................................... 9, 14

*Maxwell v. Fidelity Fin. Servs., Inc.*,
907 P.2d 51 (Ariz. 1995) ............................................................................... *passim*

*Nickerson v. Green Valley Recreation, Inc.*,
265 P.3d 1108 (Ariz. Ct. App. 2011) ............................................................................ 9

**FEDERAL STATUTES**

9 U.S.C. § 2 ................................................................................................................ 8

9 U.S.C. § 3 .............................................................................................................. 24

15 U.S.C. § 15(a) .................................................................................................... 17

15 U.S.C. § 15(b) .................................................................................................... 19

**OTHER AUTHORITIES**

Jose R. Guardado, *Competition in Commercial PBM Markets and Vertical Integration of Health Insurers with PBMs: 2023 Update* ............................................ 15

Victor Whitman, *Seattle-area independent pharmacies struggle to remain open. Here's why*, THE SEATTLE TIMES (Oct. 20, 2023) .......................................................... 1

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    Independent pharmacies are dying. Many are owned by families and provide crucial

2    services for their communities. But giant corporations like Defendants ("Caremark") are

3    squeezing them out of business. *See* Victor Whitman, *Seattle-area independent pharmacies*

4    *struggle to remain open. Here's why*, THE SEATTLE TIMES (Oct. 20, 2023).[1] Osterhaus Pharmacy

5    is among them.

6    Osterhaus Pharmacy filed this case to challenge Caremark's unfair and anticompetitive

7    business practices. Caremark's response is to try to force Osterhaus into a pay-to-play arbitration

8    regime that would effectively deny Osterhaus a hearing in any forum. Caremark's arbitration

9    provision requires Osterhaus to pay into escrow a minimum of $50,000 just to get before an

10   arbitrator on any issue in this case, including the "gateway" question about whether its

11   arbitration clause is enforceable. Because placing that burden on a small independent pharmacy

12   "shocks the conscience," the Court should find Caremark's delegation clause unconscionable and

13   unenforceable.

14   Other one-sided provisions make the rest of Caremark's arbitration agreement

15   unconscionable as well. They include a shortened statute of limitations, limitations on discovery,

16   a one-sided fee shifting provision, Caremark's power to unilaterally change the terms of the

17   arbitration clause, and an onerous confidentiality provision that gives Caremark alone a series of

18   injunctive remedies enforceable in court rather than in arbitration.

19   None of the cases that Caremark cites enforcing its varied arbitration provisions over the

20   years addresses the unconscionability issues Osterhaus raises here. *See* III.E.

21   Caremark's motion to compel arbitration (Dkt. # 42) should be denied because

22   Caremark's onerous adhesion contract is loaded with unconscionable terms that render it

23   unenforceable.

24

25

26

27   _____

[1] *Available at* https://www.seattletimes.com/business/seattle-area-independent-pharmacies-struggle-to-remain-open-heres-why/ (last visited Feb. 3, 2024).

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1

## I.    BACKGROUND

2

3

**A.    Osterhaus Pharmacy served a small Iowa community for more than 60 years and was driven out of business, in part, by Caremark's unfair and anticompetitive conduct.**

4

5      Ann and Bob Osterhaus opened Osterhaus Pharmacy in Maquoketa, Iowa in 1965. They

6   were a husband-and-wife team who met at the University of Iowa, where Bob was in pharmacy

7   school. Their son, Matt Osterhaus, started working at the pharmacy in 1983 and later took over

8   the family business. Matt ran Osterhaus Pharmacy with his wife Marilyn until 2022. Osterhaus

9   Decl. ¶ 4.

10      Osterhaus Pharmacy had a small staff of primarily pharmacists and pharmacy assistants,

11   guided by a patient-centered care model. Osterhaus Decl. ¶ 10. Staff wages accounted for a

12   substantial portion of the pharmacy's annual costs. Osterhaus Decl. ¶ 18. In recent years, the

13   pharmacy's annual profits have often been less than $1,000. Osterhaus Decl. ¶¶ 14–16. In

14   January 2022, after nearly 60 years of family-run operations, Matt sold Osterhaus Pharmacy, in

15   part because of financial pressure from Caremark's increasing Direct and Indirect Renumeration

16   Fees ("DIR Fees"). Osterhaus Decl. ¶ 19; *see also* Dkt. # 1 ("Complaint") ¶¶ 20–21.

17      CVS Heath Corporation ("CVS") is one of the largest healthcare companies in the world.

18   Complaint ¶ 6. Caremark is the pharmacy benefit manager ("PBM") arm of CVS. *Id.* PBMs

19   control nearly every facet of the pharmaceutical filling and dispensing industry. They decide

20   which pharmacies can dispense drugs in Part D Plan networks, which drugs those pharmacies

21   will dispense, and the prices, discounts, and other terms of sale applicable to reimbursement of

22   pharmacies. *Id.* ¶ 39. Today, the "Big Three" PBMs—Caremark, Express Scripts, and

23   OptumRx—control more than 80% of the prescriptions filled in the United States. *Id.* ¶ 42.

24      Osterhaus makes the following claims against Caremark: (i) illegal tying in violation of

25   the Sherman Act; (ii) breach of implied covenant of good faith and fair dealing; (iii)

26   unconscionability; (iv) unjust enrichment; and (v) quantum meruit. Complaint ¶¶ 118–136.

27   These legal claims relate to Caremark's illegal imposition of DIR Fees. *Id*. ¶¶ 48–56; 78–80.

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 ● FAX 206.319.5450
www.terrellmarshall.com

1   Four key principles are central to Osterhaus' allegations. First, Caremark has substantial

2   power in the market for the reimbursement of prescription drug services through Part D plans—

3   *i.e.*, filling prescriptions. Complaint ¶¶ 40–44. Second, Caremark abuses this market power to

4   compel pharmacies to provide DIR services—*i.e.*, services measured by performance programs

5   that Caremark uses to assess DIR fees. *Id.* ¶¶ 45–56. Third, Caremark further abuses its market

6   power to force pharmacies to *pay* Caremark for the opportunity to provide DIR services, instead

7   of receiving pay for those services. *Id.* ¶¶ 57–66. Fourth, Caremark acted in bad faith by abusing

8   its discretion by setting DIR Fees in an opaque, arbitrary, and irrational manner. *Id.* ¶¶ 67–78. On

9   December 22, 2023, Caremark filed the instant motion to compel arbitration based on its

10  pharmacy Provider Agreement. Dkt. # 42.

11  **B.    Caremark's mandatory arbitration clause is laden with unconscionable terms.**

12  The Caremark Provider Manual ("Provider Manual") contains a mandatory arbitration

13  clause that purports to compel arbitration for all disputes between the provider and Caremark,

14  including those that arise out of Caremark's Provider Agreement.

15  Caremark's contracts at issue in this case, including the arbitration clause and its

16  delegation clause, are written by Caremark alone, and cannot be negotiated. Osterhaus Decl.

17  ¶¶ 8–9. Independent pharmacies such as Osterhaus Pharmacy must accept the terms in

18  Caremark's contracts to serve its network of patients. As a panel of arbitrators found in a recent

19  arbitration hearing, the contractual relationship between providers like Osterhaus and Caremark

20  "is one of adhesion," with an "undisputed disparity between the parties' respective bargaining

21  power," and the pharmacy "had no choice but to enter into the agreement to ensure the continuity

22  of patient care." Davis Decl., Ex. 3 at 8-9 (*NYCBS* Order No. 7).

23  Substantively, as described in more detail below, the arbitration clause and delegation

24  clause both contain multiple asymmetric terms designed to prevent Osterhaus and other

25  pharmacies from challenging Caremark's business practices *in any forum*.

26  Importantly, Caremark has abused its power to unilaterally amend the arbitration

27  agreement. Independent pharmacies do not sign the Provider Manual that sets the terms for

ORAL ARGUMENT REQUESTED - 3
CASE NO. 2:23-cv-01500-RSM

1   arbitration. Instead, they sign a Provider Agreement that incorporates the Provider Manual by

2   reference. Caremark reserves the power to unilaterally amend the Provider Manual at any time.[2]

3   It regularly exercises that power. Independent pharmacies have no opportunity to negotiate or

4   reject the changes Caremark makes. If an independent pharmacy submits a single claim for

5   reimbursement to Caremark after the effective date of a unilateral amendment, Caremark

6   considers the pharmacy to have accepted it.[3] This power to amend at any time is one-sided.

7   Osterhaus and pharmacies cannot make similar unilateral changes—or, indeed, any changes at

8   all.

9        Caremark has used its unilateral power to make it ever more difficult for an independent

10  pharmacy to bring and win an arbitration. For example, Caremark included a provision in its

11  2023 Manual that purports to require arbitrators to force pharmacies to put Caremark's

12  forecasted amount of fees and costs in escrow if they want to bring a dispute. Davis Decl., Ex. 2

13  at 5 (Shea Letter, Exhibit 1). Similarly, to preserve its information advantage, Caremark purports

14  to prohibit pharmacies from learning about similar arbitrations, and imposes draconian penalties

15  if they try to do so. *Id.* at 3.

16       Caremark also makes unilateral changes after losses in arbitrations to prevent a

17  reoccurrence. For example, on August 1, 2020, an arbitrator rejected Caremark's argument that

18  claims on behalf of all locations in a chain constituted an impermissible class action under the

19  Provider Manual. It therefore denied Caremark's motion to sever. *Caremark LLC v. AIDS*

20  *Healthcare Found.*, 2022 WL 4267791, at *7 (D. Ariz. Sept. 15, 2022). Similarly, in 2022, a

21  panel of arbitrators refused to grant Caremark's request to hold six arbitrations for the six

22  pharmacies that were part of New York Cancer and Blood Services, finding that a pharmacy

23  identification number "is not a legal entity, and Claimant here properly asserted claims on behalf

24  of the affiliated pharmacies." Davis Decl., Ex. 3 at 13 (*NYCBS* Order No. 7).

25

26

27

---

[2] Dkt. # 43–4 at 10 (2016 Provider Manual, "Amendments"); Dkt. # 43–5 at 9 (2018 Provider Manual, "Amendments"); Dkt. # 43–6 at 6 (2020 Provider Manual, "15.07 Amendments").
[3] *Id.*

ORAL ARGUMENT REQUESTED - 4
CASE NO. 2:23-cv-01500-RSM

1    In reaction, Caremark's current arbitration provision purports to (1) describe an

2  arbitration brought on behalf of more than one location to be a class action; and (2) create a one-

3  way delegation, so that Caremark may seek court intervention if an arbitrator rules the arbitration

4  may involve more than one location. Davis Decl., Ex. 2 at 3-4 (Shea Letter, Exhibit 1).

5  **C.    Caremark's 2020 Provider Manual and mandatory arbitration clause**

6    Caremark's 2020 Provider Manual imposed a series of one-sided and unfair rules that

7  together make it incredibly difficult for pharmacies, particularly smaller pharmacies such as

8  Plaintiff, to seek redress.

9    1.    Delegation Clause

10  The 2020 Provider Manual contains a Delegation Clause:

11    The arbitrator(s) shall have exclusive authority to resolve any dispute relating to the
12    interpretation, applicability, enforceability or formation of the agreement to arbitrate,
     including but not limited to, any claim that all or part of the agreement to arbitrate is void
13    or voidable for any reason.[4]

14  The terms and conditions set by Caremark render this Delegation Clause unconscionable.

15    2.    Escrow Requirement

16  The 2020 Provider Manual requires that:

17    Any party initiating an arbitration pursuant to this arbitration section shall place in
18    escrow for the benefit of the opposing party an amount to be determined by the
     arbitrator(s) as sufficient to cover the estimated attorney's fees and other expenses
19    of arbitration that will be incurred in defense of the arbitration action, which shall
     in no event be less than $50,000 [. . .].[5]
20

21    Caremark does not permit any waiver or reduction in the escrow amount, or the fees

22  owed to AAA more broadly, if Osterhaus and other independent pharmacies are unable to pay

23  them.[6] Failure to place such funds in escrow constitutes material breach of the arbitration clause,[7]

24  which has the following consequences:

25

---

26  [4] Dkt. # 43-6at 7.
   [5] *Id.* at 8.
27  [6] *Id.* at 8.
   [7] *Id.* at 7.

ORAL ARGUMENT REQUESTED - 5
CASE NO. 2:23-cv-01500-RSM

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

Accordingly, if Provider, its agents, counsel or arbitrator fail to abide by the terms
and conditions set forth in this Section 15.09 of the Provider Manual, Caremark
shall be entitled to (i) specific performance, including immediate issuance of a
temporary restraining order or preliminary injunction enforcing the Agreement,
and to judgment for damages (including reasonable attorneys' fees and costs)
caused by the breach; (ii) an option to void the dispute resolution or arbitration
award; and (iii) to all other legal and equitable remedies available to Caremark.[8]

3.    Asymmetric Anti-Aggregation Clause

Caremark also requires independent pharmacies to bring disputes:

on an individual basis, not a class or representative basis, or through any form of
consolidated proceedings, and the arbitrator(s) will not resolve Class Action
disputes and will not consolidate arbitration proceedings without the express
written permission of all parties to the Provider Agreement.[9]

Caremark has no need to aggregate dispute resolution to make it feasible. Pharmacies do.

4.    Asymmetric Remedies

The 2020 Provider Manual states:

In no event may the arbitrator(s) award indirect, consequential, or special
damages of any nature (even if informed of their possibility), lost profits or
savings, punitive damages, injury to reputation, or loss of customers or business[10]

This broad limitation of remedies is markedly one-sided, given that pharmacies are the
only party likely to recover these categories of relief.

5.    Asymmetric Fee Shifting

Caremark's arbitration clause provides that:

The expenses of arbitration, including reasonable attorney's fees, will be paid for
by the party against whom the final award of the arbitrator(s) is rendered, except
as otherwise required by Law.[11]

This change to the standard American rule has an outsized impact on small family
operations, such as Osterhaus. Further, when pharmacies bring antitrust claims, as Osterhaus
does here, they are ordinarily entitled to attorney's fees if they win but do not have to pay them if

---

[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

they lose. In cases like this one, the fee shifting provision benefits only Caremark and harms only pharmacies.

6.      Asymmetric Discovery Limitations

The 2020 Provider Manual limits fact discovery to:

documents and information for which there is a direct, substantial, and demonstrable need and where such documents and information can be located and produced at a cost that is reasonable in the context of all surrounding facts and circumstances. Further, when the cost and burden of e-discovery are disproportionate to the likely importance of the requested materials, the arbitrator may deny the requests or require that the requesting party advance the reasonable cost of production to the other side. Absent a showing of exceptional circumstances, as determined by the arbitrator(s), the parties shall be limited to one corporate representative deposition per party with each deposition subject to a four-hour time limit.[12]

These discovery limitations advantage Caremark and harm pharmacies like Osterhaus, who bear the burden of proof and lack access to the data and evidence in Caremark's possession.

7.      Statute of Limitations

The 2020 Provider Manual establishes timeframes within which disputes must be filed, effectively creating a statute of limitations of six months:

Disputes must be filed within the following time frames: i) for audit disputes, within six (6) months from the date of the final audit findings; ii) for termination related disputes, within six (6) months from date of the notification of termination; and iii) for all other disputes, within six (6) months from the date on which the facts giving rise to the dispute first arose.[13]

Moreover, a demand for an arbitration agreement must be filed "within six (6) months from the date of the issuance of the Dispute Notice."[14]

8.      Confidentiality Provision

Caremark ensures that any arbitration be conducted in secrecy by requiring that:

a party, its employees, agents, consultants, authorized representatives, counsel, or arbitrator(s) shall not disclose the existence, content or results of any dispute or arbitration hereunder without the prior written consent of both parties.[15]

---

[12] *Id.*
[13] *Id.* at 8.
[14] *Id.*
[15] *Id.* at 7.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    This clause allows Caremark to take advantage of information asymmetries and to punish

2    and retaliate against pharmacies who assert contractual rights without recourse.

3        9.    Unilateral Remedy for Breach

4    Caremark specifically provides itself but not an independent pharmacy with a remedy for

5    breach of the arbitration provision:

6        Accordingly, **if Provider, its agents, counsel or arbitrator** fail to abide by the terms and
        conditions set forth in this Section 15.09 of the Provider Manual, **Caremark** shall be

7        entitled to (i) specific performance, including immediate issuance of a temporary
        restraining order or preliminary injunction enforcing the Agreement, and to judgment for

8        damages (including reasonable attorneys' fees and costs) caused by the breach; (ii) an

9        option to void the dispute resolution or arbitration award; and (iii) to all  other legal and
        equitable remedies available to Caremark.[16]

10

11                        **II.    LEGAL STANDARD**

12    The Federal Arbitration Act makes a written provision to arbitrate "valid, irrevocable,

13   and enforceable, save upon such grounds as exist at law or in equity for the revocation of any

14   contract." 9 U.S.C. § 2. The FAA makes "arbitration agreements as enforceable as other

15   contracts, but not more so." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022). Arbitration

16   agreements are subject to all "generally applicable contract defenses, such as fraud, duress, or

17   unconscionability." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010).

18    An arbitration clause may delegate "gateway" questions of arbitrability to an arbitrator,

19   including whether an arbitration clause is enforceable, if it does so clearly and unmistakably.

20   *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). A delegation provision "is

21   simply an additional, antecedent agreement the party seeking arbitration asks the federal court to

22   enforce, and the FAA operates on this additional arbitration agreement just as it does on any

23   other." *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1000 (9th Cir. 2021). When a party

24   "specifically challenges the delegation provision under Section 2 of the FAA, the federal court

25   must consider the challenge before ordering compliance with it." *Bielski v. Coinbase, Inc.*, 87

26   F.4th 1003, 1009 (9th Cir. 2023) (citations and quotation omitted). If the court determines that

27

---

[16] *Id.* (emphasis added).

ORAL ARGUMENT REQUESTED - 8
CASE NO. 2:23-cv-01500-RSM

1    the delegation provision is unconscionable and declines to sever it from the underlying

2    arbitration provision, then the court may also determine that the underlying arbitration provision

3    is unenforceable for the same reasons. *Lim*, 8 F.4th at 1005–06.

4           The parties agree that Arizona law governs Osterhaus's unconscionability challenge to

5    Caremark's arbitration provision. Under Arizona law, "[u]nconscionability is generally divided

6    into two facets: (1) procedural unconscionability, which addresses unfair surprise or other things

7    that mean bargaining did not proceed as it should and (2) substantive unconscionability, which

8    addresses the relative fairness of the obligations assumed by reference to the actual terms of the

9    contract." *Desert Peak Homeowners Ass'n v. Pinnacle at Desert Peak Condo. Ass'n*, 2015 WL

10   8166006, at *3 (Ariz. Ct. App. Dec. 8, 2015).

11          An arbitration provision that is either procedurally or substantively unconscionable is

12   unenforceable under Arizona law. *Maxwell v. Fidelity Fin. Servs., Inc.*, 907 P.2d 51, 59 (Ariz.

13   1995) (concluding that a claim of unconscionability "can be established with a showing of

14   substantive unconscionability alone" under Arizona law, "especially in cases involving either

15   price-cost disparity or limitation of remedies."); *Clark v. Renaissance W., LLC*, 307 P.3d 77, 82

16   (Ariz. Ct. App. 2013) (finding an agreement unenforceable based on substantive

17   unconscionability alone); *Dueñas v. Life Care Ctrs. of America, Inc.*, 336 P.3d 763, 768 (Ariz.

18   Ct. App. 2014) (rejecting contention that plaintiff must prove both procedural and substantive

19   unconscionability because "[e]ither doctrine can provide an independent defense to

20   enforceability.").

21          Courts are not limited to the terms of the specific provision at issue when interpreting a

22   contract, and may consider the entire contract in assessing the unconscionability of a challenged

23   provision. *Bielski*, 87 F.4th at 1011–13 ("If the provision delegates all disputes arising out of the

24   Arbitration Agreement, how can the court not look to the Arbitration Agreement to understand

25   the delegation provision's meaning?"); *see also Holley-Gallegly v. TA Operating, LLC*, 74 F.4th

26   997, 1002 (9th Cir. 2023); *Nickerson v. Green Valley Recreation, Inc.*, 265 P.3d 1108, 1119

27

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    (Ariz. Ct. App. 2011) (considering "all parts of the contract together" when analyzing the

2    subjective unconscionability of a provision).

3                            **III.    ARGUMENT**

4           The arbitration provision in the 2020 Provider Manual is unconscionable and

5    unenforceable. The delegation clause is unenforceable if it is either procedurally or substantively

6    unconscionable. It is both. Given that the delegation clause is unenforceable, the Court should

7    consider whether the arbitration provision as a whole is also unconscionable. Again, either

8    substantive or procedural unconscionability suffices; the arbitration provision is both. In the

9    alternative, if the Court were to send this matter to arbitration, it should exercise its discretion to

10   stay this case. Doing so would be more just than a dismissal.

11   **A.    Caremark's Delegation Clause is substantively unconscionable.**

12          Contracts are substantively unconscionable if they contain "terms so one-sided as to

13   oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights

14   imposed by the bargain, and significant cost-price disparity." *Maxwell*, 907 P.2d at 58. An

15   arbitration agreement or delegation clause is substantively unconscionable if "the fees and costs

16   to arbitrate are so excessive as to deny a potential litigant the opportunity to vindicate his or her

17   rights." *Estate of Harmon v. Avalon Care Ctr. – Scottsdale, L.L.C.*, 2015 WL 302292, at *3

18   (Ariz. Ct. App. 2015) (citations and quotations omitted). A finding that an arbitration clause, or

19   the delegation clause underlying it, is substantively unconscionable renders it unenforceable.

20   *Clark*, 307 P.3d at 79. The costs and asymmetry of the escrow provision render the delegation

21   clause substantively unconscionable.

22          1.    <u>The Escrow Provision imposes unreasonable and excessive costs.</u>

23          The escrow requirement makes it excessively expensive for Osterhaus to challenge the

24   delegation clause. For an arbitrator to rule on delegation, Osterhaus Pharmacy must place in

25   escrow *at least* $50,000. But Osterhaus did not and does not have available a *minimum* of

26   $50,000 to place in escrow. Osterhaus Decl. ¶¶ 13–16.

27

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    Further, to challenge the arbitration provision, Osterhaus may have to pay significantly

2    more than $50,000. Caremark interprets the escrow provision in a manner that is even more

3    draconian than is obvious from its text; Caremark recently demanded that a pharmacy with a

4    single location put $200,000 in escrow for a single arbitration. Davis Decl., Ex. 3 at 10 (*NYCBS*

5    Order No. 7). Caremark's position, described in its current Provider Manual, is apparently that

6    the escrow amount should be the "forecasted amount of potential claims that could be submitted

7    by Provider based on Provider's historical Caremark adjudicated paid claims experience (e.g.,

8    previous rolling twelve months)" in addition to an amount to cover attorneys' fees and other

9    expenses. Davis Decl., Ex. 2 at 5 (Shea Letter, Exhibit 1).

10    Caremark also has argued that the escrow provision requires that a small independent

11    pharmacy operating more than one storefront place in escrow a separate $50,000 at minimum for

12    each location. It has contended that the Anti-Aggregation Provision requires pharmacies to bring

13    claims on a storefront-by-storefront basis. *See* Davis Decl., Ex. 3 at 4, 12 (*NYCBS* Order No. 7);

14    *Caremark LLC v. AIDS Healthcare Found*., 2022 WL 4267791, at *3 (D. Ariz. Sept. 15, 2022)

15    (where, in litigation against a chain of pharmacies providing services to HIV/AIDS patients,

16    CVS "filed a Motion to Sever, arguing AHF's claims constituted a class action that the Provider

17    Manual prohibited" because it sought to bring an arbitration on behalf of its different locations).

18    Under Caremark's interpretation, a pharmacy with two different storefronts must bring two

19    arbitrations, make two escrow payments totaling $100,000 or more, and pay two sets of

20    arbitrators. That is true even though Caremark itself does not treat such pharmacies as separate

21    entities in its own contracts.

22    Caremark does not permit any waiver or reduction in the escrow amount, despite

23    Osterhaus' inability to pay. Dkt. # 43–6 at 8. Arizona courts have found arbitration fees that were

24    a fraction of the costs imposed by Caremark to be unconscionable, including where the plaintiff

25    was not required to remit the fees in an up-front, lump sum, as Osterhaus is required to do here.

26    *See, e.g.*, *Clark*, 307 P.3d at 82 (finding $22,800 in arbitration fees substantively

27    unconscionable); *Estate of Harmon*, 2015 WL 302292, at *6 (finding an estimated $28,500 in

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  arbitration fees rendered arbitration clause substantively unconscionable). Here, Osterhaus

2  Pharmacy cannot afford the minimum $50,000 to place in escrow, given the modest profits of the

3  family business, which often fell below $1,000 a year. Osterhaus Decl. ¶¶ 13–16. Nor can

4  Osterhaus afford the additional costs of travel from Iowa to Scottsdale, Arizona—where

5  Caremark mandates the arbitration must occur—or the additional fees and costs associated with

6  arbitration.

7          2.      The Escrow Provision is effectively one-sided.

8          The $50,000 minimum escrow requirement is asymmetrical and unfair. This provision

9  affects only the pharmacies in disputes involving DIR fees. As the party that is responsible for

10  reimbursement, Caremark enjoys a self-help option when there are disputed fees: it simply

11  subtracts or "claws back" any fees it believes are owed from the pharmacy's reimbursement in

12  subsequent months. Osterhaus Decl. ¶ 17. For example, assume that a pharmacy and Caremark

13  disagree over whether $100,000 in DIR fees should be withheld. Caremark withholds

14  reimbursements. That then forces the pharmacy to bring an arbitration, which requires it to put at

15  least $50,000 in escrow.

16          3.      The Unilateral Remedy for Breach Clause exacerbates the Delegation Clause.

17          The unilateral remedies clause is also one-sided and unfair, when combined with the

18  escrow provision. The remedies clause entitles *only Caremark* to injunctive relief, damages, and

19  an option to void any award in arbitration (all without having to make an escrow payment) in the

20  event of a material breach by either the independent pharmacy *or an arbitrator*. Caremark can

21  treat a decision by the arbitrator not to impose an escrow payment as a material breach and seek

22  unilateral remedies. Osterhaus and other independent pharmacies have no reciprocal right to void

23  the result of arbitration if the arbitrator imposes an escrow payment or if Caremark commits a

24  material breach. Dkt. # 43–6 at 7. The remedies provision also provides Caremark with the right

25  to forego arbitration and go directly to court in the event of a breach of the arbitration provision.

26

27

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

4.      Caremark's Unilateral Amendment power renders the Delegation Clause unconscionable.

Caremark's unilateral ability to alter the terms of the Provider Manual without notice or input renders the delegation clause unconscionable. The arbitration clause permits Caremark to unilaterally amend the Provider Manual at any time, Dkt. # 43–6 at 6, a power it exercises regularly. Osterhaus is deemed to have accepted any amendments merely by continuing to submit reimbursement requests.

An arbitration agreement that permits only the stronger party to make unilateral changes to it is unconscionable. *Batory v. Sears, Roebuck and Co.*, 456 F. Supp. 2d 1137, 1140 (D. Ariz. 2006) (finding that defendant's unilateral right to modify terms of dispute resolution clause renders it unconscionable); *Edwards v. Vemma Nutrition*, 2018 WL 637382, at *5 (D. Ariz. Jan. 31, 2018) (finding unilateral modification provision substantively unconscionable because it grants defendant "an unfettered right to change the terms of arbitration altogether"); *Longnecker v. Am. Exp. Co.*, 23 F. Supp. 3d 1099, 1111 (D. Ariz. 2014) (stating unilateral right to modify contract is unconscionable when exercised).

Caremark's unilateral changes to the terms of arbitration demonstrate that the delegation clause is one-sided and renders its arbitration agreements illusory in practice. For example, Caremark unilaterally imposed the $50,000 escrow requirement. Similarly, Caremark's 2023 Provider Manual states that any ruling allowing a class action or consolidated arbitration (including an arbitrator allowing a chain to file an arbitration on behalf of all its stores) would be contrary to the parties' intent and subject to immediate judicial review. Davis Decl., Ex. 2 at 4 (Shea Letter, Exhibit 1). Under this new provision, if Caremark successfully prevents plaintiffs from consolidating their claims, they cannot pursue judicial relief; yet if plaintiffs are permitted to bring a class or consolidated action in arbitration, Caremark is entitled to immediate review in court.

Changes such as this demonstrate the substantive unconscionability of Caremark's ability to change the arbitration clause at will, including because Caremark can change the terms of the

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  delegation clause so an arbitrator has authority to opine on an issue only when convenient for
2  Caremark.

3        The Court should deem the delegation clause unenforceable as substantively
4  unconscionable.

5  **B.     The Delegation Clause is procedurally unconscionable because it was presented in a
6         way that deprived Osterhaus of meaningful choice.**

7        Arbitration clauses are procedurally unconscionable where there is "unfairness in the
8  bargaining process." *Edwards*, 2018 WL 637382, at *4. "[T]he fundamental question is whether
9  one party to a contract has unfairly or surreptitiously deprived the other of the right of access to
10 the courts." *Dueñas*, 336 P.3d at 768. To prove procedural unconscionability, courts examine
11 factors influencing the "the real and voluntary meeting of the minds of the contracting party: age,
12 education, intelligence, business acumen and experience, relative bargaining power, who drafted
13 the contract, whether the terms were explained to the weaker party, whether alterations in the
14 printed terms were possible [and] whether there were alternative sources of supply of the goods
15 in question." *Maxwell*, 907 P.2d at 58, quoting *Johnson v. Mobil Oil Corp.*, 415 F. Supp. 264,
16 268 (E.D. Mich. 1976). An unconscionable clause is unenforceable. *Clark*, 307 P.3d at 79.

17       The delegation clause is procedurally unconscionable for two primary reasons: (i) the
18 markedly unequal bargaining power between the parties, depriving independent pharmacies of
19 the ability to negotiate terms; and (ii) Caremark's unilateral right to alter the terms of the contract
20 without input from Plaintiff or similar pharmacies.

21       1.     Caremark has imposed an unconscionable contract of adhesion.

22       Caremark has imposed a contract of adhesion. While a "contract of adhesion is not *per se*
23 unconscionable," courts considering unconscionability will look to factors including "relative
24 bargaining power" and "whether alterations in the printed terms were possible." *Longnecker*, 23
25 F. Supp. 3d at 1109; *see also Dueñas*, 336 P.3d at 770, n.2 (recognizing that "a contract of
26 adhesion may raise heightened concerns"); *Schnellecke Logistics USA LLC v. Lucid USA Inc.*,

27

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  2023 WL 5432321, at *4 (D. Ariz. Aug. 23, 2023) ("An arbitration agreement is at least

2  minimally procedurally unconscionable if it is an adhesion contract.").

3      Caremark has conceded in other forums that pharmacies have no bargaining power and

4  the arbitration provision and delegation clause are take-it-or-leave-it. In an arbitration,

5  Caremark's counsel admitted that its contracts are contracts of adhesion, noting that he "hates the

6  term." Davis Decl., Ex. 3 at 8 (*NYCBS* Order No. 7). Likewise, in a deposition in the same case,

7  Caremark's representative testified that out of their network of thousands of pharmacies, only

8  four pharmacies have ever negotiated terms with Caremark. *Id.*

9      An arbitrator in a similar case found that Caremark imposes contracts of adhesion and

10  independent pharmacies have no bargaining power, concluding that "CVS had considerable

11  bargaining leverage as one of the largest PBM's [sic]. A pharmacy would lose out on large

12  amounts of business if it did not sign up to CVS' networks." Davis Decl., Ex. 4 at 57 (*AHF*

13  *Award*). Moreover, "those networks were exclusive and there was no alternative if AHF wanted

14  to serve the members of the plans in CVS' networks. The parties did not engage on a level

15  playing field. CVS and its health plan partners set the terms." *Id.*

16      Caremark's contracts meet the test for procedural unconscionability. There was no "real

17  and voluntary meeting of the minds" between Caremark and Osterhaus. Caremark "drafted the

18  contract" and then presented its contract on a take it or leave it basis. *Maxwell*, 907 P.2d at 58

19  (citations omitted).

20      Because of Caremark's market power, Osterhaus had no choice but to accept the terms.

21  The parties have dramatically unequal bargaining power. Caremark is the largest PBM in the

22  nation, controlling approximately 66% of the "Retail Pharmacy Network Management Product

23  Markets" in Iowa.[17] Caremark controls a sizable portion of patients in the Osterhaus Pharmacy's

24  service area, leaving Osterhaus with no choice but to participate in Caremark's networks or lose

25

26

27  _____
[17] Jose R. Guardado, *Competition in Commercial PBM Markets and Vertical Integration of Health Insurers with PBMs: 2023 Update* at 23, https://www.ama-assn.org/system/files/prp-pbm-shares-hhi.pdf.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

a critical mass of patients seeking services. The disparity in bargaining power between Osterhaus and Caremark is dramatic.

Caremark also has an extraordinary advantage in business acumen and experience. Caremark never explained the terms of the delegation provision it imposed on Osterhaus. Osterhaus could not afford compliance officers or lawyers to interpret or attempt to negotiate these terms. Osterhaus Decl. ¶ 10. Caremark's power to make unilateral alterations in the terms for arbitration—including the escrow requirement—were buried in a massive Provider Manual.

Under Arizona law, "substantive unconscionability sometimes helps confirm or provide evidence of procedural unconscionability." *Maxwell*, 907 P.2d at 89. No reasonable party with bargaining power would agree to the delegation provision, in conjunction with the escrow provision and the unilateral ability of Caremark to modify the contract at its whim.

2.   Caremark's Unilateral Amendment power renders the Delegation Clause illusory.

Further evidence of uneven bargaining power is Caremark's unilateral power to alter the terms of the delegation and arbitration clauses without notice or input. Caremark can simply revise the terms of its contract with independent pharmacies at will and without any discussion, negotiation, or meeting of the minds.  That power confirms and contributes to procedural unconscionability.

**C.   The underlying Arbitration Agreement is unenforceable because it is substantively unconscionable.**

The arbitration agreement in the Caremark Provider Manual imposes significant, one-sided costs and restrictions that deter independent pharmacies from vindicating their rights. They render unconscionable not only the delegation clause but also the arbitration agreement as a whole.

If this Court determines that the delegation provision is unconscionable and therefore unenforceable, it may then assess the enforceability of the underlying arbitration agreement. *Lim*, 8 F.4th at 1006 ("Because the district court correctly held that the delegation clause was

1  unenforceable as procedurally and substantively unconscionable, the district court properly

2  proceeded to determine the gateway issue of arbitrability.").

3         Because the unconscionable provisions are as fundamental to the underlying arbitration

4  agreement as they are to the delegation provision specifically, the entire arbitration agreement

5  should be held unenforceable. *Id.* ("[T]he district court correctly concluded that the same bases

6  for concluding that the delegation clause was procedurally and substantively unconscionable —

7  the take-it-or-leave-it circumstances and the cost-splitting, fee-shifting, and Texas venue

8  provisions—also rendered the arbitration provision unconscionable."); *Bielski*, 87 F.4th at 1011

9  (affirming "a party may use the same arguments to challenge both the delegation provision and

10 arbitration agreement, so long as the party articulates why the argument invalidates each specific

11 provision.").

12        1.     The underlying Arbitration Agreement is unconscionable.

13        The underlying arbitration agreement—Section 15.09 of the Provider Manual—is

14 unconscionable for the same reasons that the delegation provision is.

15        2.     Arbitration imposes unconscionable costs and risks on pharmacies.

16        The arbitration agreement has a fee-shifting provision that imposes an excessive burden

17 should Osterhaus Pharmacy lose an arbitration, requiring it to pay Caremark's attorneys' fees

18 and costs. Dkt. # 43–6 at 7. Prevailing-party fee shifting is unconscionable when the statutory

19 scheme that gives rise to the plaintiffs' substantive claims allows fee shifting only to a prevailing

20 plaintiff. *See Lim*, 8 F.4th at 1004 (applying California law in finding this type of provision

21 creates "a chilling effect" on a plaintiff "enforcing his rights because it exposes him to the

22 possibility of paying attorney's fees to [defendant] if he lost at arbitration, including fees

23 associated with the threshold issue of arbitrability.") Osterhaus has brought claims under federal

24 antitrust laws, entitling it to recover attorneys' fees if it prevails. 15 U.S.C. §15(a). Caremark has

25 no similar right under the statute if Osterhaus loses. Caremark's fee-shifting provisions thus

26 benefits only Caremark.

27

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1     Caremark's expensive arbitrator rules make matters worse. Any arbitration must be

2 conducted in Scottsdale. Dkt. # 43–6 at 7. That is one reason that the costs of arbitrating against

3 Caremark are daunting. Evidence of those costs comes from past arbitrations. For example, in

4 arbitrations involving Caremark arising out of similar (and less complex) claims:

5       • In *New York Cancer & Blood Specialists v. Caremark, LLC*, the arbitrator

6          awarded $1,786,254.92 in attorneys' fees, costs, arbitration fees, and

7          expenses. Davis Decl., Ex. 1 at 26 (*NYCBS* Final Award). A motion to

8          confirm this award is pending in a federal district court.

9       • In *Mission Wellness Pharmacy, LLC v. Caremark, LLC*, the arbitrator

10         awarded $1,287,354.18 in attorneys' fees, costs, and expenses. Davis Decl.,

11         Ex. 5 at 5–6 (*Mission Wellness* Final Award). This fee award was confirmed

12         by a federal district court. Davis Decl., Ex. 6 at 11 (*Mission Wellness*

13         Confirmation Order).

14      • In *AIDS Healthcare Foundation v. CVS Caremark*, the claimant sought

15         $727,239.03 in attorneys' fees and expenses. Davis Decl., Ex. 4 at 60 (*AHF*

16         Final Award). The arbitrator awarded $365,799.44 in fees and expenses, not

17         because the fees and expenses sought were unreasonable, but for other issues,

18         including block billing and a request for fees on unsuccessful issues or claims,

19         which were deemed impermissible by the arbitrator. *Id.* at 60–61. This fee

20         award was confirmed by a federal district court. Davis Decl., Ex. 7 at 24 (*AHF*

21         Confirmation Order).

22     These exorbitant costs render arbitration substantively unconscionable because they

23 deprive many pharmacies of the ability to challenge Caremark's conduct. *See, e.g.*, *Zaborowski*

24 *v. MHN Gov't Servs., Inc.*, 601 F. App'x 461, 463 (9th Cir. 2014) (applying California law in

25 finding "[t]he costs-and-fee-shifting clause results in an unreasonable and unexpected allocation

26 of risks [ . . . because its] effect is to chill [plaintiffs] from seeking vindication of their statutory

27 rights by pursuing claims in arbitration.") (quotations and citations omitted).

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    3.    The abbreviated Statute of Limitations is unconscionable.

2    Caremark's statute of limitations provision requires Osterhaus to bring disputes within

3    six months from the date on which the facts giving rise to a dispute first arise. Dkt. # 43–6 at 8.

4    This provision too is substantively unconscionable, depriving Osterhaus of his right to initiate a

5    claim beyond an abbreviated period. *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1175 (9th

6    Cir. 2003) (finding one year statute of limitations provision for arbitrating claims substantively

7    unconscionable under California law because "the benefit of this provision flows only to"

8    defendant); *see also In re Juul Labs, Inc., Antitrust Litig.*, 555 F. Supp. 3d 932, 955 (N.D. Cal.

9    2021) (one-year limitation in arbitration clause is substantively unconscionable); *Newton v. Am.*

10   *Debt Servs., Inc.*, 854 F. Supp. 2d 712, 732 (N.D. Cal. 2012) ("Both California courts and the

11   Ninth Circuit have found that shortening statutorily-mandated statute of limitations contributes to

12   a finding of substantive unconscionability."). Given that Caremark requires pharmacies to invest

13   extraordinarily high up-front costs to initiate arbitration, the dramatic reduction in potential

14   damages from a shortened statute of limitations further skews the playing field in favor of

15   Caremark. *See, e.g.*, 15 U.S.C. § 15(b) (setting statute of limitations for federal antitrust claims to

16   four years).

17   4.    The one-sided remedy for breach is unconscionable.

18   Caremark also imposes a one-sided remedy provision for breach of the arbitration clause.

19   If a pharmacy breaches the arbitration provision, including its confidentiality requirements,

20   Caremark is entitled to injunctive relief and damages, an option to void any award in arbitration,

21   and other legal and equitable remedies. Dkt. # 43–6 at 7. Pharmacies have no reciprocal remedies

22   for a Caremark breach. *Id*.

23   5.    The limitations on discovery are unconscionable.

24   Caremark imposes strict limitations on discovery that benefit it and harm pharmacies.

25   Pharmacies like Osterhaus bear the burden of proof but do not have access to the data and

26   evidence in Caremark's possession. Pharmacies are limited to discovery only if they can show a

27   "direct, substantial, and demonstrable need." Dkt. # 43–6 at 7. The arbitrator may deny requests

ORAL ARGUMENT REQUESTED - 19
CASE NO. 2:23-cv-01500-RSM

when the cost of e-discovery is "disproportionate to the likely importance of requested materials" or require the pharmacy to advance the costs of production to the other side. *Id.* The one-sided and onerous nature of Caremark's discovery limitations strengthen the substantive unconscionability of the arbitration agreement as a whole because they impede only pharmacies' ability to present their claims.

Further, Caremark uses its power to unilaterally amend the terms of arbitration to make discovery ever more difficult. For example, the current Provider Manual Prevents an independent pharmacy from discovery concerning other "Providers, disputes, and arbitration matters." Davis Decl., Ex. 2 at 3 (Shea Letter, Exhibit 1). This restriction is asymmetric. Caremark has in its possession information concerning other providers, disputes, and arbitration matters. Osterhaus and other independent pharmacies do not. Worse yet, the arbitration agreement provides that any attempt by a pharmacy to seek discovery on those matters is a violation of the provision. *Id.* The current Provider Manual also prohibits any interrogatories or requests for admission absent agreement of the parties. *Id.* The relevant discoverable material at issue, however, is already in Caremark's hands. The discovery limitations in the arbitration agreement therefore only practically work to restrict pharmacies and not Caremark, and the severity of these limitations impede and prevent pharmacies from sufficiently presenting their claims.

6. <u>The Anti-Aggregation Provision is unconscionable.</u>

The arbitration agreement purports to prevent a pharmacy chain, a group of pharmacies sharing a single contract with Caremark, or pharmacies with common ownership from arbitrating in a single action. *Id.* at 8; Dkt. # 43–6 at 7. In addition to raising costs, and deterring arbitration, this provision makes no sense. It decreases efficiency and risks inconsistent outcomes.

7. <u>The Confidentiality Provision is unconscionable.</u>

Caremark's confidentiality provision is substantively unconscionable. It requires the parties to keep confidential any decision of the arbitrator. *Id*. That does not affect Caremark. It is a repeat player. It knows about past arbitration decisions and can and does use them to its advantage.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    In contrast, Osterhaus Pharmacy, and other pharmacies, lack access to many past

2    arbitration decisions. They cannot use them to assess the viability of claims, learn about

3    Caremark's unlawful behavior, discover relevant law or evidence, or as examples of ruling

4    against Caremark.[18] A federal district court in California, applying Arizona law, found a

5    similarly broad confidentiality provision to be substantively unconscionable. It noted that the

6    provision "unfairly limits a prospective plaintiff's ability because it prevents Plaintiffs from

7    discussing their claims with other potential plaintiffs and from discovering relevant precedent to

8    support their claims" and "while handicapping the Plaintiffs' ability to investigate their claims

9    and engage in meaningful discovery, the confidentiality provision does nothing to prevent

10   [defendant] from using its continuous involvement in the [defendant] ADR process to

11   accumulate a wealth of knowledge on how to arbitrate future claims brought by IBOs

12   [independent business owners]." *Ward v. Crow Vote LLC*, 2021 WL 5927803, at *7 (C.D. Cal.

13   Oct. 7, 2021) (internal quotations and citations omitted); *see also Longnecker*, 23 F. Supp. 3d at

14   1110 (finding confidentiality provision unconscionable because "only defendants would benefit

15   from the provision.").

16   This asymmetry renders the Caremark confidentiality provision substantively

17   unconscionable. *Larsen v. Citibank FSB*, 871 F.3d 1295, 1319 (11th Cir. 2017) ("where the

18   outcomes of prior arbitration proceedings themselves remain concealed, as the arbitration

19   agreement requires, prospective claimants have little context in which to assess the value of

20   discovered documents or work product from prior disputes.") (applying Washington law).

21   The confidentiality provision also enables Caremark to retaliate and punish pharmacies

22   without recourse. Breach of the Confidentiality Provision entitles *only Caremark*—not

23   pharmacies—to injunctive relief, damages, and an option to void arbitration awards. Dkt. # 43–6

24   at 7.

25

26

27   _____
     [18] An exception sometimes occurs when Caremark compels pharmacies to enforce their arbitration awards in court
     and a judge rejects Caremark's attempts to seal the docket.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

**D.     The underlying Arbitration Agreement is unenforceable because it is procedurally unconscionable.**

In this case, the arbitration provision as a whole is procedurally unconscionable for the same reasons as the delegation clause. *Bielski*, 87 F.4th at 1011 ("[A] party may use the same arguments to challenge both the delegation provision and arbitration agreement, so long as the party articulates why the argument invalidates each specific provision."). As with the delegation clause in particular, the underlying arbitration agreement as a whole is also the product of unequal bargaining power and was also drafted by Caremark with no opportunity for Osterhaus to participate in drafting the terms of the arbitration agreement. The underlying arbitration agreement is therefore equally procedurally unconscionable.

**E.     None of the cases cited by Caremark suggests a different result.**

Caremark cites a number of cases in its memorandum, but none of them undercut Osterhaus' position. As Caremark's own explanatory parentheticals reveal, only three of the decisions address Caremark's 2020 Provider Manual at issue here. *See Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1027 (9th Cir. 2022); *Caremark LLC v. Choctaw Nation*, 2022 WL 768098, at *4 (D. Ariz. Mar. 14, 2022); *Lackie Drug Store, Inc. v. Ark. CVS Pharmacy, LLC*, 2021 WL 5567360, at *2 (E.D. Ark. Nov. 29, 2021). And none of those decisions addressed the unconscionability challenges Osterhaus raises. The Chickasaw Nation "ground[ed] its argument in sovereign-immunity principles," as did the Choctaw Nation—not state law principles of contract enforcement. *Chickasaw Nation*, 43 F.4th at 1032; *Choctaw Nation*, 2022 WL 768089, at *2. Plaintiff in *Lackie Drug Store* contested formation of any agreement to arbitrate, not unconscionability. *Lackie Drug Store*, 2021 WL 5567360, at *3–4. The remaining cases address irrelevant contract formation issues, or challenges to different terms.

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

**F.**     **The Delegation Provision and the underlying Arbitration Agreement should not be saved by severing or modifying the unconscionable terms.**

Given that the delegation provision implicates several unconscionable terms, it is not readily susceptible to severance and should be struck. If a court determines "a clause of a contract is unconscionable as a matter of law," it can "(1) refuse to enforce the contract; (2) enforce the remainder of the contract without the unconscionable clause; or (3) limit the application of the unconscionable clause as to avoid any unconscionable result." *Batory*, 456 F. Supp. 2d at 1141.

In some cases, "the unconscionable terms permeate[] the arbitration provision in such a way as to invalidate the entire arbitration agreement," particularly where "there are multiple provisions in the [arbitration agreement] that are unconscionable." *Longnecker*, 23 F. Supp. 3d at 1111–12 (internal quotations and citations omitted) (declining to invalidate the whole provision because unlike here, "there are provisions in the Arbitration Policy that are plainly intended to level the playing field between defendants ant [*sic*] their employee" such as defendants agreeing to cover most of the costs of the arbitration).

Here, the unconscionable arbitration terms include:

1.     the escrow provision, which erects large barriers to bringing an arbitration;

2.     the unilateral amendment provision, which Caremark uses frequently to modify the terms of arbitration;

3.     the reduced statute of limitations, which dramatically restricts the claims of pharmacies;

4.     the exclusion of lost profits and consequential damages, which is one-sided, given that pharmacies are the only party that would likely recover these categories of relief;

5.     the fee-shifting provision, which includes both attorneys' fees and arbitration costs, dramatically increases the risk of litigation, and harms only pharmacies when they bring claims with asymmetric fee-shifting provisions, including under federal antitrust law;

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1   6.      the discovery limitations, which deprive pharmacies of evidence that is

2   overwhelmingly in Caremark's possession;

3   7.      the unilateral remedies clause, which entitles Caremark, but not the pharmacy, to

4   injunctive relief, damages, and an option to void an arbitration award in the event of breach by

5   the pharmacy or an arbitrator;

6   8.      the anti-aggregation provision, which increases costs for pharmacies; and

7   9.      the confidentiality provision, which deprives pharmacies but not Caremark of

8   valuable information.

9   10.     The severability provision in Caremark's clause should not save an arbitration

10  agreement that is so permeated with substantively unconscionable terms and was imposed in a

11  procedurally unconscionable way. Allowing companies to load their arbitration clauses with

12  unfair terms and then avoid a finding of unenforceability by severance encourages unfairness.

13  *See Burnett v. Pagliacci Pizza, Inc.*, 196 Wn.2d 38, 62 (2020) (applying same severability

14  standard as Arizona and explaining that permitting severance when a clause is permeated with

15  unconscionability "only encourages those who draft contracts of adhesion to overreach. If the

16  worst that can happen is the offensive provisions are severed and the balance enforced, the

17  dominant party has nothing to lose by inserting one-sided, unconscionable provisions."").

18  Unconscionable arbitration provisions should be discouraged.

19  **IV.     ARBITRATION SHOULD ENTAIL A STAY, NOT DISMISSAL**

20  If the Court grants Caremark's motion, Osterhaus respectfully requests that the Court

21  retain jurisdiction and stay the action pending the outcome of arbitration. Section 3 of the FAA

22  provides that courts "shall on application of one of the parties stay the trial of the action until

23  such arbitration has been had." 9 U.S.C. § 3; *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333,

24  344 (2011) (Section "3 requires courts to stay litigation of arbitral claims pending arbitration of

25  those claims").

26  The Ninth Circuit has interpreted Section 3 to mean that when a court finds that all claims

27  raised in an action are subject to arbitration, it has discretion either to stay or to dismiss the

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    action. *Johnmohammadi v. Bloomingdale's*, 755 F.3d 1072, 1073–74 (9th Cir. 2014). There is a

2    "preference for staying an action pending arbitration rather than dismissing it." *MediVas, LLC v.*

3    *Marubeni Corp.*, 741 F.3d 4, 9 (9th Cir. 2014); *see also Hoober v. Movement Mortg., LLC*, 382

4    F. Supp. 3d 1148, 1163 (W.D. Wash. 2019) (staying case pending arbitration).

5          In choosing between a stay and dismissal, courts evaluate the fairness to the parties,

6    judicial efficiency, and the potential harmful consequences from denying a stay. *Winfrey v.*

7    *Kmart Corp.*, 692 F. App'x 356, 357 (9th Cir. 2017) (a court has discretion to decide whether "it

8    is efficient for its own docket and the fairest course for the parties to enter a stay" pending

9    resolution of arbitration); *E.W. Bank v. Bingham*, 992 F. Supp. 2d 1130, 1136 (W.D. Wash.

10   2014) (evaluating whether the parties would suffer "any hardship or inequity" absent a stay).

11         Here, considerations of fairness and potential harm warrant a stay. Caremark has a

12   history of retaliating against pharmacies for initiating arbitration against Caremark over DIR

13   fees. For example, in November 2021, in response to arbitration challenging Caremark's

14   assessment of DIR fees, Caremark terminated some AIDS Healthcare Foundation ("AHF")

15   pharmacy contracts. *See* Davis Decl., Ex. 8 at 2 (Kim Riley Letter). When AHF asked for the

16   reason of the termination, a Caremark representative wrote: "Our contracting options are

17   constrained by the results of a recent arbitration between our respective companies. I suggest you

18   discuss your question below with your leadership and/or legal counsel." *Id.*

19         Similarly, in 2021, Caremark threatened to terminate Mission Wellness Pharmacy LLC if

20   it brought an action to confirm and enforce an arbitration award. Davis Decl., Ex. 9 at 7 (*Mission*

21   *Wellness* Transcript) ("They wrote back five days later saying that if you—they threatened to

22   terminate Maria and Dan and Mission Wellness from the Medicare Part D network if they chose

23   to file this proceeding to confirm the award.").

24         Congressional testimony by counsel who arbitrate against Caremark reveals other

25   examples of retaliation by PBM against pharmacies for bringing challenges to DIR programs, but

26   because of the secretive nature of arbitrations, the full extent of retaliation is likely much greater

27   than known. Davis Decl., Ex. 10 at 34 (Levitt Testimony).

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1   If the Court issues a stay and retains jurisdiction, it can enforce any arbitration award and

2   protect Osterhaus, and potentially other pharmacies, from retaliation.

3   ## V.   CONCLUSION

4   The delegation provision in Caremark's arbitration agreement is unconscionable. So is

5   the arbitration agreement as a whole. Plaintiff therefore respectfully requests the Court deny

6   Defendants' motion to compel arbitration. In the alternative, Plaintiff respectfully requests that

7   the Court retain jurisdiction and stay the action pending the outcome of arbitration.

8   RESPECTFULLY SUBMITTED AND DATED this 5th day of February, 2024.

9

10   TERRELL MARSHALL LAW GROUP PLLC

11   *I certify that this memorandum contains 8221
     words, in compliance with the Local Civil Rules.*

12

13   By: */s/ Beth E. Terrell*
     Beth E. Terrell, WSBA #26759

14   Email: bterrell@terrellmarshall.com
     Amanda M. Steiner, WSBA #29147

15   Email: asteiner@terrellmarshall.com
     Blythe H. Chandler, WSBA #43387

16   Email: bchandler@terrellmarshall.com
     936 North 34th Street, Suite 300

17   Seattle, Washington 98103-8869
     Telephone: (206) 816-6603

18

19   Joshua Davis, *Admitted Pro Hac Vice*
     Email: jdavis@bm.net

20   Julie Pollock, *Admitted Pro Hac Vice*
     Email: jpollock@bm.net

21   BERGER MONTAGUE P.C.
     505 Montgomery St, Suite 625

22   San Francisco, CA 94111
     Telephone: (415) 906-0684

23

24   John Roberti, *Admitted Pro Hac Vice*
     Email: jroberti@cohengresser.com

25   Melissa Maxman, *Admitted Pro Hac Vice*
     Email: mmaxman@cohengresser.com

26   Derek Jackson, *Admitted Pro Hac Vice*
     Email: djackson@cohengresser.com

27

ORAL ARGUMENT REQUESTED - 26
CASE NO. 2:23-cv-01500-RSM

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Alisa Lu, *Admitted Pro Hac Vice*
Email: alu@cohengresser.com
COHEN & GRESSER LLP
2001 Pennsylvania Ave, NW, Suite 300
Washington, DC 20006
Telephone: (202) 851-2070

*Attorneys for Plaintiff*

ORAL ARGUMENT REQUESTED - 27
CASE NO. 2:23-cv-01500-RSM