# EXHIBIT 3

# EXHIBIT 27

AMERICAN ARBITRATION ASSOCIATION

Case No. 01-21-0016-4612

New York Cancer and Blood Specialists,

Claimant

Vs.

Caremark, LLC, Caremark PCS, LLC,

And Silverscript Insurance Company, and Aetna, Inc.,

Respondents.

_____/

ORDER NO. 7

In accordance with Scheduling Order No. 4, both parties filed what are styled as "Omnibus Motions" to address certain issues on a preliminary basis. A telephonic hearing on the motions was conducted on May 26, 2022, before Michael Jordan, Esq., Panel Chair, Louise Zeuli, Esq., and Brendan Hare, Esq. Participating for Claimant were Steven Bennett, Esq., A.J. Barbarito, Esq., and Todd Mizeski, Esq. Participating for Respondents were Elizabeth Meraz, Esq., and Aon Hussain, Esq.

Summary of Factual Background:

Claimant New York Cancer and Blood Specialists ("Claimant") is a community cancer center with locations on Long Island and New York -City. Six

locations operate as physician dispensaries through which patients may receive oncology medications. Respondents, Caremark, LLC and Caremark PCS, LLC, ("Caremark") are Pharmacy Benefit Managers ("PBMs"), which create and manage pharmacy networks and prescription drug benefits on behalf of Medicare Part D Plan Sponsors, including Respondents, Aetna, Inc., ("Aetna") and SilverScript Insurance Company, Inc. ("Silverscript"). To distribute oncological medication, Claimant must participate in Medicare Part D networks. The ultimate issue before the Panel is Claimant's contention that it has been improperly assessed Direct and Indirect Renumeration fees. At this juncture, however, the parties request the Panel to resolve certain preliminary issues, which will govern the scope of discovery going forward, as well as clarify the issues to be presented at hearing.

Summary of Preliminary Issues:

The parties have numerous disputes centering on the interpretation, applicability, and enforceability of various provisions of Caremark Provider Agreements, the Caremark Provider Manual, amendments, and related documents between the parties. Claimant seeks a declaration that:

1. the federal Any Willing Provider Law ("AWPL", 42 U.S.C. Sec. 1395w-104(b)(1)(A)), applies to Respondents and that Claimant can maintain its breach of contract claims based on a claimed violation of the AWPL;

2. the Agreement between the parties, which consists of the documents referenced above, constitute a contract of adhesion, and

3. certain provisions in the documents are unconscionable and, accordingly, unenforceable. Specifically, Claimant focuses on the waiver of laws provision, the limitation on claims provision, the escrow provision, the severance provision, and a confidentiality provision.

Respondents request the Panel to:

1. sever the claims of what they assert are five individual and separate pharmacies;

2. strike the Claimant's damage claims for the 2016-2020 period as untimely;

3. dismiss Respondents, SilverScript and Aetna, as improperly named in this proceeding, and;

4. require Claimant to escrow funds pending the Final Award.

Obviously, some issues raised by the parties involve consideration of the same facts and law and are not addressed separately by the Panel. The Panel's Decision regarding the issues enumerated above is based on the briefs of the parties, the cited cases and exhibits, and oral argument.

Discussion:

ISSUE: Does the AWPL apply to Respondents, and may Claimant maintain a cause of action based on a claimed violation of the AWPL?

This issue involves the consideration of many related arguments asserted by the parties.

Initially, Claimant argues that the AWPL applies to all Respondents and is incorporated into the Agreement with Caremark. Respondents argue that the AWPL applies only to plan sponsors, which Caremark is not. However, Caremark concedes that it follows the AWPL based on contractual obligations to its plan sponsor clients, including Silverscript and Aetna, rather than on any direct or statutory obligation to participating pharmacies such as Claimant.

Respondents further argue that the AWPL is not applicable to Claimant as they are not pharmacies but dispensing physicians. Claimant counters that dispensing oncologists are governed by the pharmacy laws of New York, and that Respondents themselves have consistently referred to Claimants as a "pharmacy."

The parties also dispute the applicability of the Non-Interference Clause, 42 U.S.C. Sec. 1395w-111(i), pursuant to which CMS takes no role in regulating

5

reimbursement rates. Respondents contend that the AWPL focuses on "reasonable and relevant" terms and conditions to ensure access and cannot be found to regulate reimbursement rates in the agreement with Claimant. Claimant argues that this position is misleading, CMS may require reasonable and relevant contractual terms and conditions "necessary to implement requirements under the Act" and that reimbursement rates are one such contractual term.

Finally, Respondents argue that the Provider Manual's Compliance with Laws provision limits damages to those specified under the AWPL, and that since the AWPL does not address what damages a pharmacy may collect for a violation of the statute, Claimant can recover none and, therefore, cannot maintain a contract action based on the AWPL. Claimant argues that case law, particularly *Trone Health Servs, Inc. v. Express Scripts Holding Co.*, 974 F.3d 845 (8th Cir. 2020), allows a breach of contract claim when a statute (such as the AWPL) lacks a private right of action.

Claimant further argues that the Compliance with Laws provision is unconscionable and cannot be enforced in light of the *Trone* decision. Respondents argue that *Trone* is distinguishable, and that the limitation of damages to those specified in the AWPL—which is nothing—is reasonable. Any enforcement of the AWPL, it submits, is within the sole purview of CMS.

6

Decision:

The Panel concludes that Respondents, Silverscript and Aetna, are bound by the AWPL, given their status as plan sponsors, and that Caremark is contractually bound to follow the AWPL. Based upon the relationship of the parties here, Claimant should be defined as a pharmacy within the meaning of the AWPL.

The Panel disagrees with Respondents' interpretation of the Non-Interference Clause and finds that there is an obligation under the AWPL to provide "reasonable and relevant" terms and conditions to providers.

Finally, the Panel finds that the Compliance with Laws provision is inapplicable and unconscionable. Indeed, Respondents' interpretation would leave Claimant with no legal recourse to challenge the conduct at issue. To argue, as Respondents do, that enforcement of the AWPL is strictly the prerogative of CMS is to ignore the realities of the marketplace and the holding of *Trone*. The Panel notes footnote 4 of that decision, which observed that a contrary finding would require the "novel presumption" that when Congress provides no remedy, neither can state law. *Trone*, 974 F. 3d at 848, n. 4.  The Panel notes that no document between the parties specifies that Claimant cannot base a cause of action on the AWPL.

In summary, the AWPL does apply to all Respondents, and Claimant may maintain a cause of action for claimed violations of the statute.

ISSUE: Does the Agreement constitute a contract of adhesion?

Claimant argues that Caremark possesses overwhelming bargaining power and that Claimant had no realistic opportunity to negotiate any terms or conditions. In briefing, Respondents argued that Claimant could have rejected Caremark's terms and conditions and contracted with other PBMs. Claimant counters that, given the market power of Caremark, there was no choice but to sign the document to continue providing care to patients. At deposition, Respondents' representative testified that only four pharmacies and one dispensing provider have ever negotiated terms with Caremark, and no specialty providers have done so. He was instructed not to disclose the identity of the pharmacies. (McCall deposition 2T29:9-13).

Tellingly, at hearing, counsel for Respondents conceded, although counsel "hates the term", that the contract is one of adhesion. It remains Respondents' position, however, that the terms and conditions are enforceable.

Decision: Based upon the facts here, the Panel finds the contractual relationship between the parties is one of adhesion. Claimant had no choice but to enter into the agreement to ensure the continuity of patient care. Respondents'

concession at hearing is simply a recognition of the undisputed disparity between the parties' respective bargaining power.

ISSUE: Are certain provisions in the documents unconscionable and unenforceable?

1. <u>Compliance with Laws Provision</u>

2. This issue was addressed above.

3. <u>Limitation on Claims Provision</u>

4. Under the Provider Manuals in effect from 2016-2020, there was no time limit on when Claimant could assert claims and the six-year statute of limitations imposed by Arizona law would have governed. With the 2020 Provider Manual, Respondents inserted a six-month Limitation on Claims Provision.

5. Claimant argues that the Provision is unconscionable as it would limit claims, work an unjust forfeiture, and constitutes a unilateral, retroactive, adjustment by Respondents. Respondents counter that parties may agree to a limitation of damages that is less than the statute of limitations imposed by state law. They request this Panel to strike Claimant's damage claims for 2016-2020 as untimely.

6. <u>Decision:</u>

7. The Panel finds that the parties did not agree on the Limitation on Claims Provision, and that Respondents' unilateral insertion of the provision into the Provider Manual renders it unconscionable. The Panel will not strike damage claims for the 2016-2020 period as requested by Respondents.

8. <u>The Escrow Provision</u>:

9. The Provider Agreements contain an escrow provision and a fee-shifting provision. The former requires the party initiating arbitration to place an amount, to be determined by the Panel, in escrow to cover the opposing party's estimated attorney fees. The amount may not be less than $50,000. The fee-shifting provision requires that the "…expenses of arbitration, including reasonable attorney's fees, will be paid for by the party against whom the final award of the arbitrator(s) is rendered, except as otherwise required by Law."

10. Claimant asks this Panel to find the escrow provision unconscionable, as it is one-sided and only requires the party initiating a proceeding to escrow funds. Further, it argues that given the fee-shifting provision, Respondents already have adequate protection and the escrow provision is nothing more than an attempt to deter claims.

11. Respondents ask this Panel to enforce the escrow provision and require Claimant to escrow $200,000, or such other amount as the Panel determines.

12. <u>Decision</u>:

13. This issue presents a difficult question and requires the Panel to inquire, in the abstract and irrespective of the financial situation of the parties to this proceeding, whether the escrow provision is enforceable. That Caremark might ultimately be made whole due to the fee-shifting provision is a separate consideration from whether the escrow provision is itself unconscionable. The Panel is mindful that there was no bargaining over this provision and, in theory, Respondents could have inserted in the document the $200,000 figure they now request. Even as written, however, the provision is vague in that an arbitration panel would have complete discretion to determine any amount to be escrowed. Further, there is no specificity in the agreement as to how or where any escrowed sum would be maintained, whether any escrow account would bear interest, the circumstances that would govern its distribution, and other unknown factors. Based on the foregoing reasons, the Panel declines to enforce the escrow provision.

14.

15. <u>The Severance Provision</u>:

16. The 2020 Provider Manual specifies at Sec. 15.09:

17. "All disputes are subject to arbitration on an individual basis, not on a class or representative basis, or through any form of consolidated

>proceedings, and the arbitrator(s) will not resolve Class Action disputes and will not consolidate arbitration proceedings without the express written permission of all parties to the Provider Agreement."

18.

19. Based on the above provision, Respondents request that the Panel order Claimant to identify a single pharmacy to continue this arbitration and to sever and dismiss all other pharmacy claims as impermissibly consolidated. It submits that Provider Agreements are signed by individual pharmacies, and that each pharmacy submits claims to Caremark by separate National Council for Prescription Drug Programs ("NCPDP") identification numbers. Respondents argue that requiring each pharmacy to pursue its claims individually would promote the policy considerations underlying the enforcement of arbitration provisions.

20. Claimant requests the Panel declare the Severance Provision unconscionable, arguing that the Provider Agreements identify Claimant as the contracting provider and tall locations operate under the same TIN. It argues that an NCPDP is not a legal entity but is an identification number only, and the contractual provision at issue applies to disputes between Claimant and Caremark, not between NCPDP and Caremark. It also submits that separating this matter into several arbitrations would not serve the interests of judicial economy.

21. In passing, the Panel notes that there is some uncertainty whether the current proceeding involves 5 or 6 pharmacies. See footnote 2, page 2,

of Respondents' Omnibus Motion. However, that determination need not be made at this time; whether 2 or 10 pharmacies were involved, the issue would remain the same.

22.

23.

24. <u>Decision:</u>

25. The Panel notes that the Provider Agreement cited by Respondents in support of their position was in fact signed by a George Calcanes, who is a clinical officer who works for Claimant, not any individual pharmacy. Deposition of Dr. Vacirca, T 23:18-20. The Panel agrees that an NCPCP is not a legal entity, and Claimant here properly asserted claims on behalf of the affiliated pharmacies. Respondents' request for severance is DENIED. There is no need to reach the issues of unconscionability or judicial economy because this not a consolidated proceeding but a claim brought on an individual basis by Claimant against Respondents.

26. <u>Confidentiality Provision</u>

27. Claimant contends that the confidentiality provision is overbroad and one-sided. Accordingly, it argues that it is unconscionable. Respondents contend that the provision is not unconscionable. In support of their positions, the parties cite contrary authority and argue over which case should be accorded more weight.

28. <u>Decision</u>:

29. Given that this proceeding is subject to the stringent confidentiality provisions of any AAA proceeding, the Panel believes that this issue is substantially moot at this time. The Panel notes, however, that the provision as written would purportedly bind members of the Panel to not disclose the "existence" of this arbitration. To the extent that this requirement attempts to impose new ethical obligations, or impinges on existing ethical obligations, of the Arbitrators, counsel, or their respective firms, it is unconscionable. Further, this decision is without prejudice to the ability of any party to bring any dispute regarding confidentiality issues to the attention of the Panel pursuant to Paragraph 5 of Scheduling Order No. 3.

30.

31. <u>ISSUE: The Request of Respondents to Dismiss Silverscript and Aetna from this Proceeding</u>

32. Without detailing all arguments here, the parties vigorously dispute whether Silverscript and Aetna are properly named Respondents. The Panel will defer consideration of this issue but will address it following the completion of discovery pursuant to the following instructions.

33.

34. <u>Instructions to the Parties</u>

35. The parties are to meet and confer to develop a proposed Amended Scheduling Order to revise all dates in Scheduling Order No. 3. The AAA and the Panel have kept available the currently scheduled hearing dates in the event the parties believe the hearing may still proceed at that time. If the parties do not so believe, proposed new hearing dates shall be included in the revised Scheduling Order. The proposed Order shall specifically provide that Respondents may renew the Motion to Dismiss Respondents, Silverscript and Aetna, following the close of discovery, and a briefing schedule shall be included in the proposed Amended Scheduling Order. The proposed Order shall be submitted to the Panel by July 6, 2022.

36.

37. SO ORDERED on June 24, 2022.

38. <u>Michael Jordan /s/</u>

39. Michael Jordan, Chair, for the Panel

40. Louise Zeuli, Esq.

41. Brendan Hare, Esq.