# EXHIBIT 5

## AMERICAN ARBITRATION ASSOCIATION
### Commercial Tribunal

Case Number: 01-19-0000-3552

Mission Wellness Pharmacy, LLC
-vs-
Caremark, LLC; Caremark PCS, LLC;
SilverScript Insurance Company

### FINAL AWARD

I, Charles Pereyra-Suarez, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement (as contained at Page 44 of the pertinent Caremark Provider Manual) entered into by the above-named parties, and having been duly sworn, and having heard the proofs and allegations of the parties, each represented by counsel, hereby AWARD as follows:

1.  Introduction

Claimant Mission Wellness Healthcare, LLC ("Claimant" or "Mission Wellness") represented by Frier & Levitt has alleged six causes of action against Respondents Caremark, LLC; Caremark PCS, LLC; and Silverscript Insurance Company ("Respondents" or "Caremark" or "Silverscript") represented by Nixon Peabody.

Claimant seeks asserted damages of $2,127,466.00 plus pre-judgment interest of $247,279.29, for a total of $2,374,745,29. Claimant also seeks attorneys' fees, costs and expenses in the amount of $1,287,354.18 (applying a 125% "lodestar" calculation in light of the asserted "rare" and "exceptional" circumstances arising from numerous asserted discovery violations by Respondents during the three-year duration of these arbitration proceedings). Indeed, Claimant's counsel points out that the Arbitrator had awarded $84,424.00 in sanctions against Respondents on August 14, 2020, as a result of their discovery violations up to that point in time. The Arbitrator granted leave to Claimant's counsel to renew Claimant's ongoing sanctions requests at the close of the evidentiary hearing, based upon alleged continuing sanctionable conduct by Respondents throughout the duration of the case. Claimant also seeks prospective injunctive relief against Respondents.

Respondents, who did not file any counterclaims, assert that Claimant has not proved its case or its alleged damages as to any of the six alleged causes of action. Additionally, Respondents assert that Claimant was not prejudiced in any way by any of the alleged discovery violations. Respondents request a ruling that they are the prevailing parties in this arbitration. Respondents also request an award of attorneys' fees, costs and expenses in the total amount of $1,112,985.61.

The evidentiary hearing took place virtually via Veritek electronic platform on February 7, 8, 9, 10 and 11, 2022. Veritek prepared daily transcripts of the evidentiary hearing proceedings. (The virtual evidentiary hearing followed numerous conference calls, hearings and other communications with counsel to discuss discovery and scheduling issues, cross motions for summary judgment, and the like.)

During the five-day evidentiary hearing, the Arbitrator had the opportunity to hear, consider and evaluate the credibility of Claimant's witnesses Daniel Andrzejek and Maria Lopez of Mission Wellness, Ge Bai (expert witness) and Laura Coe (expert witness); as well as Respondents' witnesses Michael Murphy, Gina Redner, Steven McCall, Glenn Amnott, and Stephen Kacmarek (expert witness). In addition, the Arbitrator had the opportunity to review and evaluate numerous deposition transcripts, documents, exhibits and other materials that were admitted into evidence.

As agreed, counsel submitted simultaneous pre-hearing briefs on or about January 31, 2022; simultaneous post-hearing briefs on or about March 21, 2022; simultaneous opposition briefs on or about April 11, 2022; and simultaneous reply briefs on or about April 25, 2022. The briefing by counsel encompassed the merits of the parties' respective positions, their respective fee applications, and the Claimant's renewed sanctions motion. All of those extensive briefs--with exhibits, attachments and related materials--are incorporated herein by reference. Also incorporated herein by reference are all of the voluminous submissions, orders and docket entries in this case beginning with the Claimant's arbitration demand that was filed on or about January 31, 2019.

The parties' pertinent positions, and the Arbitrator's analysis of the positions, are set forth below.

2.   The Claimant's Positions

Summarizing witness testimony and other evidence offered during the evidentiary hearing, Claimant's counsel recount that Daniel Andrzejek ("Daniel") and Maria Lopez ("Maria"), a married couple, purchased community specialty pharmacy Mission Wellness in 2005 in order to serve HIV patients in Caremark's Medicare Part D patient population in the underprivileged Mission District of San Francisco, California. Maria, who is president of Mission Wellness, is an experienced pharmacist who holds a doctorate in pharmacy from UC San Francisco. Daniel, who acts as CFO, holds a degree in economics from Yale.

Maria and Daniel borrowed more than $2 million in recent years to stay in Caremark's network and to shoulder the $2,127,466.00 of direct and indirect remuneration ("DIR") fees that Caremark "unilaterally" recouped from Claimant Mission Wellness. Claimant was barely scraping by in 2016 and 2017, and operated at a clear loss from 2018 through 2021. Indeed, their counsel aver, Caremark recouped 150% of Mission Wellness' net profit in 2020.

Daniel articulated his view that Mission Wellness is entitled to reasonable contractual terms and conditions, and that it is not reasonable for Caremark to pay Mission Wellness a negative reimbursement rate under "take-it-or-leave-it" contractual terms. Further, Daniel testified that

Respondents are aggressive competitors of Mission Wellness and actually tried to buy Mission Wellness during the pendency of these arbitration proceedings.

Claimant Mission Wellness has asserted six causes of action against Respondents:

(1)  Breach of the "Compliance With Laws" provision in the Caremark Provider Manual because the Performance Network Program ("PNP") violates the Any Willing Provider Law (the "AWPL"), 42 C.F.R. Section 423.505(b)(18) and 42 U.S.C.A. Section 1395w-104(b)(1)A.

(2)  Breach of contract based on Caremark's assessment of PNP fees on "inapplicable claims."

(3)  Breach of contract because Claimant was "disadvantaged" under the PNP through mean imputation.

(4)  Breach of the Federal Prompt Pay Law, 42 C.F.R. Section 423.520.

(5)  Breach of the implied covenant of good faith and fair dealing, under applicable Arizona law.

(6)  Conversion, under applicable Arizona law.

Claimant's counsel assert that Respondent Silverscript is liable for Caremark's breaches of the parties' contract through well-established agency principles.

Claimant's counsel elaborated at length in their voluminous briefing regarding the six causes of action, the applicable law and facts.

Expert witness Laura Coe testified about, and set forth in detail in her expert report, her methodology to calculate Claimant's damages in the amount of $2,127,466.00. She set forth a myriad of reasons why the Respondents' DIR Program is not actuarially sound, is flawed, and is not reasonable or relevant to Mission Wellness as a specialty pharmacy. Those reasons include, but are not limited to, the use of retail metrics that do not apply to specialty pharmacies; mean imputation; lack of statistical significance; the misleading use of uniform distribution to rank pharmacies; misleading language; lack of predictability; and lack of opportunity to improve performance scores. Ms. Coe emphasized that she was greatly hampered in her work by the lack of documentation and information that had been requested from Respondents but not provided to Claimant.

Expert witness Ge Bai also testified regarding what she views as flaws in DIR fees generally and as applied in this case.

Claimant's counsel submitted a separate Proposed Order on Claimant's Motion for Sanctions-- including attorneys' fees, costs and expenses, as well as adverse inferences.

3.  The Respondents' Positions

Respondents' counsel assert that all six of the Claimant's causes of action can be properly adjudicated based on the evidence presented during the evidentiary hearing and the applicable law. Further, Respondents' counsel assert that there are no missing documents or discovery that impeded Claimant's ability to prosecute its claims or that would hamper the Arbitrator's ability to adjudicate them. The discovery issues that have been raised by Claimant throughout the case are described as "fabricated."

The stated view of Respondents' counsel is that Count 1 is legally deficient on its face because that claim is based on a statute without a private right of action, and because the AWPL does not apply to reimbursement disputes.

Count 2 fails, according to Respondents' counsel, based on the clear, unambiguous language of the parties' contract defining "applicable claims."

According to Respondents' counsel, Count 3 fails based on the evidentiary record because Caremark did not disadvantage Claimant but treated it the same as the 66,000 other pharmacies that participate in its networks.

Respondents' counsel assert that Count 4 fails as a matter of law because there is no private right of action under the Federal Prompt Pay Law, and because the Centers for Medicare and Medical Services ("CMS") expressly permits assessment of post-point-of-sale rebates on pharmacies based on performance programs.

According to Respondents' counsel, Count 5 and Count 6 also fail based on the law and evidence at the evidentiary hearing, and because Caremark's exercise of its contractual rights cannot amount to bad faith. Moreover, counsel argue, the economic loss rule precludes Claimant's conversion claim which is nothing more than a rehash of Claimant's breach of contract claim.

Respondents' counsel argue that Claimant has no viable claims against Respondent Silverscript because Silverscript did not have a direct contractual relationship with Mission Wellness.

Finally, Respondents' counsel oppose the injunctive relief requested by Claimant's counsel as unwarranted and beyond the Arbitrator's authority under the circumstances presented here.

Respondents' witnesses Michael Murphy, Gina Redner, Steven McCall, Glenn Amnott, and Stephen Kacmarek (expert witness) testified in support of Respondents' positions and were cross-examined by Claimant's counsel. That testimony is set forth in the hearing transcripts. Mr. Kacmarek tasked himself with rebutting Ms. Coe's expert witness testimony and expert report. He challenged Ms. Coe's calculations, methodology and conclusions, which he described as "absurd." He opined that Claimant has sustained no damages in this case.

4.  The Arbitrator's Analysis

By a strong preponderance of the evidence, Claimant Mission Wellness has proved its case as to all six causes of action.

Having reviewed, analyzed, researched and considered the extensive briefs of counsel, as well as the testimony and other evidence offered at the evidentiary hearing, the Arbitrator is persuaded that he has the jurisdiction and authority to grant the Claimant's requested relief; that the Claimant has proved its case and its requested damages; and that the Claimant's renewed sanctions motion should be granted. The Arbitrator has decided to rule in Claimant's favor on all of the many contested legal issues and theories, based on the briefs, evidence and arguments presented by Claimant's counsel.

Having heard and analyzed in detail the parties' discovery disputes from the early stages of the case through conclusion of the evidentiary hearing, the Arbitrator has concluded that the numerous discovery issues raised by Claimant's counsel have been largely meritorious and anything but fabricated.

Accordingly, it is ordered that Claimant's adverse inference is hereby granted and it is found that Caremark's measurements of Mission Wellness' performance as shown on the trimester reports referenced at the hearing for years 2016 to 2021 are not accurate because Caremark could not support the performance scores.

Further, it is ordered that Claimant's adverse inference is hereby granted and it is found that there is no logical basis for the conversion of the FOPS to the "variable rate" as shown on the trimester reports for the years 2016 to 2021, because Caremark could not provide the calculations of the conversion that are thus neither reasonable and relevant.

Further, it is ordered that Claimant's adverse inference is hereby granted and it is found that Caremark's measurement of statistically insignificant (non-credible) volumes of patients for medication adherence performance, as shown on the trimester reports for years 2016 to 2021, are incorrect because Caremark could not support the medication adherence scores.

Further, it is ordered that Claimant's adverse inference is hereby granted and it is found that Caremark's calculation of mean imputation is incorrect, as shown on the trimester reports for years 2016 to 2021, because Caremark could not support the calculation of the mean imputation.

Further, it is ordered that Claimant's adverse inference is hereby granted and it is found that Caremark's calculation of the five patients whose adherence was measured for the HIV therapeutic class for the specialty component on the trimester report for Trimester 1 of 2020 is not accurate because Caremark could not support the medication adherence score.

Further, as requested by Claimant's counsel in their renewed sanctions motion, it is ordered that Respondents shall remit payment to Claimant for reasonable attorneys' fees, costs and expenses, in the amount of $1,287,354.18, incurred in prosecuting this arbitration.

In deciding the issues in this case, the Arbitrator found the testimony and report of Claimant's expert witness Laura Coe to be cogent, thorough, compelling, and far more persuasive than the testimony offered by Respondents' expert witness Stephen Kacmarek. Contrary to the testimony of Mr. Kacmarek, the Arbitrator found Ms. Coe's testimony to be anything but "absurd."

5.  The Award

The Arbitrator awards to Claimant and against Respondents as follows:

> (A) The principal amount of $2,127,466.00;
>
> (B) Pre-judgment interest of $247,279.29; and
>
> (C) Attorneys' fees, costs and expenses of $1,287,354.18.

Therefore, the total award is $3,662,099.47.

The Arbitrator has declined to issue any injunctive relief, in the expectation that the parties will be mindful of the rulings in this case in their future business interactions.

The administrative fees of the AAA totaling $16,175.00 are to be borne as incurred. The compensation of the Arbitrator totaling $96,000.00 is also to be borne as incurred.

This Award is in full satisfaction of all claims submitted in this arbitration. All claims not expressly granted are, hereby, denied.

Dated: May 18, 2022

Arbitrator Charles Pereyra-Suarez